**BEFORE THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SIMON BANKS,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **V.** | ) | **Civil Action No. 08-00215 RCL** |
| | ) | |
| **HON. NOEL ANKETELL KRAMER** | ) | |
| **Et al** | ) | |
| | ) | |
| **Defendants** | ) | **June 27, 2008** |


**PLAINTIFF'S SURREPLY TO COUNCIL FOR COURT EXCELLENCE REPLY
IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT WITH PREJUDICE**

Comes now Plaintiff and submit Surreply to Council for Court Excellence Reply

in Support of Motion to Dismiss Plaintiff's Amended Complaint with prejudice, and

submit the following

Plaintiff incorporate by reference Plaintiff's Memorandum of Law in Support of

Plaintiff's Surreply to Council for Court Excellence Reply in Support of Motion to

Dismiss Plaintiff's Amended Complaint with prejudice.


_____/s/_____

Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
703 965-5637
drsbanks@msn.com

# TABLE OF AUTHORITIES

141 F.3d 364, 367-68 (D.C. Cir. 1998 .................................................................. 3

*Adarand Constructors, Inc.* v. *Peña*, 515 U. S. 200, 227 (1995) ..................................... 28

*Allegheny Pittsburgh Coal Co.* v. *Commission of Webster Cty.*, 488 U. S. 336 (1989)).. 30

*Austin Munic. Secs., Inc. v Nat'l Ass'n of Secs. Dealers, Inc., 757 F.2d 676, 689* 5tj Cir.
    1985) ............................................................................................................. 17, 23

*Bryant v. New Jersey Department of Transportation*, 1998 WL 133758 (D.N.J.) ............ 9

*City of Waukesha*, 320 F.3d at 235 ........................................................................... 3

*Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985), ................................................. 17, 24

*Coalition of Bedford-Stuyvesant Block Association, Inc. v. Cuomo*, 651 F. Supp. 1202,
    1209 n.2 (E.D.N.Y. 1987 .................................................................................... 8

*DeVargas v. Mason & Hanger-Silas Mason Co., Inc.*, 844 F.2d 714, 722 (10th Cir. 1988
    ............................................................................................................. 17, 24

*Forrester v. White*, 484 U.S. 219, 224 (1988) ..................................................... 17, 24

General Rules of the Contract Appeals Board, 36 D.C. Reg. 2700-2709.................. 13, 20

*Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991). ....................... 15, 22

**Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).**................... 4

*Hughes Communications Galaxy, Inc. v. United States*, 998 F.2d 953, 958 (Fed. Cir. 1993
    ............................................................................................................. 16, 23

In *Krishna Muir v. Navy Federal Credit Union and Patricia l. Dearing, LL.C.*, Slip Op.
    No. 07-7066 .................................................................................................. 2

*In re Series 7 Broker Qualification Exam Scoring Litigations,* 510 F. Supp. 2d 35, 44
    (D.D.C. 2007 ............................................................................................. 16, 23

    *Kauffman v. Anglo-American School of Sofia,* 28 F.3d 1223, 1226 (D.C. Cir. 1994)¶3
                                                                                        *Id*17, 24

*Krishna Muir v. Navy Federal Credit Union and Patricia l. Dearing, LL.C.*, Slip Op. No.
    07-7066 ......................................................................................................... 2

*Lockheed Martin IR Imaging Systems, Inc. v. West,* 108 F.3d 319, 322 (Fed. Cir. 1997).
    ............................................................................................................. 16, 23

*Louisiana Energy & Power*, 141 F.3d ...................................................................... 3

*Louisiana Energy & PowerAuthority v. FERC*................................................................ 3

*Mangold v. Analytic Servs. Inc.,* 77 F.3d 1442, 1447-48 (4th Cir. 1996); ................. 16, 23

*McGowan* v. *Maryland*, 366 U. S. 420, 425 (1961). .................................................. 28

quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998)) .................. 3

*Olech*, 528 U. S., at 564." ................................................................................... 30

Personnel Administrator of Mass. v. Feeney, 442 U. S. 256, 279 (1979)." ................... 29

*Raymond* v. *Chicago Union Traction Co.*, 207 U. S. 20, 35–36 (1907)........................... 28

**Reinventing government accountability: public functions, privatization, and the
    meaning of "state action"**................................................................................ 11, 19

*Ross* v. *Moffitt*, 417 U. S. 600, 609 (1974) ............................................................ 29

*Sioux City Bridge Co.* v. *Dakota County*, 260 U. S. 441 (1923......................................... 30

Teg-*Paradigm Environmental, Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir.
    2006), ......................................................................................................... 16, 23

*United Computer Supplies, Inc. v. United States*, 43 Fed. Cl. 351, 359 (1999), aff'd, 230
    F.3d 1382 (Fed. Cir. 2000). ............................................................................. 15, 22

i

**Constitutional Provisions**

Equal Protection...................................................................................... 28, 29

**Publications, Registers**

D.C. Reg. 1420............................................................................... 7, 12, 19
*D.C. Register* under the date of April 21, 1989. ....................................... 12, 19

"Procurement Practices Act of 1995" .................................................. 6, 12, 19

**Regulations**

34 C.F.R. § 361.57(b)(2); 29 DCMR 100......................................................... 7
36 D.C. Reg. 2684-2699    13, 20

**Rules:**

Fed. R. Civ. P. 12(b)(6)................................................................... 31

**Statutes**

42 U.S.C. § 1981................................................................................ 6
Subsection (j) of section 105a of the District of Columbia Procurement Practices Act of
    1985 (D.C. Code § 1-1181.5a(j)).......................................................... 14, 21
Title VI................................................................................. 7, 8, 25

**District of Columbia Codes**

D.C. Code Ann. §§ 2-301.01 to 2-311.02............................................... 12, 19
D.C. Code Ann. §§ 2-301.04(c) and (d). ............................................. 6, 12, 19
D.C. Code Ann. §§ 2-303.10 and 2-303.11. ........................................... 13, 20
§ 2-303.03. ..................................................................... 13, 20
District of Columbia "Procurement Practices Act of 1995", D.C. Code Ann. §§ 2-301.01
    to 2-311.02 ................................................................... 6

**BEFORE THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SIMON BANKS,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **V.** ) | **Civil Action No. 08-00215 RCL** |
| ) | |
| **HON. NOEL ANKETELL KRAMER** ) | |
| **Et al** ) | |
| ) | |
| **Defendants** ) | **June 27, 2008** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
SURREPLY TO COUNCIL FOR COURT EXCELLENCE REPLY IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT WITH
PREJUDICE**

Comes now Plaintiff and submit Memorandum of Law in Support of Plaintiff

Surreply to  Council for Court Excellence Reply in Support of Motion to Dismiss

Plaintiff's Amended Complaint with prejudice, and submit the following:

The case is premature for the CCE to submit a dispositive motion at this stage of

the proceedings given the Plaintiff's submission of a prima facie case that is entitled to

reasonable inferences that the Plaintiff can prove a set of facts to support the complaint

against CCE.

In *Krishna Muir v. Navy Federal Credit Union and Patricia l. Dearing, LL.C.*,

Slip Op. No. 07-7066, District of Columbia Circuit (Decided June 20, 2008)

This Honorable Court ought not decide the standing issue at this state of the

litigation.

The United States Court of Appeals cautioned the lower court in deciding standing cases. The Court opined: "……………………As we explained in *Louisiana Energy & PowerAuthority v. FERC*, whether a statute has been violated "is a question that goes to the *merits* . . . and not to constitutional standing," because a "party need not *prove* that the . . . action it attacks is unlawful . . . in order to have standing to level that attack." 141 F.3d 364, 367-68 (D.C. Cir. 1998). Rather, in determining whether plaintiffs have standing, we must "assume that on the merits [they] would be successful in their claims." *City of Waukesha*, 320 F.3d at 235 ……………….

