**BEFORE THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DR. SIMON BANKS,** | ] |
| | ] |
| **Plaintiff** | ] |
| | ] |
| **V.** | ] **Civil Action No. 08-215 (RCL)** |
| | ] |
| **HON. NOEL ANKETELL KRAMER,** | ] |
| **ET AL.,** | ] |
| | ] |
| **HON. MICHAEL B. MUKASEY** | ] |
| **UNITED STATES ATTORNEY** | ] |
| **GENERAL** | ] |
| **Defendants** | ] **July 9, 2008** |

**PLAINTIFF'S MOTION TO AMEND
THE COMPLAINT AS TO DEFENDANT MICHAEL B. MUKASEY**

Plaintiff's certificate pursuant to LCVR 7 1(m). Defendant Mukaskey does not consent to the relief requested

Comes now, Dr. Simon Banks, Plaintiff and motion this Honorable Court to amend the complaint as to Defendant Michael B. Mukasey, to bring complaint for declaratory judgment, and in support of the motion cites the following:

Plaintiff incorporate by reference Plaintiff's Memorandum of Law In Support of Motion to Amend the Complaint as to Defendant Michael B. Mukasey as if pleaded fully and completely herein.


_____/s/_____
Dr. Simon Banks, J.D.

**BEFORE THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
COLUMBIA**

DR. SIMON BANKS,                             ]
                                            ]
        **Plaintiff**                    ]
                                            ]
V.                                          ]   **Civil Action No. 08-215 (RCL)**
                                            ]
HON. NOEL ANKETELL KRAMER,                   ]
ET AL.,                                     ]
                                            ]
HON. MICHAEL B. MUKASEY                       ]
UNITED STATES ATTORNEY                        ]
GENERAL                                     ]
        **Defendants**   ]   **July 9, 2008**


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION TO AMEND
THE COMPLAINT AS TO DEFENDANT MICHAEL B. MUKASEY**


Comes now Dr. Simon Banks, J.D., Plaintiff pursuant to Fed. R. Civ. P. 6 and 15, and

submit Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Leave to file

amended complaint to amend the allegations against Defendant Michael B. Mukasey, and

in support cites the following:

     The Amended Complaint regarding Defendant Michael Mukasey is hereto

attached as an exhibit.

     The Court should allow the Plaintiff's action to cure any jurisdictional defect by

the instant amended complaint the Plaintiff seeks to file pursuant to the doctrine set forth

in *Dozier v. Ford Motor Co.,* 702 F.2d 1189, 1191 (D.C. Cir. 1983) and *GAF Corp. v.

United States,* 818 F.2d 901, 912-13 (D.C. Cir. 1987.)

## Legal standard for a Motion to Amend the Complaint``

Under Federal Rules of Civil Procedure 15(a), a party may amend its pleading once as a matter of course at any time before a responsive pleading is served.  Fed. R. Civ. P. 15(a), *Wiggins v. Dist. Cablevision, Inc.,* 853 F. Supp. 484, 499 (D.D.C. 1994)(Lamberth, J.); 6 Fed. Prac. & Proc. 2d § 1474. [1] According to the Court of Appeals, Rule 15(a) "guarantee[s] a plaintiff an absolute right" to amend the complaint once at any time so long as the defendant has not served a responsive pleading and the court has not decided a motion to dismiss.  *James v. Hurson Assocs., Inc. v. Glickman,* 229 F.3d 277, 282-83 (D.C. Cir. 2000)(citing Fed. R. Civ. P. 15(a)).  Once a responsive pleading is filed, however, a party may amend its complaint only by leave of the court or by written consent of the adverse party.  *Foman v. Davis,* 371 U.S. 178, 182 (1962).

The grant or denial of leave is committed to the discretion of the district court. *Firestone v. Firestone,* 76 F. 3d 1205, 1208 (D.C. Cir. 1996).  The court must heed Rule 15s mandate that leave is to be "freely given when justice so requires."  Fed. R. Civ. P. 15(a); *Foman,* 371 U.S. at 182; *Caribbean Broad. Sys., Ltd v. Cable & Wireless P.L.C.,* 148 F.3d 1080, 1083 (D.C. Cir. 1998).  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Foman,*  371 U.S. at 182.  Denial of leave to amend therefore constitutes an abuse of discretion unless the court gives sufficient reason, such as futility of amendment, undue delay, bad faith, dilatory motive, undue

---

[1] When a plaintiff's amendment of the complaint is "as a matter of course" under Rule 15(a), the plaintiff's filing of a motion requesting the court's leave to amend does not nullify the plaintiff's right to amend and invoke the court's authority to deny leave.  E.g., *Pure County, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002).

prejudice, or repeated failure to cure deficiencies by previous amendments. *Foman,* 371 U.S. at 182; *Caribbean Broad. Sys.,* 148 F.3d at 1083.

While Defendant Mukasey has filed a response to the amended complaint he has not complied with Local Rule 7.1(m) of this Court Rules.   Although the Plaintiff submit no contest to Mukasey's motion to dismiss the allegations as to Plaintiff's Motion for Mandamus, the Plaintiff does not waive his right to deny dismissal of the complaint so that the Plaintiff may plead and litigate the issues set forth in the Plaintiff's 2nd amended complaint.

**Plaintiff seeks to amend the complaint to include additional allegations against defendant Mukasey, and it is critical  that the Plaintiff be allowed to bring these claims against defendant Mukasey, so that the Plaintiff will not have to bring a new suit for declaratory judgment against the United States Department of Justice, which in fact is a party to these through Defendant Mukasey.**

The allegations/claims that the Plaintiff seek to join to the complaint pursuant to Fed. R. Civ. P. 18 supports Plaintiff's allegation that Plaintiff  needs this Court to declare the Plaintiffs rights with respect to the issues and claims set forth in the amended complaint against Defendant Mukasey.

With regard to undue delay, the text of Rule 15 does not prescribe a time limit on motions for leave to amend or to supplement. Fed. R. Civ. P. 15(a); *Caribbean Broad. Sys.,* 148 F.3d at 1084.  Accordingly, a court should not deny leave to amend based solely on time elapsed between the filing of the complaint and the request for leave to amend. *Atchinson v. District of Columbia,* 73 F.3d 418, 426 (D.C. Cir. 1996)(citing *Hayes v. New Eng. Millwork Distribs., Inc.,* 602 F.2d 15, 19 (1st Cir. 1979)).  Nor does the prolonged

nature of a case affect whether the plaintiff may amend his complaint.  *Caribbean Broad. Sys.,* 148 F.3d at 1084 (concluding that the length of litigation is relevant only insofar as it suggests bad faith or prejudice).  Rather, the court should take into account the actions of other parties and the possibility of resulting prejudice to the opposing party.  *Id.; Atchinson,* 73 F.3d at 426.

To demonstrate such prejudice, the opposing party "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendment been timely."  *Dooley v. United Techs. Corp.,* 152 F.R.D. 419, 425 (D.D.C. 1993)(quoting *Foremost-McKesson Inc. v. Islamic Rep. Of Iran*, 759 F. Supp. 855, 858 (D.D.C. 1991)).   For example, prejudice may exist when allowing an amendment would necessitate reopending discovery at a relatively late state in the proceedings.  E.g*., Societe Liz, S.A. v. Charles of the Ritz Group. Ltd*., 118 F.R.D. 2, 4 (D.D.C. 1987)(finding prejudice when the motion to amend was  filed just prior to the close of discovery, with trial fast approaching); *Indep. Petrochemical Corp., v Cas & Sur. Co*., 1987 WL 9232, at *2 (D.D.C. March 25, 1987) (finding prejudice when the proposed amendment would prolong discovery after the previously announced deadline.) Finally, prejudice may exist "when the effect of the amendment is to impair the opposing party's ability to present evidence."  *Prince v. Suffolk County Dep't of Health Servs.,* 1995 WL  144782, at *6 (S.D.N.Y. Apr. 3, 1995).

