#### BEFORE THE UNITED STATES DISTRICT COURT FOR
#### THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIMON BANKS, | ) |
| | ) |
|      **Plaintiff** | ) |
| | ) |
| V. | ) Civil Action No. 08-00215 RCL |
| | ) |
| HON. NOEL ANKETELL KRAMER | ) |
| Et al | ) July 11, 2008 |
| | ) |
|      **Defendants** | ) |

**PLAINTIFF'S MOTION TO STRIKE ALL PLEADINGS FILED BY THE ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA ON BEHALF OF DEFENDANTS KRAMER, WAGNER, AND FERREN AND TO DISQUALIFY THE ATTORNEY GENERAL FROM REPRESENTING CONFLICTING INTEREST OF KRAMER, WAGNER, FERREN, NICKLES AND THE DISTRICT OF COLUMBIA**

CERTIFICATION PURSUANT TO LCVR 7 1(M)
The District and Mukasey does not consent to the relief requested
Other defendants take no position on the motion

Comes now Dr. Simon Banks, Plaintiff and submit Motion to Strike all pleadings filed by the Attorney General for the District of Columbia on behalf of Defendants Judge Noel Anketell Kramer, Judge Annice Wagner, and Judge John Ferren, and to Disqualify the Attorney General as their respective attorney representative because it is representing clients with adverse interest, and it is representing clients whom it is barred from representing because of adverse interest.

In support of Plaintiff's motion the Plaintiff incorporate by reference the Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Strike All Pleadings Filed by the Attorney General for the District of Columbia on Behalf of Defendants

Kramer, Wagner and Ferren and to Disqualify the Attorney General from representing the conflicting interest of Defendant Judge Noel Anketell Kramer, Defendant Judge Annice Wagner, and Defendant Judge John Ferren.

BEFORE THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIMON BANKS,              ) | |
|                                       ) | |
|     Plaintiff               ) | |
|                                       ) | |
| V.                                    ) | Civil Action No. 08-00215 RCL |
|                                       ) | |
| HON. NOEL ANKETELL KRAMER ) | |
| Et al                               ) | July 7, 2008 |
|                                       ) | |
|     Defendants           ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO STRIKE ALL PLEADINGS FILED BY THE ATTORNEY
GENERAL FOR THE DISTRICT OF COLUMBIA ON BEHALF OF
DEFENDANTS KRAMER, WAGNER, AND FERREN AND TO DISQUALIFY
THE ATTORNEY GENERAL FROM REPRESENTING CONFLICTING
INTEREST OF KRAMER, WAGNER,FERREN, NICKLES AND THE DISTRICT
OF COLUMBIA**

      Comes now Dr. Simon Banks, Plaintiff and submit Motion to Strike all pleadings filed by the Attorney General for the District of Columbia on behalf of Defendants Judge Noel Anketell Kramer, Judge Annice Wagner, and Judge John Ferren, and to Disqualify the Attorney General for the District of Columbia [hereinafter "Attorney General") as their respective attorney representative because it is representing clients with adverse interest, and it is representing clients whom it is barred from representing because of adverse interest.

      In support of the motion the Plaintiff cites the following:

1. Defendants Judge Kramer, Judge Wagner and Judge Ferren, who are sued in their respective personal capacity, were served service of process personally and the service was accepted with their respective consent, by Garland Pinkston, Clerk of DCCA. Reason being, they were not served as employees of the District of Columbia Government but as private individuals for actions taken in their private capacity.

2. Although these referenced defendants were served personally, they choose not to file a response to the complaint, even though Plaintiff stated in his consent to the District's Motion for Extension of Time that the District submitted no praecipe showing it had been retained by Kramer, Wagner, and Ferren.

3. The District filed motion to dismiss the complaint for the District of Columbia Government, upon which the court may make a reasonable conclusive presumption because the Corporation Counsel (redesignated Attorney General) is the legal officer of the District of Columbia Government.  The Court cannot make the same conclusive presumption without the presumed fact supported by verifying documentation, pursuant to a legal praecipe, that the Attorney General for the District of Columbia Government has been retained also by Defendants Kramer, Wagner and Ferren, as their respective personal legal representative in the instant case.