The Court of Appeals further opined: "……………"the merits inquiry and the statutory standing inquiry often 'overlap,'" *Louisiana Energy & Power*, 141 F.3d at 367 n.5 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998))

**Additionally, when assessing a motion to dismiss under Rule 12(b)(1), a court may also consider any undisputed facts in the record, or "the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).**

## THE PLAINTIFF HAS SUFFERED INJURY IN FACT

CCE at 4 of its Reply states that Plaintiff suffered no injury in fact.

**UNDISPUTED FACTS**

It is undisputed that the Plaintiff is a former Hearing Examiner aka "Administrative Law Judge.

It is undisputed that the Plaintiff has practice law before administrative agencies of the United States periodically from 1975 through April 8, 2004. This includes the time

when the Plaintiff was the Chief Administrative Law Judge and Hearing Examiner for the

District of Columbia Commission on Human Rights, the judicial arm of the D.C. Office

of Human Rights, and when the Plaintiff was Chief Hearing Examiner, Chief of Eviction

Adjudication Division, for the District of Columbia Rental Accommodation Office, Rent

Control.[1]

It is undisputed that the Plaintiff practice law before the District of Columbia

Department of Employment Services, Unemployment Compensation, Unemployment

Appeals, from 1987 through 2003. One of the agencies reassigned under the umbrella of

the Central Panel (OAH) is an agency of the District of Columbia where the Plaintiff

represented clients who appealed the denial of unemployment benefits. Similarly, the

Department of Employment Services, adjudicated workmen's compensation cases.

It is undisputed that the Plaintiff practiced administrative law as an administrative

advocate and representative of parties before administrative agencies of the District of

Columbia and the United States as well as the various states of the United States.

It is undisputed that the Plaintiff has been licensed by the United States

Government, the United States Equal Employment Opportunity Commission, and the

United States Merit Systems Protection Board to practice administrative law before them

respectively from 1986 through April 8, 2004. **See Plaintiff's Exhibits In Opposition to**

**CCE's Reply in support of motion to dismiss:**

**1    United States Merit Systems Protection Board [MSPB] Proceedings, 2003
in the case of Rufus E. Gillette, a Police officer who was a counter-sniper,**

---

[1] Title VI states that "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Title VI bars intentional discrimination as well as disparate impact discrimination (i.e., a neutral policy or practice that has a disparate impact on protected groups).

**SWATT-team member of the Special Forces, whom the Plaintiff won his case before the MSPB reinstating him back to work protecting the President of the United States, after Gillette was fired by Teresa Chambers Police Chief, Park Service, Department of Interior**

**2   United States Equal Employment Opportunity Commission [EEOC] proceedings in the case of Vera Miller v. GSA 2003, and 2004 also before the MSPB, before EEOC Judge Wallace Lew**

**3   United States Equal Employment Opportunity Commission [EEOC] Proceedings in the case of Anthony Holt v Postmaster General, March 2004**

**4   United States Merit Systems Protection Board [MSPB] Proceedings August 2, 1991, in the case of Dr. David M. Cohen v. Bureau of Engraving and Printing,    Department of Treasury, before MSPB Judge Michelle M. Hudson**

**5   District of Columbia Office of Human Rights proceedings, 2003, in the case of David Von Colln v. National Education Association**

It is undisputed that administrative agencies which comprise and are contained in the Central Hearing Panel, District of Columbia Office of Administrative Hearings [OAH], are part of the Plaintiff's marketplace where the Plaintiff have, and more likely than not, would, make and enforce contracts in connection with the Plaintiff's representation of parties in contested cases before administrative agencies.  Now that these agencies require a license to practice law as a condition for representing clients, the Plaintiff was, is and continues to be, from the date the exclusions were initially enacted to the present, in violation of the Plaintiff's rights pursuant to 42 U.S.C. § 1981, and in violation of Plaintiff's rights pursuant to the District of Columbia **"Procurement Practices Act of 1995", D.C. Code Ann. §§ 2-301.01 to 2-311.02**

 The Act applies to all contracts and intergovernmental and interagency agreements for the procurement or disposal of goods and services by executive agencies and employees

subordinate to the Mayor. *See* D.C. Code Ann. §§ 2-301.04(c) and (d). The goal of the law is to ensure fairness, propriety, and efficiency when contracting with governmental entities and emphasizes competitive procurement to maximize value and quality. The Act requires that District government contracts be awarded by competitive sealed bidding, competitive sealed proposals, sole source contracts, or small purchase procedures. *See* D.C. Reg. 1420.

It is without dispute that the District of Columbia Government and administrative agencies which comprise OAH, are recipients of federal funds, and these rules that exclude the Plaintiff violate the Plaintiff's rights in connection with the use of federal funds protected by Title V1, which precludes discrimination and disparate treatment with respect to the use of federal funds. The Plaintiff is a victim of discrimination with respect to the use of Title VI federal funds by being excluded from participation in activities that administrative agencies which are a part of OAH, each day OAH has in place rules, regulations that preclude the Plaintiff from representing clients before administrative law judges employed by OAH

The District of Columbia, **Department of Human Services** Commission on Social Services, **Rehabilitation Services Administration** The Rehabilitation Services Administration RSA. Receives 80% of its funds from the United States Government. The purpose for the RSA program is to provide vocational rehabilitation services to eligible *adult* individuals with disabilities, and the District DHS RSA implements this program on behalf of the District of Columbia. *See* 34 C.F.R. § 361.57(b)(2); 29 DCMR 100; and 29DCMR Chapter 1 generally.

CCE was cherry-picked and granted a sole-source contract, without competition, by Judge Ferren, when he was on sabbatical from the DCCA, although still an associate judge with DCCA, who established and supervised the DC Bar and DCCA supervise and owe a fiduciary duty to the DC Bar, which contain the Plaintiff's competitors in the administrative law market place.  CCE was preselected by Judge Ferren because it had a predisposition to generate a study to support the District of Columbia enacting laws that promulgate a Central Panel containing former hearing examiners redesignated administrative law judges, which exclude non-attorneys from participating by denying them as well as the Plaintiff the right to make and enforce contracts and the right to represent clients before these administrative agencies, whom previously afforded non-attorneys the right to represent parties in contested cases pursuant to the District of Columbia Administrative Procedures Act.

The OAH laws enacted by the District of Columbia Council which was chaired by Kathy Patterson, former chairman of the District of Columbia City Council Judiciary Committee, and now a member of the Council for Court Excellence.   Title VI affords victims of discrimination the right to bring civil action.[2]

---

[2] Related to the scope of coverage of Title VI is the issue of standing to challenge program operations as a violation of Title VI. Individuals may bring a cause of action under Title VI if they are excluded from participation in, denied the benefits of, or subjected to discrimination under, any Federal assistance program. *See Coalition of Bedford-Stuyvesant Block Association, Inc. v. Cuomo*, 651 F. Supp. 1202, 1209 n.2

**PRIOR TO PROMULGATION OF THE OAHA DURING, AND AT ALL TIMES RELEVANT DEFENDANT FERREN, CCE, KATHY PATTERSON, THE DISTRICT OF COLUMBIA COURT OF APPEALS, KNEW AND HAD REASON TO KNOW THAT THE PLAINTIFF WAS A BLACK NONATTORNEY ADMINISTRATIVE LAW ADVOCATE, FORMER HEARING EXAMINER AND ADMINISTRATIVE LAW JUDGE WHO SPECIALIZED IN PRACTICING LAW BEFORE ADMINISTRATIVE AGENCIES OF THE DISTRICT OF COLUMBIA AND OF THE UNITED STATES**

Prior to promulgation of the , during, and at all times relevant Defendant Ferren, Defendant Council for Court Excellence and Kathy Patterson, Chairman of the District of Columbia Council, knew and had reason to know that the Plaintiff was a Black nonattorney administrative law advocate, former hearing examiner and administrative law judge who specialized in practicing law before administrative agencies of the District of Columbia and of the United States, Plaintiff's market place for making and enforcing contracts connected with the Plaintiff's living, as a Black citizen of the United States who competed in this same market place against members of the District of Columbia Bar for decades. **Plaintiff's injury includes but is not limited to suffering injury in being denied and excluded from the right to practice his profession before administrative agencies of the District of Columbia, Plaintiff's market place, to make and enforce contracts by representing clients before administrative agencies, in particular District of Columbia administrative agencies whom Plaintiff previously represented clients before, including the Department of Employment Services, as well as the Plaintiff's right to represent clients before the other administrative agencies, prior**

---

(E.D.N.Y. 1987; *Bryant v. New Jersey Department of Transportation*, 1998 WL 133758 (D.N.J.).

to being screen out by DCCA, acting through CCE, in their joint and several legislative activities for purposes of perpetuating the District of Columbia Bar monopoly in the District of Columbia market place, and in the market place of the United States administrative agencies, in violation of the spirit of the Sherman Anti Trust Act, for racial discriminatory reasons. The Plaintiff is Black, most of CCE and the members of the DC Bar are majority white, Caucasian.