**The defendant cannot show any of the above that would justify denying the Motion to Supplement the Complaint.**

**WHEREFORE, Plaintiff request that the relief requested be granted.**

_____/s/_____
Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
571-970-8327
drsbanks@msn.com,

**BEFORE THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DR. SIMON BANKS,** | ] |
| | ] |
| **Plaintiff** | ] |
| | ] |
| **V.** | ] **Civil Action No. 08-215 (RCL)** |
| | ] |
| **HON. NOEL ANKETELL KRAMER,** | ] |
| **ET AL.,** | ] |
| | ] |
| **HON. MICHAEL B. MUKASEY** | ] |
| **UNITED STATES ATTORNEY** | ] |
| **GENERAL** | ] |
| **Defendants** | ] |


**ORDER**

Upon consideration of Plaintiff's Motion to Amend the Complaint as to

Defendant Michael B. Mukasey, it is this _____day of July, 2008

**HEREBY**

**GRANTED**


_____
UNITED STATES DISTRICT COURT
JUDGE

## BEFORE THE DISTRICT OF COLUMBIA COURT OF APPEALS

### No. 04-SP-789

### SIMON BANKS, Appellant

### v.

### UNITED STATES OF AMERICA

### (Improvidently titled by the Clerk of the District
### of Columbia Court of Appeals – the United States is not a party)

### (Hon. Noel A. Kramer, Trial Judge)  July 10, 2007

### APPELLANT'S AMENDED PETITION FOR
### REHEARING EN BANC

Comes now, Simon Banks, Appellant, pro se, and submit Appellant's Amended

Petition for Rehearing En Banc and for, pursuant to Rule 40 of the District of Columbia

Court Rules, appealing the decision of the Per Curiam panel dated December 14, 2007,

This appeal was argued on May 22, 2007 by appointed appeal counsel, before

Reid, Blackburne-Rigsby, **Associate Judges and Wagner, Senior Judge**

Consideration of the Full Court is necessary to maintain the integrity of the Court,

to promote Judicial Fairness, to protect the Appellant from manifest injustice resulting

from Judicial Conflict of Interest and the failure of Senior Judge Annice Wagner, former

Chief Judge, District of Columbia Court of Appeals ("DCCA") to recuse as a member of

the panel, because of conflict of interest and to avoid the appearance of bias, and conflict

of interest.[1]  **The United States is not the Appellee herein. [Emphasis Added]**

---

[1] Judge Wagner: **a) steered the outcome of the trial and sabotaged the Appellant's
entire defense, directly and indirectly and covered up the judicial errors,**

misconduct of Judge Kramer, and abuse of authority and arbitrary actions of Judge Kramer,

  b)  **Judge Wagner, appointed the investigator and legislator, Stuart Pierson, Chairman of DCCA Committee on Unauthorized Practice, and ignored all complaints Appellant filed against Stuart Pierson,**

  c)  **Judge Wagner appointed the Prosecutor, Thomas Zeno, AUSA, whom requested of Judge Wagner to appoint him to prosecute the Appellant after the Appellant sued him, *Simon Banks v. Holder, et al*, USDC DC (J. RC Lamberth) and after the Appellant filed complaint with the DCCA to hold Thomas Zeno in Contempt of Court, and After the Appellant filed complaint on March 10, 1999 with R. Keith Thomas, Associate Counsel U.S. Department of Justice Office of Professional Responsibility, for forgery, altering an official court document, corruption, obstruction of justice, etc.;**

  d)  **Judge Wagner appointed Judge Kramer to prosecute the Appellant and withheld from the Appellant that Judge Kramer was an applicant for Associate Judge of DCCA, and suppressed from the Appellant that Judge Wagner was a sponsor and ardent supporter of Judge Kramer's application for Associate Judge DCCA, and Judge Wagner appeared before the Senate Governmental Affairs Committee confirmation proceedings along with the Hon. Eric Washington, Chief Judge, in support of Judge Kramer, and Judge Wagner condoned the perjurious testimony of Judge Kramer when Kramer testified in response to Senator (Ohio) question whether she was aware of any complaint(s) filed against her, and in response Judge Kramer stated no and that she would not ordinarily be made aware of such complaints, although the Appellant on April 7, 2004 served Judge Kramer via facsimile and Judge Wagner via facsimile and Garland Pinkston, Clerk of DCCA via facsimile, *Simon Banks v. DCCA, Judge Annice Wagner and Judge Noel Kramer,* 04-399 along with complaint for temporary, preliminary and permanent injunctive relief, filed before the United States District Court for the Eastern District of Virginia; and**

  e)  **Judge Wagner appointed Edward Sullivan, Esq. As the Appellant's Appeal Counsel, whom at all times relevant was a candidate for Magistrate Judge, and whom abandoned the Appellant, after six months from date of his appointment, without ever disclosing to the Appellant that he was a candidate for Magistrate Judge, and whom never discussed with the Appellant Appellant's Assignment of Errors, or any Assignment of Error or appeal strategy, and**

  f)  **Judge Wagner appointed Attorney Cynthia Nordone as the Appellant's Appeal counsel on June 21, 2005, who used the Appointment to sabotage the Appellant's entire defense, and whom at oral argument, waived the appellant's issue that there was insufficient evidence to find the Appellant guilty of any of the four counts,**

  g)  **Judge Wagner used Garland Pinkston and his staff, to block the Appellant and otherwise prevent the Appellant from bringing to the Court's**

**THE USE OF THE UNITED STATES AS A PARTY BY THE CLERK IS AN EGREGIOUS ABUSE OF THE LOCAL POWER, AND THE MERE APPOINTMENT OF THE U.S. ATTORNEY DOES NOT AUTHORIZE THE HIJACKING OF THE UNITED STATES AS A PARTY WHERE NO FEDERAL INTEREST IS INVOLVED, AND WHERE THOMAS ZENO, FALSELY AND FRAUDULENTLY SUBMITTED U.S. GRAND JURY SUBPOENAS TO WITNESSES WHERE NO FEDERAL GRAND JURY WAS IMPANELED**.

The United States is not a party to these proceedings.

The proceeding involves one or more questions of exceptional importance:

(A)    **Whether the Court may regulate a member of the public thru a Rule, DC Ct. App. R. 49, without a statute and not violate the Due Process Clause.**

**See Unconstitutionality of Rule 49 as enforced against Appellant, fn3.**

---

attention, the Appellant's concerns regarding Cynthia Nordone conflict of interest, irreconcilable differences, dilatory tactics, attempts to sabotage the Appellant's Appeal,  terminating Cynthia Nordone, although there was clear evidence of ineffective counsel, conflict of interest, dilatory tactics, and although the Cynthia Nordone requested eight (8) frivolous extensions of time to file the Appellant's brief, without objection from the government, that spanned some 14 months when and while the Appellant was incarcerated for a period of 2 years subsequent to Judge Wagner appointing Cynthia Nordone as Appellant's Appeal Counsel, and although the Appellant was overdetained for some 40 days after the Appellant's sentence expired, with a designated release date of October 2, 2006, Cynthia Nordone's Appellant's brief was not filed until September 10, 2006, and but for the Appellant's self-help of filing his own DC Code §23-110 Emergency Motion for Release on April 12, 2006, resulting in the Appellant being released on April 28, 2006, the Appellant would have been still incarcerated for a period of six months beyond the expiration of the Appellant's Sentence.  See Appellant's Motion to Enjoin Cynthia Frank from continuing to interfere with the Appellant's DC Code § 23-110 proceedings.

h) And where Cynthia Nordone, was encouraged by Garland Pinkston to file a emergency motion for the Appellant's release on the date of the Appellant's release, April 28, 2006, although the Appellant had been transferred from the CTF to DC Jail on April 26, 2006 in connection with the Appellant's pro se emergency Motion for immediate release.

(B)    The panel decision conflicts with a decision of the United States Supreme

Court, ***Sperry v. State of Florida,* 373 U.S. 379 (1963),** which provides that

the Supremacy Clause preempt state laws that conflict with rights afforded

pursuant to the laws of the United States.  The Appellant's authority to

practice before administrative agencies of the United States is a protected

right, authorized by the EEOC, 29 C.F.R. §1614.695, and the decision

conflicts with decision of the court to which the petition is addressed,

*Brookens v. District of Columbia Court of Appeals on Unauthorized Practice*

*of Law,* 538 A.2d 1120, Amended Rule 49, Order M-198-96, December 11,

1997, effective February 1, 1998, and it conflicts with the laws of the

domicile and residence of the Appellant, the State of Virginia, **Virginia**

**UPL, UPR 9-102** provides:  "Unauthorized Practice of Law (UPL): Law

related services provided by nonlawyer professional service entitles, *Indeed,*

*a state bar cannot restrict or interfere with practice rights conferred under*

*federal law* , **and consideration by the full court is therefore necessary to**

**secure and maintain uniformity of the court**

(C)    The panels decision conflicts with a decision of the United States Supreme

Court, the United States Civil Service Commission, and the laws of the

District of Columbia with respect to the interchangeability of the titles

"Hearing Examiner" and "Administrative Law Judge  -- they are

synonymous.[2] **See Respondent's Exhibit 19 regarding the**

---

[2] District of Columbia "Workers' Compensation Administrative Law Judges Amendment
Act of 2000, D.C. Law 13-229, Reclassifying the Worker's Compensation "Hearing
Examiners" as "Administrative Law Judges." OAH legislation promoted by Judge John

Interchangeability of the titles "Hearing Examiner" and "Administrative Law Judge."