4. In addition to the above-referenced, set forth in ¶¶1-3 hereof, neither Kramer, Wagner, nor Ferren, submitted to this Court, any waiver of conflict of interest connected with the representation of them respectively by the District's legal officer, the Attorney General for the District of Columbia, whom himself is a defendant in his official capacity as regarding Defendant Judge John Ferren.

5. The Attorney General's representation of Defendants Judge Kramer, Defendant Judge Wagner, and Defendant Judge Ferren, is further complicated by the following:

**DEFENDANTS KRAMER, WAGNER, AND FERREN CANNOT BE REPRESENTED BY THE PEOPLES COUNSEL BECAUSE DEFENDANTS JUDGE KRAMER, DEFENDANT JUDGE WAGNER, AND DEFENDANT JUDGE FERREN, ARE SUED IN THEIR RESPECTIVE PERSONAL CAPACITIES FOR HAVING ENGAGED IN VIOLATION OF DISTRICT OF COLUMBIA LAWS AND THE LAWS OF THE UNITED STATES**

6. The DC Attorney General, who is also a defendant, cannot represent an alleged violator of the District of Columbia laws and at the same time represent the District of Columbia Government.

7. The Corporation Counsel is the official attorney of the government of the District of Columbia, and represents that government. The duties of the Corporation Counsel are established in Title 1, § 1-361.

8. It is illegal, unethical, and impermissible for the Corporation Counsel to represent the interests of an employee of the District government or a private citizen (the Mayor of the District of Columbia when he is acting in his private capacity) against the interests of the government of the District of Columbia. See Office of Campaign Finance Opinion in the case of Donna Brizil Re: Anthony Williams, Mayor.

9. Defendant Judge Ferren, Defendant Judge Kramer, and Defendant Judge Wagner, are being sued in their personal capacity. This places them adverse to the District of Columbia Government. **See** *Kentucky v. Graham,* 473 U.S. 159 (1985) [1]

---

[1] (b) Personal-capacity suits seek to impose personal liability upon a government officer for actions he takes under color of state law, whereas official-capacity suits against an officer are generally treated as suits against the

4

governmental entity of which the officer is an agent. With this distinction in mind, it is clear that a suit against a government officer [473 U.S. 159, 160]   in his or her personal capacity cannot lead to imposition of fee liability upon the governmental entity. Pp. 165-168.

Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. See, e. g., Scheuer v. Rhodes, 416 U.S. 232, 237 -238 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 , n. 55 [473 U.S. 159, 166]   (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. Brandon, 469 U.S., at 471 -472. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself. 11   (473 U.S. 159)

On the merits, to establish personal liability in a 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. See, e. g., Monroe v. Pape, 365 U.S. 167 (1961). More is required in an official-capacity action, however, for a governmental entity is liable under 1983 only when the entity itself is a "`moving force'" behind the deprivation, Polk County v. Dodson, 454 U.S. 312, 326 (1981) (quoting Monell, supra, at 694); thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. Monell, supra; Oklahoma City v. Tuttle, 471 U.S. 808, 817 -818 (1985); id., at 827-828 (BRENNAN, J., concurring in judgment). 12 When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such [473 U.S. 159, 167]   as objectively reasonable reliance on existing law. See Imbler v. Pachtman, 424 U.S. 409 (1976) (absolute immunity); Pierson v. Ray, 386 U.S. 547 (1967) (same); Harlow v. Fitzgerald, 457 U.S. 800 (1982) (qualified immunity); Wood v. Strickland, 420 U.S. 308 (1975) (same). In an official-capacity action, these defenses are unavailable. Owen v. City of Independence, 445 U.S. 622 (1980); see also Brandon v. Holt, 469 U.S. 464 (1985). 13 The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment. While not exhaustive, this list illustrates the basic distinction between personal- and official-capacity actions. 14  

With this distinction in mind, it is clear that a suit against a government official in his or her personal capacity cannot lead to imposition of fee liability upon the governmental entity. A victory in a personal-capacity action is a victory against the individual defendant, rather than against the [473 U.S. 159, 168]   entity that employs him. Indeed, unless a distinct cause of action is asserted against the entity itself, the entity is not even a party to a personal-capacity lawsuit and has no opportunity to present a defense. That a plaintiff has prevailed against one party does not entitle him to fees from another party,

5

9. Defendant Judge Ferren violated the Federal Anti-lobbying Act, when he lobbied the DC Counsel to enact the OAH legislation and when he used CCE to act as his alter ego, conduit, and catalyst to lobby the Council to enact anti-competitive, restraint of competition, legislation that perpetuated the DC Bar monopoly in the marketplace based upon a pre-conceived, sham study that was skewed to achieved a predetermined result favoring the DC Bar whom Ferren was a co-regulator, a co-supervisor, a co-manager, a co-fiduciary relationship of.