CCE's actions in collaboration with the District of Columbia Court of Appeals legislative activities through its agents, Judge John Ferren and Kathy Patterson, used the enactment of the Central Panel, OAH, as a pretextual smokescreen and disguise to cover-up restraint in trade and perpetuation of the District of Columbia Bar monopoly in the market place.

**CCE'S FAILURE TO PROVIDE THE CONTRACT UPON**

**WHICH IT CONTEND CONFERRED UPON IT SOVEREIGN IMMUNITY**

The CCE ask the court to interpret its contract with the District of Columbia Government as a delegation of sovereign immunity without providing the contract for the court to interpret.

**D.C. COUNCIL DID NOT DELEGATE AUTHORITY TO CCE TO RECOMMEND REFORMS IN THE DISTRICT'S ADMINISTRATIVE HEARING SYSTEM RESULTING IN THE CCE BEING IMMUNIZED FROM SUIT, RATHER CCE RECEIVED A SOLE-SOURCE CONTRACT, IN VIOLATION OF THE D.C. PROCUREMENT ACT, AND THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT**

Defendant CCE, at 9¶3 **of** CCE's dispositive motion, CCE states it is entitled to absolute immunity because the D.C. Council delegated to it the authority to recommend reforms in the District's Administrative Hearing System. **Rather, the District of**

9

**Columbia issued CCE a sole-source contract to assess the feasibility of the District of Columbia enacting legislation to establish a Central Panel where administrative judges employed with the District would be centralized in a single agency for purpose of, inter alia, giving Hearing Examiners aka Administrative Law Judges more independence.**

There exist no evidence in the record to show that the District of Columbia Government delegated anything to CCE.  CCE was issued a sole-source contract.  In order for CCE to defend on the issue of "delegation" it must show by verifying documentation that there was a delegation, and that the sole-source contract it was provided by the District of Columbia was pursuant to a specific delegation by the District of Columbia Council, the legislature of the District of Columbia.  It is elementary that a contracting officer, without enabling authority from a "specific legislative act" of the legislature for the District of Columbia, does not have the power to delegate governmental authority to a private contractor.  Moreover, CCE does not point to any term in any verifying official document executed by the Chairman of the District of Columbia Council, or the Mayor of the District of Columbia, that it is the recipient of any delegation whatsoever.  **There is no showing of any accountability scheme.**

In the article: **Reinventing government accountability: public functions, privatization, and the meaning of "state action"**

By Robert S. Gilmour , Laura S. Jensen, it provide, in part: (excerpt)

"…….Indeed, Privatization in the United States is thus more likely to represent a change in form rather than function, i.e., the substitution of a "private" contractor or other nongovernmental designee to act as a proxy for government officials and employees in

performing public tasks under the aegis of governmental authority and paid from the

public purse (Seidman and Gilmour, 1986; Kettl, 1988; Salamon, 1989).

"Fundamentally, government officials may be held accountable for action taken

on behalf of the state in two ways. First, they are held accountable politically with respect

to their exercise of duly constituted authority, either by the voting public (if they are

[3]elected officials) or by elected legislative and executive officeholders (if they are

---

[3] **Summary of District of Columbia Laws**

**Government Contracts**
**"Procurement Practices Act of 1995"**
**D.C. Code Ann. §§ 2-301.01 to 2-311.02**
    **CCE and Judge Ferren conspired to violate District of Columbia**
**Procurement Act, as well as circumvented the requirements established by the**
**District of Columbia to prevent unscrupulous manipulation of the process for**
**issuing a sole-source contract, without competitive biding.**
    The Law:  The Act applies to all contracts and intergovernmental and interagency
agreements for the procurement or disposal of goods and services by executive agencies
and employees subordinate to the Mayor.  *See* D.C. Code Ann. §§ 2-301.04(c) and (d).
The goal of the law is to ensure fairness, propriety, and efficiency when contracting with
governmental entities and emphasizes competitive procurement to maximize value and
quality.  The Act requires that District government contracts be awarded by competitive
sealed bidding, competitive sealed proposals, sole source contracts, or small purchase
procedures.  *See* D.C. Reg. 1420.
    The Act provides standards for bid protests and allows the D.C. Contract
Appeals Board (DCCAB) to adopt rules for protesting a solicitation or contract award.
These rules are published in the *D.C. Register* under the date of April 21, 1989.  The
rules have been amended and can be found in chapters 1-3 of title 27 of the D.C.
Municipal Regulations. Also see 36 D.C. Reg. 2684-2699 for the General Rules of the
Contract Appeals Board, 36 D.C. Reg. 2700-2709 for Appeal Procedures, and 36 D.C.
Reg. 2710-2718 for Protest Procedures.
    Contracting Under the Act:
**Methods of Contracting:**  There are generally five ways in which a D.C. government
contract can be procured:
    1.  **Competitive Sealed Bidding:**  This is the preferred type of contract in which
        contractors may submit bids to be opened publicly at a predetermined place and
        time in response to a public notice of an invitation for bids.  *See* D.C. Code Ann.
        § 2-303.03.  The Director of the Department of Administrative Services must
        explain and justify decisions to use another type of contract.

appointed). Elected executives, legislatures, and their agents all play roles: regularly

urging administrators to politically inspired interpretations of institutional missions and

policy mandates; taking them to task for improper understanding of legislative intent;

and/or changing the law outright to specify explicit requirements and priorities, reallocate

funds, reorganize institutional structures, and otherwise narrow administrative discretion

Second, the state and its officers are held accountable legally, either by the constitutive

force of a body of law suggesting or demanding appropriate modes of government

behavior or by an independent judiciary weighing their actions against constitutional

statutory, and other legal mandates and limits.(1)"

**The authors argue that the existence of an effective public accountability**

**scheme requires a coherent understanding of "state action"-both before and after**

**privatization decisions. Toward that end they outline a four-step inquiry for the**

---

2. **Competitive Sealed Proposals:**  Proposals may be solicited from qualified sources and will be evaluated upon established criteria in order for the government to achieve the most advantageous result.
3. **Sole Source Procurement:**  This method allows awards to be made through non-competitive negotiations provided that certain specified conditions are met.  For example, these conditions include that only one source exists, the contract is for the purchase of real property, or an emergency has been declared.
4. **Small Purchases:**  These procedures may be used when the goods and services being bought are for less than $10,000.
5. **Emergency Procurements:**  Finally, the District may stray from ordinary procurement processes if there is a threat to public health, safety, or welfare. However, they must make purchases using competitive procedures as maximally practicable given the circumstances.

**Types of Contracts:**  Any type of contract can be used but each are subject to limitations under the Act.  However, there is a preference for four types of contracts:  (1) fixed price; (2) fixed-priced incentive; (3) cost plus incentive fee; (4) cost plus fixed fee or cost reimbursement.  *See* D.C. Code Ann. §§ 2-303.10 and 2-303.11.