(D)    This case presents a challenge to the statutory laws of the State of Virginia which authorize its citizens, in particular the Appellant to practice law before administrative agencies of the United States, pursuant to the laws of the United States as an exception to the State of Virginia Unauthorized Practice Law.

**DC CT. APPEALS RULE 49 AS ENFORCED THROUGH ORDER 18 AGAINST THE APPELLANT IS UNCONSTITUTIONAL**

(E)    This case presents a facial challenge to the constitutionality of the D.C. Court of Appeals Rule 49 as enforced and applied to the Appellant.  Rule 49 through Order 18, as enforced against the Appellant is unconstitutional. [3]

---

Ferren while on sabbatical from DCCA as Corporation Counsel, that triggered his appointment to Vice President of Council for Court Excellence.

[3] **DC COURT APPEALS RULE 49 IS UNCONSTITUTIONAL D.C. App. R. 49 [Rule 49] is unconstitutional on the basis that it is impermissibly vague on its face, and an arbitrary restriction on personal liberties. *See Chicago v. Morales*, slip *op. No. 97*-1121 at 6 (June 10, 1999), and because it fails to provide notice for parties that it regulates whom are not licensed members of the bar.  The notice to this population of regulated must be clear and unambiguous.  *See General Elec. Co. v. EPA, 53* F.3[12] 1324, *1328-29 (D.C. Cir. 1995),* and because it fails to give ordinary citizens adequate notice of what is forbidden and what is permitted; *See Coates v. Cincinnati, 405 U.S. 489, 499*, and because it is overly broad and reaches constitutionally protected conduct that is permitted by federal laws.  *See Wilson v. Yoder, 406* U.S. 205 (1972); and because it does not provide minimal standards to guide the District of Columbia Court of Appeals' prosecutors, investigators, regulatory police; and judicial officers of the Court.  See *Kolender v. Lawson*, 461 U.S. at 358; and because it delegates too much discretion to the judiciary, the police, the DCCA' prosecutors and investigators; See *Smith v. Goguen*, 415 U.S. 566, 575; and because it pre-empts and undermines federal laws and rights under federal laws in violation of the *Supremacy Clause, Art 6, cl, 2; See Ham v. City of Rock Hill, 379 U.S. 306*; and because it violates the District of Columbia Publication Act and Administrative Procedures Act for failure to publish in the District of Columbia**

(F)    This is a case that presents a challenge to the right of the Appellant, a law

school graduate and former hearing examiner, to represent himself, pro se

against the courts imposing upon the appellant an ineffective counsel whom

waived 99 assignments of errors, and ignored the appellant's demands that she

enforce pretrial issues argued by the appellant pro se at the trial of the case,

and in a wholesale manner, rejected the appellant's affirmative defenses, and

although the Appellant attempted to terminate the appointed appeal counsel

after she failed to file the Appellant's brief for some 4 months, six months, 12

months, and although it to the Appointed appeals counsel took some 14

months and two weeks to file the Appellant's appeal brief which contained

one assignment of error, after seeking and securing some 9 continuances

without objection, and where the appointed counsel waived all but one of the

---

**Register, rules that it enforce against the general citizenry.  *See § 1-1505,§ 1-506\*, § 1-1507* of the D.C. Code which requires publication of the District of Columbia Municipal Regulations and Council acts and resolutions, Chap. 15 or 16 of *the Code §1532, § 1533*.  See D.C. Law 1-120 "*D.C. Register Publication Act of 1976" of Pub. L. 93-198, effective April 19, 1977. (ref. 23, D.C. Register, 5050, Jan. 26, 1977*).  See also D.*C. Codes § 1-1509 (d),* which requires that parties be afforded opportunity to file exceptions and present arguments, *D.C. Code § 1-262(b), (c).  See Mullein v. Central Hanover Bank and Trust Co., 33 U.S. 306, 313; Goldberg v. Kelly, 397 U.S. 255;* and because it promotes, even encourages impermissible restraint on liberty and led to arbitrary enforcement.  *Kolender v. Lawson 461 U.S. at 357*; and because it promotes and has led to acts that have abridged the right to travel and engage in commerce. *See Planned Parenthood of Central Mo. V. Danforth, 428 U.S. 52, 82-83 (1976); Kent v. Dulles, 357 U.S. 116, 126 (1958)*; and because it promotes and has led to impermissible restraint on the liberty of contract, *Art. 1§10, Clause 1,* and because it abridges the *Privileges and Immunities Clause, Article IV, Cl. 1.  See New Hampshire v. Piper, 470 U.S. 284*; and because it impermissibly operates to trespass and encroach upon the executive or legislative authority, in violation of the separation of powers.**

Appellant's Assignments of errors and affirmative defenses again at the oral

argument on May 22, 2007.

**DEPRIVATION OF A FAIR TRIAL WHEN JUDGE KRAMER DID NOT
RECUSE**

1.        The Court deprived the appellant of a fair trial when Judge Kramer did not

recuse, when she suppressed from the Appellant that she was an applicant and candidate

for Associate Judge to the DCCA, and when Judge Kramer waited until the close of the

evidence and the end of the trial to rule upon the Appellant's Motion challenging the

jurisdiction of the Court for purposes of steering the outcome and for the purpose of

preventing the Appellant from submitting challenges to the Court's decision on

jurisdiction .

2.        **Judge Kramer ordered Appellant released on June 7, 2004, and forced**

**the Appellant to Alexandria, Va. In violation of the Extradition laws and Compact**

**Act, when the Appellant was serving a sentence imposed by Judge Kramer on June**

**3, 2004, and Judge Kramer issued a bench warrant on June 24, after the Appellant**

**was transferred to Virginia on June 23, 2004, therafter causing the Appellant to be**

**overdetained for 40 days subsequent to the expiration of the Appellant's sentence.**

3.        The Court deprived the appellant of a fair and impartial judge when Judge

Kramer suppressed from the Appellant that she was planning to convict the Appellant

and use her decision against the Appellant as a catalyst to promote her application as an

associate judge to the DCCA, and for purposes of citing her decision in the instant case

involving the Appellant, as her most important case, in response to expected questions

and inquiry of the Senate, requesting her to identify some of her most important cases, for

purposes of promoting her self interest against the Appellant's Constitutional right to a

fair trial.

### DEPRIVATION OF EFFECTIVE ASSISTANCE OF COUNSEL AND NULLIFICATION OF THE APPELLANT'S ABILITY TO ASSIST IN HIS APPEAL

4.            The Court deprived the appellant of effective assistance of counsel on appeal

and nullified the Appellant's ability to assist in the prosecution of his appeal,  pursuant to

the conspiracy between Judge Kramer and Judge Wagner, and Garland Pinkston, to steer

the outcome, when the Court directly and indirectly blocked all of the Appellant's efforts

to terminate Cynthia Nordone, as Wagner appointed appeal counsel notwithstanding

extreme evidence of ineffective counsel, conflict of interest, and that Cynthia Nordone

was serving as a second prosecutor. The Court deprived the appellant of his constitutional

right to represent himself on appeal, notwithstanding appointed counsel Cynthia

Nordone's failure to file the Appellant's appeal for one year and two months after being

appointed, and not withstanding the Appellant's numerous complaints against Cynthia

Nordone, for irreconcilable differences, ineffective counsel, dilatory tactics, plan to

sabotage the Appellant's appeal. Cynthia Nordone passed the Bar in 2002. **See the**

**attached exhibits, 4th Motion to terminate Nordone.  3-14-2006 letter to Nordone.**

The *Baish* case, *United States v. Baish,* 460 A.2d 38, 40 (D.C. 1983)  is inapplicable to

the instant case, Appellant never called into the District of Columbia, as in *Baish.*

5.            The *Hunter* case, *Hunter v. United States,* 48 U.S. App. D.C. 19 (1918), is

inapplicable to the instant case.  The Appellant never went into another state that was

under contract with the District of Columbia, to commit an offense against the District of

Columbia in connection with the District of Columbia contract with the sister state.