10. Defendant Judge Kramer's actions before the United States Congress, is not the function of a District of Columbia Government Employee.

11. Defendant Judge Wagner's actions before the United States Congress, is not the function of a District of Columbia Government Employee, and the funds of the District of Columbia cannot be used to pay for it.  Nor may the Attorney General for the District of Columbia use its resources to finance individual acts before the United States Congress.

12. Both Defendants Judge Kramer and Judge Wagner had notice of the suit and both sought not to secure their own counsel.  They may not use the Attorney General of the District of Columbia, the Peoples Counsel as their respective counsel.  They both have waived their right to counsel and they both have waive their duty to submit response to the Summons of the suit upon which both were recipients of.  See Service of process upon Defendant Kramer and Defendant Wagner, accepted by Defendant Garland

---

let alone from a nonparty. Cf. *Hensley v. Eckerhart*, 461 U.S. 424 (1983). Yet that would be the result were we to hold that fees can be recovered from a governmental entity following victory in a personal-capacity action against government officials. (473 U.S. 159) **(citing from the U.S. Supreme Court in *Kentucky v. Graham,* 473 U.S. 159 (1985)**)

Pinkston, Clerk of the District of Columbia Court of Appeals and former acting Attorney General for the District of Columbia for the District of Columbia, (redesignated Attorney General.)

13.    Defendant Judge Ferren, sued in his personal capacity, is alleged to have engaged in antitrust activities for purposes of perpetuating the District of Columbia Bar Monopoly, as Attorney General for the District of Columbia, and when and while he was still an associate member of the District of Columbia Court of Appeals, and Judge Ferren is also alleged to have engaged in lobbying-legislative activities directly and indirectly through the Council for Court Excellence and/or in collusion with Defendant Council for Court Excellence. Defendant Judge Ferren is also alleged to have violated the District of Columbia Procurement Act by taking these personal actions. These alleged acts conflict with Ferren's official duties. And they may not be paid for by the District of Columbia Government or the citizens for the District of Columbia. These acts require Judge Ferren to acquire his own counsel and/or respond personally to the allegations set forth in the amended complaint.

14.    See District of Columbia Campaign Finance Reform and Conflict of Interest Act of 1974, as amended, D. C. Code §§1-1401 *et seq.* (the Act). **See** D. C. Code §§1-1461 and 1-1462

**Relevant statutory provisions**

15.    At D. C. Code §1-361 (1992 Repl. Vol.), it reads, in part, "The Attorney General for the District of Columbia shall be under the direction of the Mayor, and have charge and conduct of all law business of the said District, and all suits instituted by and against the government thereof.. He shall furnish opinions in writing to the Mayor,

7

whenever requested to do so . . . . He shall perform such other professional duties as may be required of him by the Mayor.

**Standard of Conduct:**

Section 1806.    Section 1803.1 states:

16.    An employee shall avoid action, whether or not specifically prohibited by this chapter, which might result in, or create the appearance of the following: (a) using public office for private gain; (b) giving preferential treatment to any person; (c) impeding government efficiency or economy; (d) losing complete independence or impartiality; (e) making a government decision outside official channels; or (f) affecting adversely the confidence of the public in the integrity of government.

Section 1804.1 (b) provides:

17.    An employee may not engage in any outside employment or other activity which is not compatible with the full and proper discharge of his or her duties and responsibilities as a government employee. Activities or actions which are not compatible with government employment include, but are not limited to, the following:

(b) Using government time or resources for other than official business, or government approved or sponsored activities, except that a District employee may spend a reasonable amount of government time and resources on such projects, reports, and studies as may be considered in aid of other government jurisdictions (local, state, or federal), provided the work so performed is within the scope of the individual's regular assignments as a District employee . . ..