**recognition of state responsibility so that government accountability is assured and citizen rights are preserved.**

With respect to the element of government accountability, lacking here, the Office of Government Accountability requires the following:

A process of project management delegation.

Subsection (j) of section 105a of the District of Columbia Procurement Practices Act of 1985 (D.C. Code § 1-1181.5a(j)) (expedited Council review of contracts), will expire on **December 31, 2000**.

There are  limited types of contracts issued in the District of Columbia, and CCE has not provided any factual basis upon which the court could evaluate its contract, its source, the scope, the amount of government supervision, the types of guidelines and requirements it was subjected to during the performance of its so-called delegation.  The District of Columbia Government limit the types of contracts it issues to private contractors.

Perhaps CCE is referring to some modification of its contract with the District of Columbia Government that changed its status from a mere government contractor to a "government-deferral agency contractor.  Such a contract would require special authority. See, *United Computer Supplies, Inc. v. United States*, 43 Fed. Cl. 351, 359 (1999), aff'd, 230 F.3d 1382 (Fed. Cir. 2000). Where the Court provides, Agents of the customer agency are without authority to modify the contract, Contract Appeals Board of the Government Accountability Office.  Generally there is a Contractual Responsibility Clause in effect. The Contractual Responsibility clause clearly indicates that contract

13

modifications must be addressed to, and confirmed in writing by, the GPO contracting officer.

CCE is requesting the Court to use its conclusive presumption, in the absence of the contract, to conclude that the District effectuated a delegation of government functions to it, triggering its right to claim, "government contract immunity. In order for the Court to interpret CCE's contract with the District of Columbia which is the subject of this controversy, the Court needs to view the contract. When interpreting the language of a contract, the various contract provisions must be read as part of an organic whole, according reasonable meaning to all of the contract terms. *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991). Such interpretation must assure that no contract provision is made inconsistent, superfluous, or redundant. *Hughes Communications Galaxy, Inc. v. United States*, 998 F.2d 953, 958 (Fed. Cir. 1993). Moreover, the language of the contract must be given the meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances, Teg-*Paradigm Environmental, Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006), unless a special or unusual meaning of a particular term or usage was intended, and was so understood by the parties. *Lockheed Martin IR Imaging Systems, Inc. v. West,* 108 F.3d 319, 322 (Fed. Cir. 1997).

CCE, in support of its contention that it is entitled to absolute immunity and qualified immunity under the government contract doctrine, cites the following cases: *District of Columbia v. Jones,* 919 A.2d 604, 607 (D.C. 2007), *In re Series 7 Broker Qualification Exam Scoring Litigations,* 510 F. Supp. 2d 35, 44 (D.D.C. 2007), *Mangold v. Analytic Servs. Inc.,* 77 F.3d 1442, 1447-48 (4th Cir. 1996)); *Austin Munic. Secs., Inc. v*

14

*Nat'l Ass'n of Secs. Dealers, Inc., 757 F.2d 676, 689* 5tj Cir. 1985) "(granting official immunity to administrative prosecutors and the nonprofit agency for which they work)."

These cases are not helpful in deciding whether the contract in issue provides CCE with any immunity because of its status. CCE is not an "administrative prosecutor or nonprofit agency of any administrative prosecutor.

CCE, at 10¶3 *Id.* provide "the functions CCE performed pursuant to its contract with the D.C. Government are functions that governmental employees would perform had the government not contracted them out. In support of this contention CCE cites: *Forrester v. White,* 484 U.S. 219, 224 (1988); *Cleavinger v. Saxner,* 474 U.S. 193, 201 (1985), *DeVargas v. Mason & Hanger-Silas Mason Co., Inc*., 844 F.2d 714, 722 (10th Cir. 1988); *Kauffman v. Anglo-American School of Sofia,* 28 F.3d 1223, 1226 (D.C. Cir. 1994)¶3 *Id.*

**D.C. COUNCIL DID NOT DELEGATE AUTHORITY TO CCE TO RECOMMEND REFORMS IN THE DISTRICT'S ADMINISTRATIVE HEARING SYSTEM RESULTING IN THE CCE BEING IMMUNIZED FROM SUIT, RATHER CCE RECEIVED A SOLE-SOURCE CONTRACT, IN VIOLATION OF THE D.C. PROCUREMENT ACT, AND THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT**

Defendant CCE, at 9¶3 **of** CCE's dispositive motion, CCE states it is entitled to absolute immunity because the D.C. Council delegated to it the authority to recommend reforms in the District's Administrative Hearing System.

There exist no evidence in the record to show that the District of Columbia Government delegated anything to CCE. CCE was issued a sole-source contract. In order for CCE to defend on the issue of "delegation" it must show by verifying documentation that there was a delegation, and that the sole-source contract it was

15

provided by the District of Columbia was pursuant to a specific delegation by the District of Columbia Council, the legislature of the District of Columbia.  It is elementary that a contracting officer, without enabling authority from a "specific legislative act" of the legislature for the District of Columbia, does not have the power to delegate governmental authority to a private contractor.  Moreover, CCE does not point to any term in any verifying official document executed by the Chairman of the District of Columbia Council, or the Mayor of the District of Columbia, that it is the recipient of any delegation whatsoever.  **There is no showing of any accountability scheme.**

In the article: **Reinventing government accountability: public functions, privatization, and the meaning of "state action"**

by Robert S. Gilmour , Laura S. Jensen, it provide, in part: (excerpt)

".......Indeed, Privatization in the United States is thus more likely to represent a change in form rather than function, i.e., the substitution of a "private" contractor or other nongovernmental designee to act as a proxy for government officials and employees in performing public tasks under the aegis of governmental authority and paid from the public purse (Seidman and Gilmour, 1986; Kettl, 1988; Salamon, 1989).

"Fundamentally, government officials may be held accountable for action taken on behalf of the state in two ways. First, they are held accountable politically with respect to their exercise of duly constituted authority, either by the voting public (if they are [4]elected officials) or by elected legislative and executive officeholders (if they are

---

[4] **Summary of District of Columbia Laws**

**Government Contracts**
**"Procurement Practices Act of 1995"**
**D.C. Code Ann. §§ 2-301.01 to 2-311.02**

appointed). Elected executives, legislatures, and their agents all play roles: regularly

The Law:  The Act applies to all contracts and intergovernmental and interagency agreements for the procurement or disposal of goods and services by executive agencies and employees subordinate to the Mayor.  *See* D.C. Code Ann. §§ 2-301.04(c) and (d). The goal of the law is to ensure fairness, propriety, and efficiency when contracting with governmental entities and emphasizes competitive procurement to maximize value and quality.  The Act requires that District government contracts be awarded by competitive sealed bidding, competitive sealed proposals, sole source contracts, or small purchase procedures.  *See* D.C. Reg. 1420.

The Act provides standards for bid protests and allows the D.C. Contract Appeals Board (DCCAB) to adopt rules for protesting a solicitation or contract award.  These rules are published in the *D.C. Register* under the date of April 21, 1989.  The rules have been amended and can be found in chapters 1-3 of title 27 of the D.C. Municipal Regulations. Also see 36 D.C. Reg. 2684-2699 for the General Rules of the Contract Appeals Board, 36 D.C. Reg. 2700-2709 for Appeal Procedures, and 36 D.C. Reg. 2710-2718 for Protest Procedures.