There is no nexus. (Cited in the per curiam decision at 12¶2.)

6.        The DCCA has stretched the reach of its authority to cover the entire United States and its territories, by, based upon a conclusive presumption, articulating that it has nationwide criminal jurisdiction to protect its "orderly administration of justice." No such right has been vested in the District of Columbia Courts by the Constitution or the United States Congress. Art. 1, §8, cl 17. To create this legislative stretch by judicial decree is overreaching, and violates the plenary powers of the United States Congress. Art. 1, §8, cl 17.

7.        The Dyson case is inapplicable to the instant case.

8.        The Court order, ordering the Appellant, a resident of the State of Virginia, to State a falsity on advertisements and any advertising materials, business cards, firm resumes, personal resumes, firm descriptions, stationery, personalized forms or any other business documents relating to representation of individuals before administrative agencies or courts in this jurisdiction which do not expressly state: that the Appellant is trading as Job Protectors, which the Appellant is not and requiring that the Appellant to state he is not authorized to give opinions concerning any persons legal rights, when the appellant is authorized the Appellant to give legal opinions in connection with the Appellant's authorization to practice law before administrative agencies of the United States.

9.        This speech restraint is preempted by the Supremacy Clause, enforcement of 29 CFR §1614,605, 5 U.S.C. §2303, et seq., EEOC Management Directive 110, against Rule 49, and Order 18 which conflict with Rule 49 and Order 18 in that they violates the

Appellant's constitutional rights pursuant to the Supremacy Clause, the First

Amendment. See District of Columbia Court of Appeals (DCCA) Rule 49 as amended,

Order M-198-96, December 11, 1997, effective February 1, 1998.  See Virginia UPL,

UPR 9-102 [4], and See ***Sperry v. State of Florida,*** **373 U.S. 379 (1963), 29 C.F.R.**

**§1614.605; EEOC Management Directive 110 (MD-110), and the Commerce Clause,**

Clearly the lack of practice rules, rules of interpretation, and guidelines to govern

DCCA's enforcement of Rule 49, has led to unequal evaluation.  "The formulation of

uniform rules to determine intent based on these recurring circumstances is practicable

and, we conclude necessary.  *Ibid.* at 7.  **See** *Gore v. Harris,  ___So. 2d__(slip op at*

*51)*(citing from *Bush v. Gore, slip op. No. 00-949, 531 U.S. at 6 (2000).*

The DCCA, from 1987 through the present, interpreted Rule 49 as if it were a

statute, and as not providing the court with jurisdiction over practice before

administrative agencies when applied to the Kentucky attorney **Benoit Brookens,** and the

---

[4] **Virginia UPL, UPR 9-102** provides:  "Unauthorized Practice of Law (UPL): Law related services provided by nonlawyer professional service entitles, *Indeed, a state bar cannot restrict or interfere with practice rights conferred under federal law. **See Sperry v. Florida,** **373 U.S. 379 (1963).  At fn. 5, Va. UPR 9-102** provides: "A partial list of some federal agencies allowing "qualified representatives" (nonlawyers) to act on behalf of a party before that agency includes:

    a.  **Department of Treasury, internal Revenue Service and Tax Court – 31 U.S.C. § 330; 5 U.S.C. § 500; 31 C.F.R. § 10.33; IRC § 7452 and Tax Court Rule of Practice and Procedure 200**
    b.  **Immigration and Naturalization Service – 8 C.F.R. § 3.1(d)(3)**
    c.  **Department of Energy – 10 C.F.R. § 205.3**
    d.  **Social Security Administration – 20 C.F.R. § 416.1400**
    e.  **Drug Enforcement Agency – 21 C.F.R. § 1316.5-**
    f.  **National Labor Relations Board – 29 C.F.R. § 102.38**
    g.  **Equal Employment Opportunity Commission – 29 C.F.R. § 1601.7**
    h.  **Health and Human Services – 45 C.F.R. § 205.10 (a)(3)(iii)**

**Bellingers,**[5] The DCCA's inconsistent interpretation of its own Rule, Rule 49, has on a sustained and continuous basis deprived the Appellant of equal protection of the laws.

## LACK OF JURISDICTION OVER FEDERAL PRACTICE LOCATED IN THE STATE OF VIRGINIA

10.         The Court erred when it ruled it has jurisdiction over the Appellant's professional authorized practice located in the State of Virginia, licensed to do business in the State of Virginia, *Id.* and authorized by the United States EEOC and the United States Merit Systems Protection Board, nationwide.  The territorial scope of the DCCA's jurisdiction is limited to the jurisdiction vested in it by the United States Congress, Art. 1 §8, cl 17, and the District of Columbia Code.  **See** *Pealmore v. United States,* 411 U.S. 389 at 394 (1973).  See Senate Rep. No. 91-405 at Page 1 through 3, 5, 18; H.R. Rep. No. 91-907, Pp. 23-24-33 pursuant to its Clause 17 authority, Congress enacted laws that compose the District of Columbia Code.  The 1970 Reorganization Act amended the Code by creating the Superior Court of the District of Columbia and the District of Columbia Court of Appeals.  The Courts being expressly established pursuant to Art. 1 of the Constitution.  D.C. Code Ann. § 11-101 ((2)(Supp. V 1972).   See n2 *supra.* The Superior Court among other things, was vested with jurisdiction to hear criminal cases involving alleged violations of criminal laws applicable only to the District of Columbia, *i.d.* § 11-923; the District of Columbia Court of Appeals, with jurisdiction to hear appeals in cases.  *I.d.* § 11-721. (*i.d.* at 398).  None of the acts complained of took place within the District.  The term "within the District" is a term of art.  **See** *Blair-Bey v. Quick,* 151 F.3d. at 1043 [n4].  **See also,** *McCall v. Swain,* 510 F.2d 167 (D.C. 1975).

---

[5] ***Brookens v. District of Columbia Court of Appeals,* 538 A.2d 1120, *Simon v. Bellinger,* 643 F.2d 774 (1980)., *Sperry v. State of Florida,* 373 U.S. 379 [1963].**

11.         Judge Levie's speech restrictions contained in Order 18, which derive from

Rule 49, as articulated by the trial judge at 4 Findings of Fact and Legal Conclusions

(FFLC), violates the Appellant's right to Free Speech and Association pursuant to the

Free Speech Clause of the First Amendment, [6] and is preempted by Supremacy Clause.

12.         The DCCA has never promulgated any guidelines for implementation and

enforcement of Rule 49.  **See** *Brookens v. District of Columbia Court of Appeals on*

*Unauthorized Practice of Law,* 538 A.2d 1120.

13.         These speech-restraint prohibitions that burden Appellant and Appellant's

class (unlicensed practitioners whom are not licensed by any state bar) cannot survive the

"rational basis" review which the Court require to be rationally related to a legitimate

governmental purpose."  *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432,

446 (1985).

14.         To punish the Appellant for truthful speech, under the pretext of maintaining

the orderly administration of justice, and by prosecuting the Appellant for practicing law

without a state bar license where no State Bar license is required,  is unethical, wrongful

and violates the prohibition regarding prior restraint and self-censorship which is

disfavored by the First Amendment.. *Fla Star,* 491 at 535.  **See** *New York Times v.*

*United States,* 43 U.S. 713-725-26 (Brennan, J. Contrary), *United States v. Noriega,* 917

F.2d 1543, 1549 (11th Cir. 1990).  The DCCA, under the pretext of protecting the public

---

[6] The Injunction punishes the Appellant for exercising rights connected with Freedom of
Association with the Legal Profession, by virtue of Appellant's Law Degree, by virtue of
his restricted federal administrative practice, by virtue of appellant's former position as
an Administrative Law Judge and Hearing Examiner (both titles are synonymous and
involve adjudicating administrative hearings, where attorneys represented their clients
before the Appellant sitting as a "Judge", a "right closely allied to freedom of speech and
a right which, like free speech, lies at the foundation of a free society.  See *De Jorge v.*
*Oregon*, 299 U.S. 353, 364; *Bates v. Little Rock,* 361 U.S. at 522, 523.

and the administration of justice, ignore Appellant's constitutional rights that authorize Appellant's practice and titles. (citing from *NAACP v. Alabama ex rel Patterson,* 357 U.S. 449, at 439, "….A state may not, under the gise of prohibiting professional misconduct, ignore constitutional rights. *See Schware v. Board of Bar Examiners,* 353 U.S 232; *Konig at berg v. State Bar,* 353 U.S. 252.