Section 1806.1 states in part:

18. A District employee shall not use or permit the use of government property, equipment, or material of any kind, including that acquired through lease, for other than officially approved purposes. An employee has a positive duty to protect and conserve government property, including such equipment, supplies, materials, and other items as may be issued or entrusted to him or her.

19. At §1802.1, of the standards of conduct it reads, in part, "In accordance with D. C. Code §1-619.3(e) (1981), enforcement of this chapter shall, consistent with the regulations set forth herein, be the responsibility of each agency head, except that enforcement for the following persons shall be the responsibility of the D. C. Board of Elections and Ethics:

20. At §1803.1, it reads, "An employee shall avoid action, whether or not specifically prohibited by this chapter, which might result in, or create the appearance of. . .(f) [a]ffecting adversely the confidence of the public in the integrity of government." §1806.1 prohibits a District employee from "using or permitting the use of government property, equipment, or material of any kind, including that acquired through lease, for other than officially approved purposes." In pertinent part, at §1804.1(b), it prohibits a government employee from "using government time or resources for other than official business, or government approved or sponsored activities". Further, §1803.1(0 requires an employee to avoid action, whether or not specifically prohibited by Chapter 18, which might result in, or create the appearance of "affecting adversely the confidence of the public in the integrity of government"

21. The term "lobbying" as defined by D.C. Code §1-1451(7)(A) means "communicating directly with any official in the legislative or executive branch of the

District of Columbia government with the purpose of influencing any legislative action or an administrative decision". The term "official in the legislative branch" as defined by D.C. Code §1-1451(10) means any "candidate for Chairman or member of the Council in a primary, special, or general election, the Chairman or Chairman-elect or any member or member-elect of the Council, officers and employees of the Council. . ." "Legislative action" as defined by D.C. Code §1-1451(6), includes any activity conducted by an official in the legislative branch in the normal course of carrying out his or her duties as such an official, and relating to the introduction, passage, or defeat of any legislation in the Council".

22.     In *District of Columbia Common Cause, et al., v. The District of Columbia, supra,* the District of Columbia's expenditure of public funds and use of District of Columbia employees to promote the defeat of a ballot question initiated through the initiative process was held to violate the rights of District of Columbia voters under the First and Fifth Amendments to the United States Constitution. The Court found that the government aligned itself in the political fray as being opposed to the enactment of the measure, providing groups who shared their viewpoint with the use of government resources, thereby "unfairly tipping the scales of the electoral balance in favor of one side of the initiative election." The Court opined the "government has an obligation to remain neutral and not spend public funds advocating or opposing an initiative on the ballot". See 5 CFR Part 2635 (Standards of Ethical Conduct for Employees in the Executive Branch), in particular section 2635.705 (Use of Official Time) and Subpart H (Outside Activities). (federal regulation).

**THE ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA IS THE ANTITRUST ADVOCATE FOR THE DISTRICT OF COLUMBIA GOVERNMENT AND IT CANNOT REPRESENT THE ANTITRUST VIOLATORS AS WELL AS THE DISTRICT OF COLUMBIA AND PRIVATE PARTIES WHOM WERE NOT PERFORMING DISTRICT'S BUSINESS IN THE SAME CIVIL ACTION WITHOUT IMPERMISSIBLE CONFLICT**

**23.** The Attorney General for the District of Columbia is the antitrust advocate for the District of Columbia Government and it is a conflict of interest for it to represent the alleged antitrust violator as well as the District in the same suit where it too is a defendant. This is a clear conflict of interest that must not be tolerated by this Court.