Contracting Under the Act:

**Methods of Contracting:**  There are generally five ways in which a D.C. government contract can be procured:

6. **Competitive Sealed Bidding:**  This is the preferred type of contract in which contractors may submit bids to be opened publicly at a predetermined place and time in response to a public notice of an invitation for bids.  *See* D.C. Code Ann. § 2-303.03.  The Director of the Department of Administrative Services must explain and justify decisions to use another type of contract.
7. **Competitive Sealed Proposals:**  Proposals may be solicited from qualified sources and will be evaluated upon established criteria in order for the government to achieve the most advantageous result.
8. **Sole Source Procurement:**  This method allows awards to be made through non-competitive negotiations provided that certain specified conditions are met.  For example, these conditions include that only one source exists, the contract is for the purchase of real property, or an emergency has been declared.
9. **Small Purchases:**  These procedures may be used when the goods and services being bought are for less than $10,000.
10. **Emergency Procurements:**  Finally, the District may stray from ordinary procurement processes if there is a threat to public health, safety, or welfare. However, they must make purchases using competitive procedures as maximally practicable given the circumstances.

**Types of Contracts:**  Any type of contract can be used but each are subject to limitations under the Act.  However, there is a preference for four types of contracts:  (1) fixed price; (2) fixed-priced incentive; (3) cost plus incentive fee; (4) cost plus fixed fee or cost reimbursement.  *See* D.C. Code Ann. §§ 2-303.10 and 2-303.11.

17

urging administrators to politically inspired interpretations of institutional missions and policy mandates; taking them to task for improper understanding of legislative intent; and/or changing the law outright to specify explicit requirements and priorities, reallocate funds, reorganize institutional structures, and otherwise narrow administrative discretion Second, the state and its officers are held accountable legally, either by the constitutive force of a body of law suggesting or demanding appropriate modes of government behavior or by an independent judiciary weighing their actions against constitutional statutory, and other legal mandates and limits.(1)"

**The authors argue that the existence of an effective public accountability scheme requires a coherent understanding of "state action"-both before and after privatization decisions. Toward that end they outline a four-step inquiry for the recognition of state responsibility so that government accountability is assured and citizen rights are preserved.**

With respect to the element of government accountability, lacking here, the Office of Government Accountability requires the following:

A process of project management delegation.

Subsection (j) of section 105a of the District of Columbia Procurement Practices Act of 1985 (D.C. Code § 1-1181.5a(j)) (expedited Council review of contracts), will expire on **December 31, 2000**.

There are  limited types of contracts issued in the District of Columbia, and CCE has not provided any factual basis upon which the court could evaluate its contract, its source, the scope, the amount of government supervision, the types of guidelines and

requirements it was subjected to during the performance of its so-called delegation. The District of Columbia Government limit the types of contracts it issues to private contractors.

Perhaps CCE is referring to some modification of its contract with the District of Columbia Government that changed its status from a mere government contractor to a "government-deferral agency contractor. Such a contract would require special authority. See, *United Computer Supplies, Inc. v. United States*, 43 Fed. Cl. 351, 359 (1999), aff'd, 230 F.3d 1382 (Fed. Cir. 2000). Where the Court provides, Agents of the customer agency are without authority to modify the contract, Contract Appeals Board of the Government Accountability Office. Generally there is a Contractual Responsibility Clause in effect. The Contractual Responsibility clause clearly indicates that contract modifications must be addressed to, and confirmed in writing by, the GPO contracting officer.

CCE is requesting the Court to use its conclusive presumption, in the absence of the contract, to conclude that the District effectuated a delegation of government functions to it, triggering its right to claim, "government contract immunity. In order for the Court to interpret CCE's contract with the District of Columbia which is the subject of this controversy, the Court needs to view the contract. When interpreting the language of a contract, the various contract provisions must be read as part of an organic whole, according reasonable meaning to all of the contract terms. *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991). Such interpretation must assure that no contract provision is made inconsistent, superfluous, or redundant. *Hughes Communications Galaxy, Inc. v. United States*, 998 F.2d 953, 958 (Fed. Cir. 1993). Moreover, the language

of the contract must be given the meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances, Teg-*Paradigm Environmental, Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006), unless a special or unusual meaning of a particular term or usage was intended, and was so understood by the parties. *Lockheed Martin IR Imaging Systems, Inc. v. West,* 108 F.3d 319, 322 (Fed. Cir. 1997).

CCE, in support of its contention that it is entitled to absolute immunity and qualified immunity under the government contract doctrine, cites the following cases: *District of Columbia v. Jones,* 919 A.2d 604, 607 (D.C. 2007), *In re Series 7 Broker Qualification Exam Scoring Litigations,* 510 F. Supp. 2d 35, 44 (D.D.C. 2007), *Mangold v. Analytic Servs. Inc.,* 77 F.3d 1442, 1447-48 (4th Cir. 1996)); *Austin Munic. Secs., Inc. v Nat'l Ass'n of Secs. Dealers, Inc., 757 F.2d 676, 689* 5tj Cir. 1985) "(granting official immunity to administrative prosecutors and the nonprofit agency for which they work)."

These cases are not helpful in deciding whether the contract in issue provides CCE with any immunity because of its status. CCE is not an "administrative prosecutor or nonprofit agency of any administrative prosecutor.

CCE, at 10¶3 *Id.* provide "the functions CCE performed pursuant to its contract with the D.C. Government are functions that governmental employees would perform had the government not contracted them out. In support of this contention CCE cites: *Forrester v. White,* 484 U.S. 219, 224 (1988); *Cleavinger v. Saxner,* 474 U.S. 193, 201 (1985), *DeVargas v. Mason & Hanger-Silas Mason Co., Inc*., 844 F.2d 714, 722 (10th Cir. 1988); *Kauffman v. Anglo-American School of Sofia,* 28 F.3d 1223, 1226 (D.C. Cir. 1994)¶3 *Id.*

20

CCE at19¶1, (CCE's Reply) provide:   "(school established to provide elementary level instruction to children of American and British diplomats stationed in Bulgaria was immune from *Bivens* Liability." "Unless the Plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."

Any such action by a United States Contractor, as that which CCE assert would come under the auspices of the Government Accountability Office (GAO).  GAO-08-875T Combating Terrorism:  Guidance for State Department's Antiterrorism Assistance Act.  And there are guidelines.    Moreover, **the Plaintiff has asserted that CCE's actions violate Plaintiff's rights to make and enforce contracts pursuant to 42 U.S.C.§ 1981.  CCE's action in collaboration with Judge John Ferren, violate District of Columbia Procurement Act, the District of Columbia Antitrust Act, and Plaintiff's rights under Title VI of the 1964 Civil Rights Act which prohibits discrimination with respect to the use of federal funds by recipients of federal grants and federal revenue sharing funds.**

### ADEQUATE JUSTIFICATIONS FOR A SINGLE AVAILABLE SOURCE AWARD (27 DCMR § 1702.1).

When Judge John Ferren selected CCE as the single available source to perform the type of contracting services CCE performed, CCE had a number of the District of Columbia Court of Appeals on its board of directors, and CCE conspired with and/or collaborated with Judge Ferren and others to restrain DC Bar competition in the administrative law market place, by requiring a license to practice law to hold the

position of Hearing Examiner by converting the official title to "Administrative Law Judge" although the duties and functions remained the same.

It is without dispute that members of the CCE board of directors included judges of the District of Columbia Court of Appeals.

It is without dispute that after CCE completed its contract with the District of Columbia Government, Judge John Ferren became Vice President of CCE.

When Judge John Ferren selected CCE as the single available source to perform the type of contracting services CCE performed, there were other available contractors and sources whom could have performed the same type of work that CCE performed, and the justification for the "single available source of CCE's award, was in violation of 27 DCMR § 1702.1, which required a bonafide, authentic assessment of available contracting sources, and a certification that there were none. This conclusive presumption by Ferren, was not content validated and was a sham. This sham preceded CCE's sham assessment of practices of administrative agencies of the various states of the United States whom employed hearing examiners and administrative law judges whom were not members of the Bar (nonattorneys). Rather, the CCE's assessment was limited to the few states whom had central panels (OAHs) and they alone were evaluated to determine how they were working out. Because of the sham study CCE did, it was geared towards and structured to favor enacting a central panel [OAH] consisting of bar licensed hearing examiners aka administrative law judges.