The Court may not use *United States v. Baish,* 460 A.2d 38, 40 (D.C. 1983) (cited at 13 ¶1 of the Per Curiam decision), because in *Baish,* the defendant called into the District of Columbia, as opposed to the instant case, where the government employee of the United States Attorney, called the Appellant from a phone, purportedly located in D.C.

## FAILURE TO PROVIDE COUNSEL AT SENTENCING VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHTS

**21.     .The Court** failed to provide defendant counsel at sentencing, and the Court erred when it did not inquire of defendant whether defendant wished to have counsel appointed and available at sentencing This error violated defendant's Constitutional Right pursuant to the Sixth Amendment of the Constitution, the Right to Counsel.  Because of the sua sponte arrest on April 8, 2004 and the Summary Proceedings on June 3, 2004, the defendant was unable to bring this claim at trial.  The defendant never waived right to counsel.  Moreover, the extent of inquiry before accepting a waiver of counsel at sentencing the Court never engaged in pursuant to the requirement of *Von Moltke v. Gillies,* 332 U.S. 708 (1948), *Moore v. Michigan,* 355 U.S. 155 (1957); *Robins v. United States,* 404 U.S. 1049 (1972 dissenting opinion). See also *Boyd v. Dutton,* 405 U.S. (1972).  See also *Iowa v. Tovar,* 541 U.S. --, 124 S.Ct. 1379 (2004).

## THE GOVERNMENT CONTACT EXCEPTION PREEMPTS THE COURT JURISDICTION OVER THE DEFENDANT IN CONNECTION WITH THE DEFENDANT'S CONTACTS WITH THE UNITED STATES GOVERNMENT

While the Appellant did not enter the District of Columbia, it is well established law that "Entry into the District of Columbia by nonresidents for purposes of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction" *Environmental Research Int'l, Inc. v. Lockwood Green Eng'rs., Inc*., 355 A.2d 808, 813 (D.C. 1976) (en banc.)  The rationale for this exception.  The **Government Contacts Exception** has been upheld and cited in the following cases:  "The District of Columbia Court of Appeals has stated repeatedly that the jurisdictional reach of DC Code § 13-423 is coextensive with the Due Process Clause.  *Berwyn Fuel, Inc. v. Hogan*, 399 A.2d. 79, 80 (DC 1979), and 521 F.Supp. 142 Supra, the Court cites Judge Ferren in the conclusion reached by the District of Columbia Court of Appeals in *Rose v. Silver*, 394 A.2d. 1368 (DC 1978).  Judge Ferren first distinguished *Environmental Research International Inc. v. Lockwood Green Engineers, Inc.,* 355 A.2d. at 812, which held that the end-state acts of an "independent contractor" could not be attributed to the nonresident for jurisdiction.

### SPECIFIC JURISDICTION UNDER DC CODE § 13-423
### "TRANSACTING BUSINESS"

The government failed to prove that the Appellant purposefully directed his activities at residents of the forum state.  In *Gonzalez v. Internacional De Elevadores*, 2006 DC App LEXIS 21, [HN7] the DC Court of Appeals, provide:

We conducted an extensive analysis of the history of section 13-423 (a) (1) and (b) in *Shopper's Food Warehouse v. Moreno*, 746 A.2d. 320, 324-330 (DC 2000) citing *Int'l, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d. 808, 810-811 (DC 1976) (en banc) …. In other words, the defendant must have minimum contacts with the forum so that exercising personal jurisdiction over it would not offend "traditional notions of fair play and substantial justice."  *Shopper's*, 746 A.2d. at 330 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  **Hence the defendant must have "purposefully directed" [his] activities at residents of the forum …."**  *Shoppers*, 746 A.2d and 331….**This means that the non-resident defendant's "conduct and connection with the forum state are such that he would reasonably anticipate being haled into court**

there."…..[843] …"This single, responsive mailing cannot constitute meaningful" contact, *Burger King*, 471 U.S. at 472, or "substantial connection between the defendant and the forum state, *McGee v. Int'l Life Ins.* (1951)" [HN7] "The scope of its otherwise broad "transacting any business" clause is limited by the rule that contact with a federal instrumentality located in the District will not give rise to personal jurisdiction. *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs.,* Inc. 355 A.2d. 808, 813 (DC App. 1976) en banc.

### THE GOVERNMENT MUST ESTABLISH JURISDICTION OVER PERSON

The government failed to establish jurisdiction over Appellant. The Court in

*United States v. Ferrara*, 54 F.3d. at 833, 1995 U.S. App. LEXIS 11789 at 24 opined:

"…the government must nevertheless establish the District Court's jurisdiction over her person." (citing *Echevarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d. 24, 29 (1st Cir. 1988); see also *Edmond v. U.S. Postal Serv. Gen. Counsel*, 292 U.S. App. DC 240 (DC Cir. 1991). **See § 13-423 (A) (4)**

**See *McFarland v. Esquire Magazine*, 74 F.3d at 1301, (citing *Keton v. Hustler Magazine*, 465 U.S. 770, 781 n.13 (1984), *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d. 44, 52 (2nd Cir. 1991),** including the District, hardly constitutes doing or soliciting business, or engaging in a persistent course of conduct, with the District." The writer is not the publisher; *Unger's* contacts must be accessed separately." See *Keeton v. Hustler Magazine*, 465 U.S. 770, 781 n.13 (1984

### ASSOCIATE JUDGE JOHN FERREN, TEMPORARILY STEP DOWN TO BECOME CORPORATION COUNSEL AND FACILITATED A CHANGE IN THE TITLE "HEARING EXAMINER" TO "ADMINISTRATIVE LAW JUDGE" AND THE NEW LAW ARISING OUT OF JUDGE FERREN'S ACTIONS REQUIRED A LICENSE TO PRACTICE LAW AS A CONDITION FOR RETAINING THE CONVERTED HEARING EXAMINER POSITION TO ALJ, WHEN AND WHILE THE DCCA WAS PROSECUTING THE APPELLANT FOR SPEAKING OF THE INTERCHANGEABILITY OF THE TITLES

See D.C. Administrative Hearing Establishment Act (OAH), D.C. Law 14-76, March 6, 2002. **See DC Law 13-229, Worker's Compensation Administrative Law Judges Amendment Act of 2000 effective April 13, 2001. See attached, Act, Office of Administrative Hearings Establishment Act of 2001.**

_____
**Dr. Simon Banks, J.D.**

CERTIFICATE OF SERVICE

I, hereby certify that a copy of this pleading was mailed, postage prepaid, and/or sent via electronic mail, this 9th day of July, 2007, to:

John P. Mannarino, Esq. AUSA
555 4th Street, N.W.
Washington, D.C. 20305
Jeffrey A. Taylor, Esq. AUSA
W. McLeese, III, AUSA
Lisa Schertler and
John D. Griffith

_____
**Dr. Simon Banks, J.D.**
**P.O. Box 17052**
**Alexandria, Va. 22302**
**703 965-5637**
**drsbanks@msn.com**





Volume 18, Issue 1          February 2008

# The NAALJ News

## 2008 NAALJ MIDYEAR AND ANNUAL CONFERENCES

### KEYSTONES OF JUSTICE: IMPROVING ALJ TRIAL SKILLS
### JUNE 24-26, 2008
### HARRISBURG, PENNSYLVANIA

**Inside this issue:**

| | |
|---|---|
| Harrisburg Midyear | 1-2 |
| NYC 2008 Annual | 1, 3 |
| Affiliate News | 3-4 |
| Alexander Tribute | 5 |
| Alexander Scholarships Awarded | 5 |
| President's Message | 6 |
| Treasurer's Report | 6 |
| Special Ed Section | 6 |
| 2007 DC Annual Photos | 7 |
| NAALJ Committees | 8 |
| Officers and Board of Governors | 8 |

**Special points of interest:**

- NAALJ Midyear June 24-26, 2008 Harrisburg, PA
- NAALJ Annual October 11-15, 2008 New York City, NY
- NAALJ Midyear 2009 Little Rock, AR

Widener University School of Law hosts the 2008 National Association of Administrative Law Judiciary Midyear Meeting in Harrisburg, Pennsylvania's Capital city, on June 24-26, 2008. This annual event will occur for the first time in Pennsylvania, and will be held at the Harrisburg Hilton Hotel in downtown Harrisburg, Pennsylvania.