24. The Attorney General for the District of Columbia is the District's antitrust enforcement official. D.C. Official Code §§ 28-4505 to 28-4513 (2001) (hereinafter "D.C. Code" refers to the D.C. Official Code (2001)). Shortly after Atlantic filed its amended Complaint in this Court. **(The Attorney General is also a defendant)**

25. Under the District's Antitrust Act, the Attorney General for the District of Columbia has express authority to file an action for damages "on behalf of any individual residing in the District," as well as an action for damages or injunctive relief on behalf of the District's proprietary interests. D.C. Code § 28-4507. Moreover, under the Clayton Act, the Attorney General for the District has the same authority as a state attorney general to bring *federal* damages actions "as parens patriae on behalf of natural persons residing in such State." 15 U.S.C. §§ 15c and 15g. In addition, the Attorney General for the District of Columbia has parens patriae authority to seek injunctive relief against antitrust violations that harm the District residents or the District's economy, based on the Supreme Court's determination that a state is a "person" that may seek injunctive relief against antitrust violations that harm its economy or the welfare of its citizens. *Georgia v.*

11

*Pennsylvania R.R. Co.*, 324 U.S. 439, 447-51; *see also California v. American Stores Co.*, 495 U.S. 271 (1990). The Attorney General cannot perform this function objectively and/or impartially, while representing both the antitrust violators, itself, and the District of Columbia Government. Defendant Nickles, the Attorney General is also a defendant and he is being represented by the District as well at the same time he is representing his predecessor, Defendant Judge Ferren.

26. The Attorney General for the District of Columbia's antitrust enforcement efforts are intended to complement those of other antitrust enforcement agencies. The Attorney General for the District of Columbia has express statutory authority to "cooperate with the federal government and the states in the enforcement" of the District's antitrust law. D.C. Code § 28-4513. Moreover, the core provisions of the District's Antitrust Act, D.C. Code §§ 28-4502 and 28-4503, are patterned after sections one and two of the Sherman Act. Provisions of the District's antitrust law, a court "may use as a guide interpretations given by federal courts to comparable antitrust statutes." D.C. Code § 28-4515

27. The Plaintiff's interest in this case because the actions that Defendant Ferren and the District are pursuing through its agencies in collaboration with the DC Bar and the Council for Court Excellence and others operating in concert with them, are pursuing a course of action that would violate both federal and District antitrust laws "by foreclosing significant competition, restricting choices of D.C. consumers, and the public in general.

**ANTITRUST INJURY SUFFERED BY PLAINTIFF
GIVES PLAINTIFF STANDING TO SUE FOR ANTITRUST VIOLATION**

12

28.     The antitrust injury articulated by the Plaintiff gives the Plaintiff standing to pursue his antitrust claims, declaratory and injunctive. The Supreme Court held in *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104 (1986), that an antitrust plaintiff seeking injunctive relief must allege and ultimately prove that it would suffer threatened loss or damage constituting an "antitrust injury." "Antitrust injury" means "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Cargill*, 479 U.S. at 109 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

### DISTRICT OF COLUMBIA BAR RULES AND DECISIONS PROHIBITING CONFLICTING REPRESENTATIONS BY AN ATTORNEY MEMBER OF THE DC BAR

29.     **DC Ethics Opinion 268 (1996)** [discussed more fully under 1.7:290 and 1.7:300 above] addresses the applicability of Rule 1.7's restrictions on conflicting representations when a lawyer or law firm provides volunteer legal assistance to the D.C. Corporation Counsel's office while simultaneously representing private clients against the City or its agencies.

### DEFENDANT JUDGE FERREN, SUED IN HIS PERSONAL CAPACITY IS ALLEGED TO HAVE VIOLATED THE DISTRICT OF COLUMBIA PROCUREMENT LAWS WHEN HE WAS ON SABATTICAL FROM THE DC COURT OF APPEALS AND SERVING AS THE CORPORATION COUNSEL FOR THE DISTRICT OF COLUMBIA

30.     Section 1006.1 of Title 27 of the District of Columbia Municipal Regulations ("DCMR") states, in relevant part, the following: "The procurement business of the District shall be conducted in a manner above reproach and, except as authorized by law, with complete impartiality and with preferential treatment for none. "[4] The District's procurement law specifically and clearly states that: "...No District employee

13

shall enter into an oral agreement with a vendor to provide goods or services to the District government without a valid written contract," and further states that "[a]ny violation ....shall be cause for termination of employment of the District employee."[5] Further, as stated in Chapter 10 of Title 27 of the DCMR, the contracting officer is the only District official authorized to sign contract documents and to contractually bind the District.

31. The allegations set forth in the complaint allege, inferentially, a violation of the District of Columbia Ethics Laws and Standard of Conduct which govern employees of the District of Columbia, in connection with Defendant Ferren's alleged violation of the District of Columbia Contract Procurement laws.