**CCE PARTICIPATED IN DEPRIVATION OF
EQUAL PROTECTION OF THE LAWS AS IT
RELATES TO PLAINTIFF A NONATTORNEY ADMINISTRATIVE
LAW ADVOCATE AND FORMER ADMINISTRATIVE LAW JUDGE
LACKING A STATE BAR LICENSE**

There is a crucial difference between the government exercising "the power to regulate or license, as lawmaker," and acting "as proprietor, to manage [its] internal operation." *Cafeteria & Restaurant Workers* v. *McElroy*, 367 U. S. 886, 896

The Court's equal protection jurisprudence has typically been concerned with governmental classifications that "affect some groups of citizens differently than others." *McGowan* v. *Maryland*, 366 U. S. 420, 425. *Olech* did recognize that a class-of-one equal protection claim can

CCE conspired with Judge John Ferren, Vice President of CCE, and Corporation Counsel, and Associate Judge DCCA, to deprive Plaintiff of equal protection of the laws, to deprive the Plaintiff of his right to contract with administrative agencies of the District of Columbia, that now form the OAH, and to contract with parties whom bring and may bring complaints before the administrative agencies which are now contained in OAH, to contract to represent them and other parties before these local administrative agencies, in contested cases, and the DC Government and CCE used federal sharing funds, federal funds, in its actions of regulating the Plaintiff out of his right to make and enforce contracts. *Id.* The District and CCE used skewed, sham studies, sham impact studies to facilitate and as a catalyst for facilitating legislation that precluded non-attorney administrative practitioners from practicing law before administrative agencies of the District of Columbia, by requiring all representatives to have a license to practice law as a condition for practicing before OAH and the respective administrative agencies contained in it. The courts recognize recognized that Supreme Court had upheld a class-of-one equal protection challenge to state legislative and regulatory action in *Village of*

23

*Willowbrook* v. *Olech*, 528 U. S. 562 (2000) (*per curiam*). 478 F. 3d 985, 992–993 (CA9

2007). (citing from

      CCE generated a predetermined study for purposes of treating unlicensed bar

licensed Hearing Examiners aka Administrative Law Judges, and non-attorney Hearing

Examiners aka Administrative Law Judges differently, and bar licensed administrative

law practitioners differently than non-attorneys, by:  a) providing bar licensed Hearing

Examiners aka Administrative Law Judges with higher salaries, and greater

compensation, resources, training, and by using federal funds to further discriminate

against non-attorney administrative law practitioners, by requiring a license to practice

law as a condition for representing clients before administrative law judges employed

with OAH, and before administrative agencies of the District of Columbia, which are part

of OAH, thereby excluding non-attorney administrative law practitioners from practicing

law before administrative agencies of the District of Columbia whom are recipients of

federal funds, including but not limited to federal revenue sharing funds.

### CCE ASSISTED IN CREATING LEGISLATION THAT SPECIFICIALLY DENIED PLAINTIFF OF EQUAL PROTECTION OF THE LAWS, BENEFITS AND PRIVILEGES

      It is well settled, "the Equal ProtectionClause "protect[s] persons, not groups,"

*Adarand Constructors, Inc.* v. *Peña*, 515 U. S. 200, 227 (1995) (emphasis omitted), and

that the Clause's protections apply to administrative as well as legislative acts, see, *e.g.,*

*Raymond* v. *Chicago Union Traction Co.*, 207 U. S. 20, 35–36 (1907).It is equally well

settled that States do not escape the strictures of the Equal Protection Clause in their role

as employers. See, *e.g., New York City Transit Authority* v. *Beazer*, 440 U. S. 568 (1979);

*Harrah Independent School Dist.* v. *Martin*, 440 U. S. 194 (1979) (*per curiam*);

*Massachusetts Bd. of Retirement* v. *Murgia*, 427 U. S. 307 (1976) (*per curiam*)."

"Our equal protection jurisprudence has typically been concerned with governmental classifications that "affect some groups of citizens differently than others." *McGowan* v. *Maryland*, 366 U. S. 420, 425 (1961). See, *e.g., Ross* v. *Moffitt*, 417 U. S. 600, 609 (1974) ("'Equal Protection' . . . emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable"); *San Antonio Independent School Dist.* v. *Rodriguez*, 411 U. S. 1, 60 (1973) (Stewart,J., concurring) ("[T]he basic concern of the Equal Protection Clause is with state legislation whose purpose or effect is to create discrete and objectively identifiable classes"). Plaintiffs in such cases generally allege that they have been arbitrarily classified as members of an "identifiable group." *Personnel Administrator of Mass.* v. *Feeney*, 442 U. S. 256, 279 (1979)."

### THE CCE AND THE DC GOVERNMENT PURSUANT TO THE ACTIONS OF JOHN FERREN AS CORPORATION COUNSEL AND THE DC COUNCIL TREATED PLAINTIFF DIFFERENTLY AND THERE IS NO RATIONAL BASIS FOR THE DIFFERENCE IN TREATMENT

The CCE and the District of Columbia Government treated Plaintiff and Plaintiff's experience as a former Hearing Examiner and Administrative Law Judge and the experience of other bar licensed Hearing Examiners aka Administrative Law Judges, differently, particularly those whom were hired by OAH with no prior experience as Hearing Examiners aka Administrative Law Judges.  In addition, the CCE and the District of Columbia Government, from the outset of the CCE's being granted a sole-

source contract with the District of Columbia and including the time CCE generation of its impact study and study of the various states of the United States, some 24, whom have OAH divisions, CCE intentionally treated Plaintiff differently from bar-licensed administrative advocates and nonattoney administrative law practitioners, without legitimate state compelling interest and with out a rational basis for the difference in treatment.

"The Equal Protection Clause prohibits dissimilar treatment from others similarly situated and when there is no rational basis for the difference in treatment." 528 U. S., at 564 (citing *Sioux City Bridge Co.* v. *Dakota County*, 260 U. S. 441 (1923), and *Allegheny Pittsburgh Coal Co.* v. *Commission of Webster Cty.*, 488 U. S. 336 (1989)). The Equal Protection Clause requires at least a rational reason for the difference, to assure that all persons subject to legislation or regulation are indeed being "treated alike, under like circumstances and conditions." Thus, when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a "rational basis for the difference in treatment." *Olech*, 528 U. S., at 564."

The Plaintiff has stated a cognizable claim against CCE and the complaint against CCE ought not be dismissed pursuant to Fed. R. Civ. P. 12(b)(6)

The Plaintiff has established that he has standing to bring the cause of action Plaintiff brought against CCE.

The Plaintiff is entitled to discovery on all of the above issues prior to there being any consideration for a dispositive motion.

**WHEREFORE**, the Plaintiff request that this Honorable Court, deny Council for

Court Excellence Motion to Dismiss the Complaint.


_____/s/_____
Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
703 965-5637
Email: drsbanks@msn.com

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## WASHINGTON REGIONAL OFFICE

RUFUS E. GILLETTE,                              DOCKET NUMBER
          Appellant,              DC-0752-03-0369-I-1

      v.

DEPARTMENT OF THE INTERIOR,                     DATE: June 13, 2003
          Agency.


Simon Banks, Alexandria, Virginia, for the appellant.

Robin J. Matthew, Esquire, Washington, D.C., for the agency.

### BEFORE
Thomas P. Cook
Administrative Judge


### INITIAL DECISION

    The appellant timely appealed the agency's decision to remove him from his position of Private, SP-083-01, Special Forces Branch, United States Park Police (USPP), Washington, D.C. The Board has jurisdiction over the appeal. *See* 5 U.S.C. §§ 7511-7513, 7701. The appellant's requested hearing was held on June 3, 2003, at the Board's Washington Regional Office. For the reasons discussed below, the agency's removal action is MITIGATED.