**GENERAL CONFERENCE INFORMATION**

Conference registration will open on March 15, 2008. On site registration opens on the afternoon of Tuesday, June 24, and NAALJ Board meetings will be held on Tuesday afternoon. The Conference officially begins at 9 a.m. on June 25 and ends at 5 p.m. on June 26.

The Conference registration fee is $375.00. For NAALJ members the tuition is $325.00. There is a $25.00 discount for registration before May 1, 2008.

*(Continued on page 2)*

  

**New York City, Gotham, Metropolis. Like no other city on earth, New York City brings the world to you.**

### THE ADMINISTRATIVE JUDICIARY:
### DEFINING JUSTICE IN A CHANGED WORLD
### OCTOBER 11-15, 2008
### NEW YORK CITY, NEW YORK

This New Century poses many new challenges and opportunities for the administrative judiciary. And there is no other place in the western world more in touch with those challenges and opportunities than New York City. The City has been called the "Capital of the World" and, with its scores of ethnic groups, nationalities, languages, and religions, it is in many ways a microcosm of the planet. In a diverse society, only steadfast adherence to Justice is a proven and reliable means of insuring the peace, prosperity, and durability of our civilization. It is clear that the Administrative Judiciary will continue to play an ever-expanding role in this endeavor.

**EDUCATIONAL PROGRAM:**

This conference will investigate a myriad of perspectives on the complex issue of justice in our world from several points of view. Sessions are now being developed and finalized regarding Access to Justice Issues, Federal and State Administrative Case Law, Evidence, Confronting Hearing Room Bias, Judicial Independence,

*(Continued on page 3)*



# KEYSTONES OF JUSTICE (continued)

## HOTEL INFORMATION

A special hotel group rate of $124 per night per room plus taxes has been negotiated with the Harrisburg Hilton. To make your reservation at this rate, telephone the Harrisburg Hilton at (717) 233-6000. To obtain this rate you must use the group code NAA. Fax at (717) 233-6271.

## EDUCATIONAL INFORMATION

The education program will total twelve hours of continuing education credit, of which one will be in ethics. Widener University School of Law is licensed by the Supreme Courts of Pennsylvania and Delaware to deliver continuing legal education credits.

Featured presenters and their topics include:

**Alternative Dispute Resolution for ALJs.** 120 minutes. Experienced ALJs will discuss the value and uses of Alternative Dispute Resolution (ADR) and successful ADR techniques and approaches.

**Presenters:**

**David A. Cicola** is the director of the Pennsylvania Worker's Compensation Office of Adjudication.

**David B. Torrey** is a Worker's Compensation Judge with the Pennsylvania Department of Labor & Industry.

**Credibility for ALJs.** 180 minutes. An experienced judge will review and explain all aspects of making credibility determinations at administrative hearings.

**Presenter:**

**Thomas Cheffins** is Chief Administrative Law Judge for the Department of Public Welfare Bureau of Hearings and Appeals in Harrisburg, Pennsylvania.

**Bias is a Four Letter Word.** 90 minutes. Bias occurs in administrative hearings unintentionally or unconsciously. This presentation will help ALJs recognize their biases.

**Presenter:**

**Felix Thau** is an Administrative Law Judge with the Pennsylvania Liquor Control Board, Office of Administrative Law Judge.

**Revision of the Model State Administrative Procedure Act.** 60 minutes. A drafting committee of the National Conference of Commissioners on Uniform State Laws (NCCUSL) is revising the 1981 Model State Administrative Procedure Act (MSAPA). Two reporters will review the adjudication provisions of the MSAPA.

**Presenters:**

**Gregory Ogden** is a Professor at Pepperdine University School of Law. Professor Ogden has served as Reporter (drafter) for the Drafting Committee to the Model State Administrative Procedure Act of NCCUSL since 2006.

**John L. Gedid** is a Vice Dean and professor of Widener University School of Law—Harrisburg. He served as reporter for the Drafting Committee to the Model State Administrative Procedure Act of NCCUSL from 2003 until 2006.

**Developments in the Law—Recent Important State and Federal Cases.** 60 minutes. This is an update on important state and federal cases involving administrative law.

**Presenter:**

**Gregory Ogden** is a Professor at Pepperdine Law School, where he teaches administrative law, among other subjects.

**Appeals from Administrative Agencies—the View from the Bench.** 90 minutes. A panel of judges from the Pennsylvania Commonwealth Court, the intermediate appellate court to which has jurisdiction of all appeals from agency action in Pennsylvania, will discuss what they look for in administrative agency opinions.

**Presenter:**

**Honorable Bonnie Brigance Leadbetter.** Judge Leadbetter is President Judge of the Commonwealth Court of Pennsylvania.

**The Effect of Intrinsic Agency Factors on Adjudication.** 60 minutes. A panel of experienced ALJs and agency officials will discuss factors inherent in agency structure and purposes that have impact on adjudication. One theme will be the tension between independence of ALJs and the need for uniformity in agency discussions.

**Selected Hearsay Problems for ALJs.** 60 minutes. Analysis and discussion of frequent hearsay problems that occur at administrative hearings.

**Presenter:**

**Linda L. Ammons** is Associate Provost of Widener University and Dean and Professor of Law at Widener University School of Law.

**Practicing What We Preach—Ethics for ALJs.** 60 minutes. Discussion of ethical problems faced by ALJs.

**Presenter:**

**Steven Wise** is an Administrative Law Judge with the Iowa Workforce Development Department.

## HARRISBURG PENNSYLVANIA ATTRACTIONS

Harrisburg, the Capital City of Pennsylvania, is filled with attractions. Only a short walk from the Hilton Hotel, the Pennsylvania Capital Building is praised as one of the most architecturally beautiful capitols in the United States. It has been described as a "Palace of Art" because it is filled with noted painting and sculpture.

Nearby and also within easy walking distance, the Pennsylvania State Museum contains historical and other exhibits relating to the State, art exhibits and the state archives.

Harrisburg was the most northern point that Confederate troops reached during the American Civil War. Just prior to the Battle of Gettysburg, Southern Troops on reconnaissance reached Harrisburg and fought a few small pitched skirmishes here. One planned excursion for conference attendees is a visit to Harrisburg's National Civil War Museum. For serious Civil War buffs, Harrisburg is just forty minutes by car from the Gettysburg Battlefield.

Harrisburg is only a few miles distant from Hershey, Pennsylvania and Hershey Park, a popular amusement park, and a golf destination.

Amish Country in Lancaster, Pennsylvania is within easy driving distance, and is a popular tourist destination.

# Defining Justice in a Changed World (continued)

Special Education, Legal Research, Evaluating Scientific Evidence, Complex Litigation, and many other topics. More details will be available soon.

### ACCOMMODATIONS:

The conference will be held at the New York Marriott Downtown (85 West Street / New York, NY 10006). This striking hotel, with a pool, sauna, and exercise room, is located in the heart of New York's historic financial district, just a few blocks from the Hudson River and a waterfront park with breathtaking views of Ellis Island and the Statue of Liberty. Downtown Manhattan is within walking distance of the hotel and three of the city's subway lines are only a few blocks away. We have secured a remarkable hotel rate of $229.00/night, a rate far below the federal government per diem rate for New York City.

### SOCIAL ACTIVITIES:

Planning is now underway to ensure that early arrivals will be afforded opportunities to partake in memorable organized activities on Saturday, including Broadway shows and/or Dinner on Saturday evening. In addition, the Social Planning Committee is working with NYC & Company, the successor to the NYC Visitors and Convention Bureau, to organize an unforgettable group visit to an historic venue in NYC, probably on Tuesday afternoon.

### CONFERENCE PARTNERS:

Conference Hosts are the National Association of Administrative Law Judiciary (NAALJ), the New York State Administrative Law Judges Association (NYSALJA), and the New York County Lawyer's Association (NYCLA) CLE Institute. NYCLA will administer the Conference CLE credits and assist participants from all states in acquiring CLE credit. *(New York County Lawyers' Association has been certified by the New York State Continuing Legal Education Board as an Accredited Provider of continuing legal education in the State of New York from 2007 through 2010.) (Conference Tuition Assistance available: details and application process pending.)*

Other conference partners and supporters so far include the New York City Office of Administrative Trials and Hearings (OATH), the Administrative Justice Coordinator of the New York City Mayor's Office, the City University of New York (CUNY) Law School, and the National Association of Women Judges (NAWJ). ThomsonWest is now confirmed as one of our Major Sponsors and we are currently in final discussions with many other companies regarding their level of sponsorship. In addition, to date there are twelve New York State agencies, three New York City agencies, and one Federal agency involved at various levels of participation.