32. Section 1800.1 of the District Personnel Manual ("DPM") states that "Employees of the District government shall at all times maintain a high level of ethical conduct in connection with the performance of official duties, and shall refrain from taking, ordering, or participating in any official action which would adversely affect the confidence of the public in the integrity of the District government."[17] Further, Section 1800.2 of the DPM states that: "The maintenance of unusually high standards of honesty, integrity, impartiality, and conduct by employees is essential to assure the proper performance of government business and the maintenance of confidence by citizens in their government." The transactions discussed above undermine these basic policies and principles.

33. Plaintiff's allegations against Defendant Judge Ferren allege, reasonably, infer and state that Defendant Judge Ferren's facilitation and steering of the sole-source contract to CCE so that it could generate a predetermined study favoring a central panel

14

for Hearing Examiners aka Administrative Law Judges, to be re- assigned to, and that the OAH legislation generated to regulate these newly created positions were structured to require a license to practice law to retain the position of Hearing Examiner (redesignated Administrative Law Judge), and a license to practice law was predetermined to be a pre-requisite for advocates practicing law before these Hearing Examiners (redesignated Administrative Law Judges) was in violation of Procurement Practices Act of 1985.

34.	Title 27, Chapter 10, Section 1004 of the District's procurement regulations set forth the guidelines and procedures for delegating contracting authority and requires an agency head to use the system established by the contract procurement officer (CPO) and criteria set forth in the procurement regulations to delegate, modify, and terminate contracting authority. Section 1006.1 of Title 27 of the District of Columbia Municipal Regulations ("DCMR") states, in relevant part, the following: "The procurement business of the District shall be conducted in a manner above reproach and, except as authorized by law, with complete impartiality and with preferential treatment for none. " The District's procurement law specifically and clearly states that: "...No District employee shall enter into an oral agreement with a vendor to provide goods or services to the District government without a valid written contract," and further states that "[a]ny violation ....shall be cause for termination of employment of the District employee."[5] Further, as stated in Chapter 10 of Title 27 of the DCMR, the contracting officer is the only District official authorized to sign contract documents and to contractually bind the District.

### DISTRICT OF COLUMBIA BAR RULES PRECLUDE THE DISTRICT OF COLUMBIA ATTORNEY GENERAL, AS A DEFENDANT ITSELF, FROM REPRESENTING OTHER DEFENDANTS A MULTIPLE CONFLICT OF INTEREST

Disqualifying counsel with adverse interest.

Disqualification is required if an attorney represent clients with an adverse interest. This is the case with respect to the Attorney General's circumstances here.

Disqualification of counsel has been discussed quite extensively. In addition to the many articles on this issue, the following are cited: S. Gillers, The Rights of Lawyers and Clients 103-16 (1979); G. Hazard, Ethics in the Practice of Law 81-113 (1978); Aronson, Conflict of Interest, 52 Wash. L. Rev. 807 (1977); *Liebman,* The Changing Law of Disqualifications: The Role of Presumption and Policy, 73 NW. U.L. Rev. 996 (1979); Note, Business as Usual; The Former Government Attorney and ABA Disciplinary Rule 5-105(D), 28 Hastings L.J. 1537 (1977); Motions to Disqualify Counsel Representing an Interest Adverse to a Former Client, 57 Texas L. Rev. 726 (1979); Unchanging Rules in Changing Times: The Canons of Ethics and Intra-Firm Conflicts of Interest, 73 Yale L.J. 1058 (1964).

**FEDERAL RULE CIVIL PROCEDURE 11 OF THE UNITED STATES COURT RULES PRECLUDE REPRESENTATION BY COUNSEL WITH ADVERSE INTEREST**
**STATUTORY DISQUALIFICATION, ACTUAL AND IMPLIED**

The above-referenced constitute a statutory disqualification of the Attorney General in this litigation from representing Defendants Judge Kramer, Judge Wagner, Judge Ferren, and this statutory disqualification is both actual and implied. *See* Act of Mar. 3, 1911, ch. 231, §§ 20, 21, 36 Stat. 1090 (current version at 28 U.S.C. §§ 144, 455 (196 ed. and Supp. III)). This statute applied only to district judges, but its existence demonstrates that the Rule of Necessity has continued in force side by side **with statutory disqualification standards. (citing from,** U.S. Supreme Court