Judge Simon Banks                          July 21,2003
Doctor of Laws
P.O. Box 17052
Alexandria Va. 22302-8752


Dear Judge Banks:

I am writing to formally thank you for the outstanding job you did in representing me
during my appeal involving the Department of Interior. Judge, at times I was feeling
overwhelmed and outnumbered during this matter. I did not feel that I had a good chance
of winning my appeal. As a matter of fact, the attorney I had before I retained your
services told me that I had a less than half chance of winning. I feel the case was a very
difficult case to win, but you found a way to make a victory out of it. Judge, you are
blessed with a great ability and I pray that you continue to prosper in all your endeavors. I
would like to thank you again. My family and I appreciate all that you and your staff have
done for us.


Sincerely,

Rufus E. Gillette



UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

- - - - - - - - - - - - - - - - x
                                    :

RUFUS GILLETTE,                  :
                                    :
              Appellant,      :
                                    :
       v.                        : Case No.
                                    : DC-0752-03-03691-1
DEPARTMENT OF INTERIOR,    :
                                    :
              Agency.         :
                                    :
- - - - - - - - - - - - - - - - x

Alexandria, Virginia

Tuesday, May 27, 2003

Deposition of

TERESA C. CHAMBERS

a witness of lawful age, taken on behalf of the

Appellant in the above-entitled action, before

Peter K. Shonerd, a Notary Public in and for the

Commonwealth of Virginia, at the offices of Judge

Banks' Group, 1800 Diagonal Road, Suite 600,

Alexandria, Virginia 22314, commencing at

11:24 a.m.

**Diversified Reporting Services, Inc.**
1101 Sixteenth Street, NW  Second Floor
Washington, DC  20036
(202) 467-9200

APPEARANCES:

    On Behalf of the Appellant:

    JUDGE SIMON BANKS, ALJ
    JUDGE BANKS' GROUP
    1800 Diagonal Road, Suite 600
    Alexandria, Virginia  22314
    (703) 575-8487


    On Behalf of the Agency:

    ROBIN J. MATTHEW, ESQ.
    Attorney-Advisor
    Division of General Law
    Office of the Solicitor
    U.S. Department of the Interior
    1849 C Street, N.W.
    Washington, D.C.  20240
    (202) 208-6848

Also Present:

    Rufus Gillette, Appellant

           *    *    *    *    *


C O N T E N T S

EXAMINATION BY:                                        Page

Counsel for Appellant                                    3

3

```
1                    P R O C E E D I N G S

2           JUDGE BANKS:  This is the deposition of Teresa

3    Chambers, U.S. Park Police, Teresa C. Chambers.  I'm

4    Judge Simon Banks, and I will be taking your

5    deposition, Chief.  I'm the representative of Mr. Rufus

6    Gillette, and we're going to be asking you some

7    questions regarding Mr. Gillette's separation from the

8    U.S. Park Police, Department of Interior.

9           And if there are any questions that you need

10   clarification on, please ask me to repeat or to

11   clarify, and I'll be happy to do so.

12      Chief Chambers, would you please state your name,

13   place of employment and job title?

14           THE REPORTER:  Would you like me to swear the

15   witness?

16           JUDGE BANKS:  Oh, I'm sorry.  Please swear the

17   witness.

18   Whereupon,

19                    TERESA C. CHAMBERS

20   was called as a witness and, having been first duly

21   sworn, was examined and testified as follows:

22           EXAMINATION BY COUNSEL FOR APPELLANT
```

4

1          BY JUDGE BANKS:

2      Q    Chief Chambers, would you please state your

3   name, place of employment and job title?

4      A    It's Teresa C. Chambers.  I'm the Chief of

5   the United States Park Police.

6      Q    All right.  And how long have you been so

7   employed?

8      A    Since February of 2002, sir.

9      Q    Prior to becoming employed with the U.S. Park

10  Police as Chief, where were you employed?

11     A    For the four years immediately preceding that

12  I was the Chief of the Durham, North Carolina, Police

13  Department.  And the previous 21 years I served with

14  the Prince George's County, Maryland, Police

15  Department, retiring there at the rank of major in

16  December of 1997.

17     Q    Would you state your educational background

18  for the record?

19     A    I have a bachelor's degree in criminology and

20  law enforcement and a master's degree in applied

21  behavioral science, with concentration in community

22  development, from the Johns Hopkins University.

**Diversified Reporting Services, Inc.**
1101 Sixteenth Street, NW  Second Floor
Washington, DC  20036
(202) 467-9200

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE

- - - - - - - - - - - - - - - - - - x
                                     :
VERA MILLER,                         :
                                     :
         Complainant,                :    EEOC No. 100-A2-7453
                                     :
    v.                               :    Agency No.
                                     :    01-NCR-WP-VM-9
STEPHEN A. PERRY, Administrator,     :
General Services Administration,     :
                                     :
         Agency.                     :
                                     :
- - - - - - - - - - - - - - - - - - x


                         Room No. 7037
                         General Services Administration.
                         Seventh and D Streets, S.W.
                         Washington, D.C.

                         Thursday, May 29, 2003



        THE HEARING in the above-entitled matter commenced

at 9:38 a.m., pursuant to notice.


BEFORE:

        WALLACE LEW, Administrative Judge

**Diversified Reporting Services, Inc.**
1101 Sixteenth Street, NW  Second Floor
Washington, DC  20036
(202) 467-9200

2

APPEARANCES:

On Behalf of the Complainant:

        SIMON BANKS, ESQ.
        P.O. Box 17052
        Alexandria, Virginia 22302
        703-575-8487

On Behalf of the Agency:

        PAULA J. DEMUTH, ESQ.
        Office of Regional Counsel
        General Services Administration
        7th and D Streets, S.W.
        Washington, D.C. 20407
        202-708-9870

Also Present:

        David Chung, EEOC law clerk
        Elizabeth Hall, Agency intern

## STEVEN WILLIFORD

Miller v. GSA                                                                   4/6/2004

1

```
 1              UNITED STATES OF AMERICA

 2           MERIT SYSTEMS PROTECTION BOARD

 3             WASHINGTON REGIONAL OFFICE

 4

 5     - - - - - - - - - - - - - X   COPY

 6   VERA MILLER,                :

 7              Appellant, :   Docket No.:

 8   v.                        :   DC-0432-04-0283-I-1

 9   GENERAL SERVICES           :

10   ADMINISTRATION             :

11              Agency.    :   Volume 1

12     - - - - - - - - - - - - - X

13                  Alexandria, Virginia

14                  Tuesday, April 6, 2004

15

16          Deposition of STEVEN WILLIFORD, a

17   witness herein, called for examination by counsel

18   for Appellant in the above-entitled matter,

19   pursuant to notice, taken at the offices of Judge

20   Banks' Group, 1800 Diagonal Road, Suite 600,

21   Alexandria, Virginia 22314, beginning at

22   11:35 a.m., before Cindy D. Strohmaier, a
```

# BEFORE THE UNITED STATES
# MERIT SYSTEMS PROTECTION BOARD

**VERA MILLER**

       **Appellant**

**VS.**                                                                 **DOCKET NUMBER**
                                                                        **DC-0432-04-0283-I-1**

**STEPHEN A. PERRY, ADMINISTRATOR**
**GENERAL SERVICES, ADMINISTRATION**

       **Agency**

                                                                        March 17, 2004


## NOTICE OF DEPOSITIONS

      Comes now the complainant, by and through her representative, Judge Simon Banks, Judge Banks' Group, and notes the depositions of Steven Williford and David Mbonu, to be taken at 1800 Diagonal Road, Suite 600, Alexandria, Va. 22314-2840.   The depositions will commence as follows and continue until completion:

      Deposition of Dave Mbonu will commence at 10:00 o'clock a.m. on April 5, 2004 at 10:00 a.m. and will continue until completed.

      Deposition of Steven Williford will commence at 10:00 p.m. on April 5, 2004 and continue until completed.