Questions or comments may be directed to:

**John G. Farrell**,
NYSALJA President,
jfarrell.nysalja@yahoo.com
**James Horan**
(Education Committee)
jfh01@health.state.ny.us
**Catherine Bennett**
(Sponsorship Committee)
cbennett@nysdta.org
**Peter Loomis**
(Social Activities Committee)
PLOOMIS@gw.dot.state.ny.us
**Joel Ziev**
(Finance Committee)
jdziev@aol.com







**Visit the Statute of Liberty and Time Square in NYC**



# NEWS FROM STATE AFFILIATES

## Maryland/DC Affiliate News

**Jim Murray, Acting President**

The year 2007 was one of highs and deep lows for the Maryland and District of Columbia Association of Administrative Adjudicators (MDCAAA). In October, we, along with our co-sponsors The Washington College of Law, NAALJ, and the National Association of Women Judges, hosted the NAALJ Annual Conference in Washington, D.C.

The Conference was our high point of 2007. Our planning efforts paid off. The Conference and social activities were well received by the 135 attendees. The tour of the Capitol was extraordinary, even for those of us who have seen it before. Kudos to those who guided the effort, including Neil Alexander, Tyrone Butler and Joan Davenport of MDCAAA, and Jennifer Dabson of Washington College of Law.

Unfortunately, the success of the Conference was greatly overshadowed by the death of our President, colleague and friend, Neil Alexander. In honor of Neil, we've created an award in his name. The award criteria have yet to be determined. Although we still mourn Neil, we continue to try to positively impact administrative adjudication.

Elected officers for 2007-2008: Neil Alexander, President; Jim Murray, President-Elect; Joan Davenport, Vice-President; Paul Handy, Secretary; and William England; Treasurer. New board members are Tyrone Butler, Tom Dewberry, Robert McGowan, E. Savannah Little, Mike Nolan and Past President Dennis Sober.

Bert Brandenburg, Executive Director of Justice at Stake Campaign spoke to the membership about his organization and how it educates the public about special interests attacks on the judiciary and how to seek reforms. Mr. Brandenburg's organization is beginning to focus on the administrative judiciary and plans to speak at the upcoming annual conference.



## NEWS FROM STATE AFFILIATES (continued)

### New York Affiliate News



**By John Farrell, President**

In other news, a MODEL CODE FOR ALJs IN NYS is being developed. Several members of NYSALJA, who are also members of the Administrative Law Judges Subcommittee of the Committee on Attorneys in Public Service of the New York State Bar Association, have been working for the last several months to develop a Model Code of Judicial Conduct for State Administrative Law Judges.

The proposed Code was presented to the New York State Bar Association's Executive Committee for consideration at its January 31, 2008 meeting.

The NYSALJA members on the drafting committee included James McClymonds, Catherine Bennett, John G. Farrell, James Horan, Peter Loomis, Elizabeth Liebschutz, Edward Mevec, and Marc Zylberberg. We anticipate that presentation of this model code will be included in the Conference Educational Program.

### Iowa Affiliate News



**By Lynette Donner, President**

The Iowa Association of Administrative Law Judges continues to provide exceptional continuing legal education to judges and administrative law practitioners. As many of you know, IAALJ co-sponsored the National Judicial College course "Achieving Impartiality in Administrative Adjudication" on June 18 and 19, which substituted for the Detroit Midyear conference. We had a great turnout with 111 participants, and the sessions and NJC presenters were outstanding.

On September 28, 2007, IAALJ held a CLE in conjunction with our annual membership meeting. Tim Eckley, staff attorney with the American Judicature Society in Des Moines, gave an informative presentation on "Judicial Ethics and the Self-represented party."

After the CLE, the Association held its annual meeting and elected the following officers for the 2007-2008: Lynette Donner, president; Amy Christensen, vice president; Maggie LaMarche, secretary; and Phil Deats, treasurer.

IAALJ membership for 2007-08 is 51 members, which is the highest number of members since it was formed. We are planning our Spring CLE for April 2008, which will feature Creighton University Vice President Patrick Borchers.

### Arkansas Affiliate News

**By Barbara Webb, President**

The Arkansas Association of Administrative Adjudicators (ArkAAA) held its annual meeting and election of new officers. Our 2008 President is Barbara Webb, an ALJ with the Arkansas Workers' Compensation Commission. President-Elect for 2009 is Toni White (Bogan), Managing ALJ in the Office of Appeals and Hearings (OAH) for the Arkansas Department of Human Services (DHS) and NAALJ Board member.



ArkAAA presented its annual Fall Conference in Little Rock on November 2, 2007, titled "Core Concepts in Administrative Hearings." Topics included bias, opinion writing, judicial review, professional conduct, witness credibility, and recent legislation. This year's conference drew 49 attendees with 7 presenters. Our attendees included a mix of federal and state adjudicators.

Four ArkAAA members were recognized for outstanding service to the Association: Shannon Mashburn, OAH (2007 website design); Sue Stolzer, OAH (long-time ArkAAA Secretary); Kerri Palmer, OAH (long-time ArkAAA Treasurer); and Robert Hunt, Arkansas Disability Determination for Social Security Administration (2007 conference planning).

For the ArkAAA members who attended the NAALJ Annual Conference in Washington, D.C. last October, we send our sincere thanks and congratulations to the Maryland-DC Association of Administrative Adjudicators, the American University Washington College of Law, and the other conference sponsors for their hospitality and hard work.

ArkAAA members were also honored and excited to recently learn that NAALJ has picked us to host the NAALJ 2009 Midyear Conference. Planning is now well under way. The conference will be held in Little Rock, Arkansas. Check for 2009 Midyear Conference updates from time to time on our website at www.arkaaa.org. For those looking for a possible career move, www.arkaaa.org is also currently hosting NAALJ's Job Posting Information Bank. Come check us out online.

In other news, David Mackey, OAH, judged a state-wide debate contest at Little Rock's Central High School. ArkAAA members will volunteer to judge upcoming debate contests this Fall 2008.

# TRIBUTE TO NEIL ALEXANDER

**By Joan Davenport**

On Monday, November 19, 2007, our friend, colleague, professional administrative law judiciary member, Neil Alexander, Jr., Chief Hearing Examiner of the D.C. Commission on Human Rights for 20 years, departed this life at his home in Washington, D.C.

Few of us knew that Neil was recognized as an expert in discrimination law and a leader in the fight for social justice. He presided over administrative law hearings dealing with cases of discrimination filed under the D.C. Human Rights Act. With an extensive knowledge of discrimination law, he wrote decisions in numerous cases that received regional and national attention, involving housing discrimination based on AIDS, employment discrimination based on race, and hostile work environments based on sexual orientation. Neil

was also a guest lecturer at Georgetown University School of Law, Howard University School of Law, and at the University of Maryland for its African-American Studies program. He conducted extensive Equal Employment Opportunity training sessions for District of Columbia personnel, as well as staff of the District of Columbia Office of the Attorney General.

Neil's professional affiliations included NAALJ for which he actively co-chaired the successful 2007 annual conference held in Washington, D.C. He was President of the Maryland and District of Columbia Association of Administrative Adjudicators (MDCAAA) which is in the process of establishing an annual award in his name. The award criteria are still being developed, but may include service to the cause of human rights or exemplary contributions to administrative law.

Neil was a prolific Washington Redskins fan, and he never missed an opportunity to celebrate life, living and football. He once said that he was always fond of having a good time and could not, and would not, be bothered by the small stuff. One time, while an elementary school student, he was scolded by his teacher for his poor skills at writing cursive, he politely informed her that "smart people like me, have more important things to do in life than waste time on learning to write well."



The members of NAALJ, MDCAAA and many others will always remember Neil and the ease with which he worked with people at all levels. We will remember his capacity to pull together a hospitality venue and are appreciative of having been associated with him during his lifetime.

# NEIL ALEXANDER SCHOLARSHIPS AWARDED

Two scholarships were recently awarded by NAALJ to assist administrative adjudicators in attending a one-week, resident course at the National Judicial College (NJC) on the University of Nevada, Reno campus.

The scholarships are named the Neil Alexander Scholarships in honor of a NAALJ colleague, who at the time of his recent untimely death was chief hearing examiner of the D.C. Commission on Human Rights. Judge Alexander served as co-chair of the 2007 NAALJ Annual Conference in Washington, D.C.

Each scholarship from NAALJ is for $500 and is to

be used in combination with a 50 percent tuition waiver awarded by NJC for the one-week course.