*United States v. Will*, 449 U.S. 200 (1980), which opined**………………….**"'[W]henever it becomes important to the ends of justice, or in order to decide upon conflicting interests, the law will look into fractions of a day, as readily as into the fractions of any other unit of time. The rule is purely one of convenience, which must give way whenever the rights of parties require it. . . . The law is not made of such unreasonable and arbitrary rules.'" *Louisville v. Savings Bank,* 104 U. S. 469, 104 U. S. 474-475 (1881) (quoting *Grosvenor v. Magill,* 37 Ill. 239, 240-241 (1865); citations omitted). *Accord, Combe v. Pitt,* 3 Burr. 1423, 97 Eng.Rep. 907 (K.B. 1763); 2 C. Sands, Sutherland on Statutory Construction § 33.10 (4th ed.1973).

**Statutory Disqualification Proceeding continuing**

In an unpublished opinion, a panel of the U.S. Court of Appeals for the Second Circuit affirmed the Commission's decision in Michael J. Clark v. CFTC, 97-4228 (2d Cir. Jun. 4, 1999), a statutory disqualification action brought by the Division of Enforcement on the basis of Clark's exchange disciplinary history. The Court concluded that the record "amply support[ed]" the Commission's judgment that there was "other good cause" under CEA Section 8a(3)(M) to revoke Clark's registration.

The doctrine of Statutory disqualification is recognized in the District of Columbia.  See 320 F.2d 715, John *Franklin GAGE v. The Riggs National Bank of Washington, D.C., Administrator, Estate of Margaret Delano Gage*, 115 U.S.App.D.C. 396.

**THE PLAINTIFF IS ENTITLED TO BE FURTHER RELIEVED
FROM HAVING TO RESPOND TO THE DISTRICT'S ULTRA VIRES MOTION
ON BEHALF OF KRAMER, WAGNER, AND FERREN PURSUANT TO
RULE 60 FEDERAL RULE, CIVIL PROCEDURE**

The Plaintiff is entitled to be further relieved from having to respond to the District's dispositive ultra vires motion on behalf of Defendant Judge Kramer, Defendant

17

Judge Wagner, Defendant Judge Ferren pursuant to Rule 60 Federal Rules of Civil Procedure. Rule 60(b)(5) permits a court "upon such terms as are just" to "relieve a party or a party's legal representative from a final judgment, order, or proceeding . . . [if] it is no longer equitable that the judgment should have prospective application." FED. R. CIV. P. 60(b)(5); see *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378-83 (1992); Pigford v. Veneman, 292 F.3d at 925; *United States v. Western Elec. Co.*, 46 F.3d 1198, 1202-04; (D.C. Cir. 1995) (applying Rufo analysis to request under Rule 60(b)(5) to modify consent decree). Parties seeking the modification of a consent decree under Rule 60(b)(5) must show a "significant change in circumstances" and "establish that a significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstances." *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. at 383, 393; see Pigford v. Veneman, 292 F.3d at 925; *NLRB v. Harris Teeter Supermarkets*, 215 F.3d 32, 35 (D.C. Cir. 2000). Any judicial enforcement of any decree connected with the District's dispositive motion as to Kramer, Wagner and Ferren, in their personal capacity, would be detrimental to the public interest." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. at 384; see *NLRB v. Harris Teeter Supermarkets*, 215 F.3d at 35.

    **WHEREFORE**, the Plaintiff request that his motion to strike all filings of the Attorney General for the District of Columbia Government, filed on behalf of Defendant Judge Noel Anketell Kramer, Defendant Judge Annice Wagner, and Defendant Judge John Ferren, be granted, and that Plaintiff's Motion that the District of Columbia Attorney General and its subordinate attorneys be disqualified from representing Defendant Judge Noel Anketell Kramer, Defendant Judge Annice Wagner, and

Defendant Judge John Ferren, retroactively from inception of its perceived representation and/or attempt to actually represent Defendant Judge Noel Anketell Kramer, Defendant Judge Annice Wagner, and Defendant Judge John Ferren.


_____/s/_____
Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
571 970-8327
drsbanks@msn.com