_____
Judge Simon Banks
Judge Banks' Group
1800 Diagonal Road
Suite 600
Alexandria, VA. 22302
703 575-8487 Tele
703-575-8489 Fax
e-mail:  judgebanks@msn.com

# JUDGE BANKS' GROUP
# FORMER ADMINISTRATIVE LAW JUDGES

**\*BE REPRESENTED BY A FORMER ADMINISTRATIVE LAW JUDGE\* EXPERT IN EMPLOYMENT LAW\***

Judge Simon Banks, ALJ
Doctor of Laws
E-Mail: judges.banksalj10@verizon.net

1800 Diagonal Road, Suite 600
Alexandria, Va. 22314-2840
[202] 347-5458
[703] 575-8487
Fax# [703] 575-8489

March 17, 2004

**VIA FACSIMILE TO 202 708-4655**
**Tele 202 708-9870**
Paula J. DeMuth
Assistant Regional Counsel
Office of Regional Counsel
General Services Administration
ROB/7048 (WL)
7th and D Streets, S.W.

> **RE:** Vera Miller
> VS: GSA
> DKT#: DC-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-I-1

Please find attached, appellant's notice of deposition of Stephen Williford and Dave
Mbonu. If there are any questions please telephone the undersigned at 703 575-8487.

Judge Simon Banks
Judge Banks' Group


CC:

Vera Miller
8807 Canberra Drive
Clinton, MD 20735


Dave Mbonu
**VIA FACSIMILE TO 202  690-9777**
dave.mbonu@gsa.gov

**VIA FACSIMILE TO 202 708-8420**
202 690-9703 Tele
Steven Williford
Steven.williford@gsa.gov



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Baltimore District Office**

10 South Howard Street
3rd Floor
Baltimore, MD 21201
(410) 962-3932
TTY (410) 962-6065
FAX (410) 962-4270
1-800-669-4000

| | |
|---|---|
| ANTHONY D. HOLT<br>Complainant | ) EEOC No. Pending<br>) Agency No. _K-200-0139-03 |
| v. | ) |
| POSTMASTER GENERAL,<br>UNITED STATES POSTAL SERVICCE<br>Agency | ) |
| | ) Date:   March 22, 2004 |

MAR 2 5 2004

### ORDER DIRECTING AGENCY TO PRODUCE COMPLAINT FILE

On 2/25/2004, this office received a hearing request from complainant in the above-referenced complaint.

The agency is ordered, within the earlier of fifteen (15) days from receipt of this Order or from receipt of complainant's request for a hearing, to provide this office a copy of the complete complaint file, including the report of investigation, if any, for the above-referenced complaint. The agency also shall send a copy of the complaint file including the report of investigation to the complainant, if it has not previously done so. 29 C.F.R. § 1614.108(g); EEO MD-110, Chapter 7, Sections I-II. The complaint file must be forwarded even where there has been no investigation or there is an incomplete investigation. If the agency cannot provide the complaint file within fifteen (15) days, it must show good cause in writing to the Administrative Judge.

If the agency fails to provide the requested materials within fifteen (15) days from the date of receipt of this Order or to show good cause why it has not done so, the Administrative Judge may require the agency to bear the costs of the complainant's discovery, including attorney's fees, or impose other sanctions as appropriate. 29 C.F.R. § 1614.109(f)(3); EEO MD-110, Chapter 7, Section III. Sanctions may also be imposed for failure to investigate the claims adequately pursuant to EEO MD-110, Chapter 6.

ENECHI A. MODU
Administrative Judge
Telephone: (410) 962-7711
Facsimile: (410) 962-6633

## CERTIFICATE OF SERVICE

For timeliness purposes, it shall be presumed that the parties received the foregoing ORDER DIRECTING AGENCY TO PRODUCE COMPLAINT FILE within five (5) calendar days after the date it was sent *via* first class mail. I certify that on March 22, 2004, the foregoing ORDER DIRECTING AGENCY TO PRODUCE COMPLAINT FILE was sent *via* first class mail to the following:

Anthony D. Holt
15815 Millbrook Lane
Laurel, MD 20707-3321

Simon Banks
1800 Diagonal Rd.
Suite 600
Alexandria, VA 22314-2840

U.S.P.S.
EEO Compliance & Appeals
P.O. Box 1730
Ashburn, VA 20146

Lynn A. Tognocchi
Legal Technician

21

U.S. MERIT SYSTEMS PROTECTION BOARD

```
- - - - - - - - - - - - - - - - - x
                                   :
DAVID M. COHEN, Ph.D.              :
                                   :
          Appellant,               :
                                   :
     vs.                           :   MSPB Docket No.:
                                   :   DC0122191W0655
BUREAU OF ENGRAVING AND PRINTING,  :
DEPARTMENT OF TREASURY,            :
                                   :
          Agency.                  :
                                   :
- - - - - - - - - - - - - - - - - x
```

Hearing Room 1104
5203 Leesburg Pike
Falls Church,  VA

Friday, August 2, 1991

THE HEARING in the above-entitled matter commenced
at 9:00 a.m., pursuant to notice.

BEFORE:

      ADMINISTRATIVE LAW JUDGE MICHELLE M. HUDSON

2

APPEARANCES:

       On Behalf of the Appellant:

           DR. SIMON BANKS
           Job Protectors
           301 I Street, N.E.
           Washington, D.C.  20002

       On Behalf of the Agency:

           KATHY M. SACHEN-GUTE, Attorney-Advisor
           SUZANNE WILSON
           BRIAN SAXE
           Bureau of Engraving & Printing
           Department of the Treasury
           Washington, D.C. 20228

C E R T I F I C A T E

This is to certify that the foregoing proceedings before the Merit Systems Protection Board.

In the matter of:    David M. Cohen
                     _____
                                    v.
                     Treasury
                     _____


Docket Number:       DC07529110532
                     _____

        Date:        August 2, 1991
                     _____

      Before:        Judge Michelle Hudson
                     _____


were held as herein appears, and that this is the official transcript thereof.


                     _____
                          OFFICIAL REPORTER


Diversified Reporting Services, Inc.
1511 K STREET, N.W. SUITE 547
WASHINGTON, D.C. 20005
(202) 628-2121



## GOVERNMENT OF THE DISTRICT OF COLUMBIA
## OFFICE OF HUMAN RIGHTS

**Judiciary Square Office**
441 4th Street, NW Suite 570N
Washington, DC 20001
Phone: (202) 727-4559 • Fax: (202) 727-9589

**Kenneth Saunders**
**Acting Director**

**Penn Branch Office**
3220 Pennsylvania Avenue, SE, 1st Fl
Washington, DC 20020
Phone: (202) 727-4559 • Fax: (202) 645-6390

Judge Simon Banks
1800 Diagonal Road, Suite 600
Alexandria, VA 22314

**Re:    Docket No.: 03-491-P (CN)**
        **David Von Colln v. National Education Association**

Dear Judge Banks:

Enclosed is a copy of your client's formal complaint of discrimination prepared by this office in the above- referenced matter.

The Human Rights Act of 1977 established a mandatory mediation process. You are under no obligation to resolve this matter during mediation, but we must attempt to do so prior to forwarding this case for investigation. A Mediation Fact Sheet is enclosed for more detailed information about the mediation process.

Mediation is scheduled for August 22, 2003 at 10:00 a.m. Please contact Georgia Stewart at (202) 727-4559 to confirm the mediation date stated above.

If you have filed a complaint of employment discrimination, please be advised that you must mitigate your damages by seeking additional employment if you are currently unemployed. All records of both your attempt to gain additional employment and your past and future earnings must be kept to present as evidence to this office in the event you prevail on your underlying claim.

Please be advised that, due to budget constraints currently being experienced by the D.C. Government, processing of the above-referenced case may take approximately one year and five months rather than the normal one year.

Sincerely,

Kenneth Saunders
Acting Director

Enclosures