The recipients for 2008 are Judge Josephine C. Townsend, who is an ALJ for the Washington State Department of Licensing in Vancouver, WA, and Judge James A. Monk, who conducts special education hearings for the New York Education Department.

Judge Townsend has been a member of NAALJ since 2006. She plans to attend either a course on Judicial Writing or a course on Advanced Evidence.

Judge Monk has been a member of NAALJ since 2001 and plans to attend an advanced administrative law course at NJC.

Congratulations to both of these scholarship recipients! They both hope to be presenters at upcoming NAALJ conferences and will share the knowledge they gained from these courses in an upcoming NAALJ newsletter.

For more information on the Neil Alexander Scholarships, contact Judge Janet Raider at Janet.Raider@ky.gov.



# President's Message—Moving Ahead



**By L. David Brunke**

Although the wheels of progress in many volunteer organizations often move ever so slowly, a review of the last board meeting minutes from the 2008 NAALJ Annual Conference reveals that NAALJ is somewhat of an exception as progress and change are occurring. Nonetheless, it can be difficult to keep the momentum going due to the demands of our busy lives.

As the challenges of managing the day-to-day operation of a large-membership, volunteer organization can be and often are overwhelming, the board recently considered outsourcing more of its management services. Services available for outsourcing include communications and marketing, consulting, event management, member services, finance and governmental relations. As you may know, NAALJ concurrently outsources membership services and the billing and collection of revenue (bookkeeping). However, due to the high cost of additional management services, the board voted instead, as an interim step, to acquire a web-based management system as a less costly alternative. After an exhaustive search, the board voted to purchase the web management system from MemberClicks. (www.memberclicks.com). In the coming months, more information will be disseminated to the membership on this important initiative, which will be headed up by President–Elect Steve Wise.

At its last meeting, the board approved the by-laws of the newly established Special Education Section and its e-newsletter. You may recall that the NAALJ by-laws were amended at the 2006 annual meeting to authorize the board to establish sections in specialized areas of administrative adjudication.

Recently the board accepted the Arkansas affiliate's proposal to host the 2009 midyear conference in Little Rock. In addition, the board, through its Future Conference Site Selection Committee, is seeking proposals from interested parties to host the 2009 annual conference and the 2010 conferences.

Be on the lookout for the next issue (Fall 2007) of the Journal, which should be published next month, and which will announce the 2008 Fellowship topic.

In my view, one of the key ingredients required for a volunteer organization to move forward is a high level of membership interest and participation, which can be achieved through an effective committee framework. To ensure members have an opportunity to serve on committees, I am asking that you email me your committee preferences (rank order), if you have not done so already, within 30 days of receipt of this newsletter. A list of the committees and chairs appointed to date can be found on page 8 in the newsletter.

# Treasurer's Report—On The Financial Front



**By Thomas E. Dewberry**

Rising oil prices, falling real estate markets, a Federal deficit in the trillions and most states facing or already suffering budget deficits. Pretty gloomy economic news, for sure. Nevertheless, if you are looking for a glimmer of good news in the world of finances, I am pleased to tell you that the Association's financial health is doing well.

As noted in the past, the major sources of revenues for the Association are from membership dues, conferences and sales of the Journal. The revenue from dues has held steadily around $22,000 this year, similar to recent past years. So far this year the sales revenue form the Journal is a little over $2,000, which is down somewhat from previous years. Revenue from the annual conference is likely to be in the range of $4,000. The fiscal year '07 – '08 revenues year-to-date (January 31, 2008) are running about $29,000.

The primary expenses of the Association are for the Journal, Secretariat (membership and bookkeeping) and the board member travel reimbursement. The fiscal year '07 – '08 expenses year-to-date (January 31, 2008) are running about $20,600.

As you can see, the arithmetic reflects that at this point in time (just over halfway through the fiscal year) the Association is in the black by about $8,500. Add this news to the fact that the Association had total reported assets at the end of calendar year 2007 of a little over $92,000 and things look quite positive financially. This is especially true when you consider that the Association's total reported assets two years ago were only about $57,000.

Probably the most encouraging news is that the Association's positive fiscal growth this year continues a trend that began in the '05 – '06 fiscal year, reversing several years of deficits. I can report to you with great confidence that the current officers and board intend to keep this trend going forward into the future.

---

### NAALJ Special Education Section News

**by James Rosenfeld**

The Special Education Section has adopted section by-laws, updated its officers and advisors and joined in the publication of an email newsletter produced by the National Academy for IDEA Administrative Law Judges and Hearing Officers at the Seattle University School of Law. James Rosenfeld appointed Judge Janice E. Shave of Washington as Vice Chair of the Committee to succeed Lori Eiseley of Kentucky, who had resigned from NAALJ. Judge Sherianne Laba of California has been appointed to succeed Judge Shave as Advisor to the Committee. The Committee Newsletter is available to any current special education hearing officer, whether or not a member of NAALJ, by emailing James Rosenfeld at rosenfeld@seattleu.edu.

# Washington, D.C. Conference Photos



*Cathy Bennett at the closing session.*



*Dancing the night away!*



*NAALJ Officers and Board*



*Delicious food galore!*



*Chatting on the floor of the U.S. Capitol Rotunda.*



*Relaxing after the banquet*



*Thanking Jennifer Dabson for her hard work.*

*Photos courtesy of Marc Zylberberg, NYAJLA*

Page 8

**NAALJ**

**Committees and Chairs**

**(2007-2008)**

**2008 Annual Conference Committee**

John G. Farrell (NY), Chair

jfarrell.nysalja@yahoo.com

**2008 Midyear Conference Committee**

John L. Gedid (PA), Chair

jlgedid@widener.edu

**2009 Midyear Conference Committee**

Toni White Bogan (AK), Chair

Toni.bogan@arkansas.gov

**Education Committee**

Phyllis Carter (WV), Chair

phylliscarter@wvdhhr.org

**Fellowship Committee**

Edward Schoenbaum (IL), Chair

e.schoen@insightbb.com

**Finance Committee**

Thomas Dewberry (MD), Chair

tdewberry@oah.state.md.us

**Future Conference Site Selection Committee**

Robert S. Cohen (FL), Chair

Bob_cohen@doah.state.fl.us

**Job Postings Committee**

Toni White Bogan (AK), Chair

Toni.bogan@arkansas.gov

**Journal Committee**

Edward Schoenbaum (IL), Chair

e.schoen@insightbb.com

**Membership (& Affiliate Support) Committee**

Mattie Harvin Woode (WA), Chair

mharv@oah.wa.gov

**Newsletter Committee**

James Murray (MD), Chair

jmurray@oah.state.md.us

**Nominating Committee**

Catherine Bennett (NY), Chair

cbennett@nysdta.org

**Past Presidents Committee**

Janet C. Raider (KY), Chair

Janet.Raider@ky.gov

**Rosskopf Achievement Award Committee**

Edward Schoenbaum (IL), Chair

e.schoen@insightbb.com

**Website Committee**

Steven Wise (IA), Chair

Steve.wise@iwd.state.ia.us



**T H E   N E W S L E T T E R   O F   T H E   N A T I O N A L
A S S O C I A T I O N   O F   A D M I N I S T R A T I V E   L A W
J U D I C I A R Y**

NAALJ

P.O. Box 71

Glenmont, NY 12077

Phone: 518-462-2425

Fax:    518-462-2425

E-mail: naalj@naalj.org

**www.naalj.org**

**Elected Officers and Board Members**

**OFFICERS**

| | |
|---|---|
| Hon. L. David Brunke (TX) | President |
| Hon. Steven Wise  (IA) | President-Elect |
| Hon. Robert S. Cohen (FL) | Secretary |
| Hon. Thomas E. Dewberry (MD) | Treasurer |
| Hon. Catherine M. Bennett  (NY) | Past President |

**BOARD OF GOVERNORS**

| | |
|---|---|
| Hon. Toni White (Bogan)  (AR) | (term expires 2008) |
| Hon. Janet Raider (KY) | (term expires 2008) |
| Hon. Beverly Sherman Nash (DC) | (term expires 2008) |
| Hon. Peter L. Plummer (MI) | (term expires 2008) |
| Hon. Phyllis Carter (WV) | (term expires 2009) |
| Hon. Mary Margaret Anderson | (term expires 2009) |
| Hon. Kristin Miller (GA) | (term expires 2009) |
| Hon. Mattie Harvin Woode | (term expires 2009) |