**BEFORE THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

SIMON BANKS,                          )
                                      )
            **Plaintiff**             )
                                      )
V.                                    ) Civil Action No. 08-00215 RCL
                                      )
HON. NOEL ANKETELL KRAMER             )
Et al                                 ) August 4, 2008
                                      )
            **Defendants**            )


**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE DISTRICT
DEFENDANTS MOTION TO DISMISS**

Comes now, Dr. Simon Banks, Plaintiff, and submit Memorandum of Points &

Authorities In Support of Plaintiff's opposition to the Motion of the District of Columbia

Government to dismiss the complaint, and in support cites the following:

The District of Columbia Defendants allege by implication that Judges, Kramer

and Wagner are absolutely immune from any false statements or perjury committed

before the United States Congress, and that any false statements they gave are privileged

and protected.

The Primary issue here is whether **Judge Noel Anketell Kramer and Judge**

**Anniche Wagner (former Chief Judge of the District of Columbia Court of**

**Appeals's** testimony before the United States Senate is protected by the ***Judicial***

***function exception*, from the allegations of perjury, false statements, and**

**subornation of perjury alleged by the Plaintiff** with respect to Judge Noel Anketell

Kramer's testimony before the United States Senate at her confirmation hearing and

Judge Annice Wagner's alleged subornation of the alleged perjured statements of Judge Kramer, at her confirmation hearing for Associate Judge of the District of Columbia Court of Appeals.

Despite what the District allege as to judges being immune from the effect of any false and/or perjurious testimony before the United States Congress, the United States Congress provides otherwise.

Legislative Reorganization Act of 1946, 60 Stat. 812, 822, 121, Rule X, House of Representatives; **H.R. Rep. No. 111, adopted Feb. 26, 1947 ( 93 Cong.Rec. 1504),** provides:

 '**Title 22 Sec. 2501. Perjury. Subornation of perjury.** Every person who, having taken an oath or affirmation before a competent tribunal, officer, or person, in any case in which the law authorized such oath or affirmation to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed is true,    illfully and contrary to such oath or affirmation states or subscribes any material matter which he does not believe to be true, shall be guilty of perjury; and any person convicted of perjury or subornation of perjury shall be punished by imprisonment in the penitentiary for not less than two no more than ten years * * *.' **31 Stat. 1329.**

The Supreme Court rejected this contention as to sworn testimony given before the United States Congress, a legislative branch of the United States Government, opined to be a "department."

The **United States Congress** is the legislative branch of the United States federal government The structure and responsibilities of Congress are defined in Article One of the United States Constitution.

A **legislature** is a governmental **deliberative body** with the power to adopt laws. Legislatures are known by many names, including: **parliament**, **congress**, **diet** and **national assembly**. In parliamentary systems of government, the legislature is formally supreme and appoints the **executive**. In **presidential systems** of government, the legislature is considered a branch of government which is equal to, and independent of, the executive. In addition to enacting laws, legislatures usually have exclusive authority to raise taxes and adopt the **budget** and other **money bills** The consent of the legislature is also often required to ratify treaties and declare war.

The primary component of a legislature is one or more *chambers* or *houses*: assemblies that debate and vote upon **bills.** Most legislatures are either ***bicameral*** or ***unicameral***. A unicameral legislature is the simplest kind of law-making body and has only one house. A bicameral legislature possesses two separate chambers, usually described as an **upper house** and a **lower house**, which may differ in duties, powers, and methods for the selection of members.

Excerpts from;

***Hubbard v. United States*** **(94-172), 514 U.S. 695 (1995).**

**"judicial function" exception**

3

In *Hubbard v. United States,* 514 U.S. 695 (1995), the Supreme Court ruled that the

**Judicial Function Exception** applied to "departments of the United States" and that the

federal courts are not "departments" of the United States.

      "Section 1001 criminalizes false statements and similar misconduct occurring "in

any matter within the jurisdiction of any department or agency of the United States." In

ordinary parlance, federal courts are not described as "departments" or "agencies" of the

Government."  As noted by the Sixth Circuit, it would be strange indeed to refer to a

court as an "agency." See 16 F. 3d 694, 698, n. 4 (1994) ("[T]he U. S. Court of Appeals

[is not] the Appellate Adjudication Agency"). And while we have occasionally spoken of

the three branches of our Government, including the Judiciary, as "department[s],"

*e.g.*,*Mississippi* v. *Johnson*, 4 Wall. 475, 500 (1867), that locution is not an ordinary one.

Far more common is the use of "department" to refer to a component of the Executive

Branch."

      The perjury and false claims statutes also cover the Legislative Branch, as does 18

**U.S.C. § 1505** (obstruction of justice). The existence of overlaps with other statutes does

not itself militate in favor of overruling *Bramblett;* Congress may, and often does, enact

separate criminal statutes that may, in practice, cover some of the same conduct. See

*United States* v. *Batchelder*, 442 U. S., at 123-124; **United States v. Gilliland, 312 U.S.**

**86 95 (1941)**. The overlaps here simply demonstrate that prosecutors cannot be said to

have any significant reliance interest in *Bramblett*.  **See Footnote 14.**


**The Legislative Branch, is a "Department".**

"………….Again, although ***Bramblett*** involved a false representation to an office within the Legislative Branch, the decision lumped all three branches together in one and the same breath. See *ibid.* ("department" in §1001 "was meant to describe the executive, legislative and judicial branches of the Government").

With respect to whether the Judicial Function Exception applied to testimony before a "department of the United States" which include the legislative branch, The Supreme Court in explained:

In the case of §1001, there is nothing in the text of the statute, or in any related legislation, that even suggests—let alone "shows"—that the normal definition of "department" was not intended. Accordingly, a straightforward interpretation of the text of §1001, with special emphasis on the words "department or agency," would seem to lead inexorably to the conclusion that there is no need for any judicial function exception because the reach of the statute simply does not extend to courts. Our task, however, is complicated by the fact that the Court interpreted "department" broadly 40 years ago in *Bramblett*. We must, therefore, turn our attention to that case before deciding the fate of the judicial function exception.

**Defendant Bramblett was a former Member of Congress** who had falsely represented to the Disbursing Office of the House of Representatives that a particular person was entitled to compensation as his official clerk. He argued that he could not be convicted under §1001 because his falsehood was directed to an office within the Legislative Branch. 348 U. S., at 504. The Court rejected this argument, concluding that the word "department," as used in §1001, "was meant to describe the executive, legislative and judicial branches of the Government." *Id.*, at 509. Although *Bramblett*

involved Congress, not the courts, the text and reasoning in the Court's opinion amalgamated all three branches of the Government. Thus, *Bramblett* is highly relevant here even though its narrow holding only extended §1001 to false statements made within the Legislative Branch.

The Court opined: We think *Bramblett* must be acknowledged as a seriously flawed decision. Significantly, the *Bramblett* Court made no attempt to reconcile its interpretation with the usual meaning of "department." It relied instead on a review of the evolution of §1001 and its statutory cousin, the false claims statute presently codified at **18 U.S.C. § 287** as providing a "context" for the conclusion that "Congress could not have intended to leave frauds such as [Bramblett's] without penalty." 348 U. S., at 509. We are convinced that the Court erred by giving insufficient weight to the plain language of §§6 and 1001. [n.5] Although the historical evolution of a statute—based on decisions by the entire Congress—should not be discounted for the reasons that may undermine confidence in the significance of excerpts from congressional debates and committee reports, [n.6] a historical analysis normally provides less guidance to a statute's meaning than its final text. In the ordinary case, absent any "indication that doing so would frustrate Congress's clear intention or yield patent absurdity, our obligation is to apply the statute as Congress wrote it." *BFP* v. *Resolution Trust Corp.*, 511 U. S. __, __ (1994) (Souter, J., dissenting).

As noted above, a straightforward reading of the statute suggests a meaning of "department" that is fully consistent with the definition set forth in §6. See *supra*, at 3-6. Similarly unremarkable is the language of the original Act of Congress adopting what is

now §1001. That piece of legislation—the Act of June 18, 1934, 48 Stat. 996 (1934

Act)—amended what was then §35 of the Criminal Code to provide, in pertinent part:

"[W]hoever shall knowingly and willfully falsify or conceal or cover up by any trick,

scheme, or device a material fact, or make or cause to be made any false or fraudulent

statements or representations, or make or use or cause to be made or used any false bill,

receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the

same to contain any fraudulent or fictitious statement or entry, *in any matter within the*

*jurisdiction of any department or agency of the United States* or of any corporation in

which the United States of America is a stockholder . . . [shall be punished]." (Emphasis

added).

This language conveys no different message regarding "department" than the

current version of §1001.

Judicial Function Exception Continued

**APPLIES TO TESTIMONY BEFORE A COURT**

….Once planted, the **judicial function exception** began to flower in a number of other

Circuits. The Ninth Circuit summarized the state of the law in 1985:

**"[T]he adjudicative functions exception to section 1001** has been suggested or

recognized by appellate decisions since 1962, not long after the Supreme Court decided

that section 1001 applies to matters within the jurisdiction of the judicial branch. In these

twenty three years, there has been no response on the part of Congress either repudiating

the limitation or refining it. It therefore seems too late in the day to hold that no exception

exists." *United States* v. *Mayer*, 775 F. 2d 1387, 1390 *(per curiam)* (footnote omitted).

The Second Circuit sounded a similar theme in 1991, relying in part on the congressional acquiescence to which the Ninth Circuit had adverted in *Mayer.* The Second Circuit wrote:

"No court, to our knowledge, whether due to its acceptance of the exception or to prosecutorial reticence, has ever sustained a section 1001 conviction for false statements made by a defendant to a court acting in its judicial capacity. The exception was first articulated nearly thirty years ago and `. . . [i]t therefore seems too late in the day to hold that no exception exists.' *Mayer*, 775 F. 2d at 1390." *United States* v. *Masterpol*, 940 F. 2d 760, 766. [n.10]

......................With the foregoing considerations in mind, we now turn to the difficult *stare decisis* question that this case presents. It is, of course, wise judicial policy to adhere to rules announced in earlier cases. As Justice Cardozo reminded us, "[t]he labor of judges would be increased almost to the breaking point if every past decision could be reopened in every case, and one could not lay one's own course of bricks on the secure foundation of the courses laid by others who had gone before him." B. Cardozo, The Nature of the Judicial Process 149 (1921). Adherence to precedent also serves an indispensable institutional role within the Federal Judiciary. *Stare decisis* is "a basic self governing principle within the Judicial Branch, which is entrusted with the sensitive and difficult task of fashioning and preserving a jurisprudential system that is not based upon `an arbitrary discretion.' " *Patterson* v. *McLean Credit Union*, 491 U.S. 164, 172 (1989) (quoting The Federalist No. 78, p. 490 (H. Lodge ed. 1888) (A. Hamilton)). See also *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U. S. __, __ (1992) (slip op., at 11-12) (joint opinion of O'Connor, Kennedy, and Souter, JJ.). Respect for precedent is

strongest "in the area of statutory construction, where Congress is free to change this Court's interpretation of its legislation." *Illinois Brick Co.* v. *Illinois*, 431 U.S. 720 736 (1977). [n.11]

…………………In this case, these considerations point in two conflicting directions. On one hand, they counsel adherence to the construction of §1001 adopted in *Bramblett;* on the other, they argue in favor of retaining the body of law that has cut back on the breadth of *Bramblett* in Circuits from coast to coast. It would be difficult to achieve both goals simultaneously. For if the word "department" encompasses the Judiciary, as *Bramblett* stated, 348 U. S., at 509, the judicial function exception cannot be squared with the text of the statute. A court is a court—and is part of the Judicial Branch—whether it is functioning in a housekeeping or judicial capacity. Conversely, *Bramblett* could not stand if we preserved the thrust of the judicial function exception—*i. e.,* if we interpreted **18 U.S.C. § 1001so** that it did not reach conduct occurring in federal court proceedings. Again, although *Bramblett* involved a false representation to an office within the Legislative Branch, the decision lumped all three branches together in one and the same breath. See *ibid.* ("department" in §1001 "was meant to describe the executive, legislative and judicial branches of the Government").

We think the text of §1001 forecloses any argument that we should simply ratify the body of cases adopting the judicial function exception. We are, however, persuaded that the clarity of that text justifies a reconsideration of Bramblett. [n.12] Although such a reconsideration is appropriate only in the rarest circumstances, we believe this case permits it because of a highly unusual "intervening development of the law," see

Patterson, 491 U. S., at 173, and because of the absence of significant reliance interests in adhering to Bramblett.

……………..*** But we need not speculate, for we have direct evidence on this point.

The United States Attorneys' Manual states quite plainly that "[p]rosecutions should not be brought under **18 U.S.C. § 1001** for false statements submitted in federal court proceedings"; it instead directs prosecutors to proceed under the perjury or obstruction of justice statutes. **United States Attorneys' Manual ¶ 9-69.267 (1992).** Clearer evidence of nonreliance can scarcely be imagined. [n.15]

In sum, although the *stare decisis* issue in this case is difficult, we conclude that there are sound reasons to correct ***Bramblett's*** erroneous construction of §1001. Although we could respect prior decisions by endorsing the judicial function exception or by adhering to *Bramblett* while repudiating that exception, we believe coherence and stability in the law will best be served in this case by taking a different course. Limiting the coverage of §1001 to the area plainly marked by its text will, as a practical matter, preserve the interpretation of §1001 that has prevailed for over 30 years and will best serve the administration of justice in the future.

***Bramblett* is hereby overruled. We hold that a federal court is neither a "department" nor an "agency" within the meaning of §1001. The Court of Appeals' decision is therefore reversed to the extent that it upheld petitioner's convictions under §1001.**

*It is so ordered.* "

2The **judicial function exception** has been recognized in the following cases: *United States* v. *Masterpol*, 940 F. 2d 760, 764-766 (CA2 1991); *United States* v. *Holmes*, 840 F. 2d 246, 248 (CA4), cert. denied, 488 U.S. 831 (1988); *United States* v. *Abrahams*, 604 F. 2d 386, 393 (CA5 1979); *United States* v. *Mayer*, 775 F. 2d 1387, 1390 (CA9 1985) *(per curiam); United States* v. *Wood*, 6 F. 3d 692, 694-695 (CA10 1993). Although the Seventh and District of Columbia Circuits have questioned the basis of the exception, see *United States* v. *Barber*, 881 F. 2d 345, 350 (CA7 1989), cert. denied, 495 U.S. 922 (1990); *United States* v. *Poindexter*, 951 F. 2d 369, 387 (CADC 1991), cert. denied, 506 U. S. __ (1992), the Sixth Circuit stands alone in unambiguously rejecting it

5  The Supreme Court further opined; "In addition, it is debatable at best whether the Court was correct in asserting that, but for its expansive interpretation of §1001, Bramblett's fraud would necessarily have gone unpunished. **In discussing the evolution of §1001, the Court noted that the false claims statute, originally enacted in 1863 and by 1955 codified at 18 U.S.C. § 287 "clearly covers the presentation of false claims against any component of the Government to any officer of the Government." *United States* v. *Bramblett*, 348 U.S. 503, 505 (1955)…"**

14 **The perjury and false claims statutes also cover the Legislative Branch**, as does **18 U.S.C. § 1505 (obstruction of justice).** The existence of overlaps with other statutes does not itself militate in favor of overruling *Bramblett;* Congress may, and often does, enact separate criminal statutes that may, in practice, cover some of the same conduct. See *United States* v. *Batchelder*, 442 U. S., at 123-124; *United States* v.

*Gilliland*, 312 U.S. 86, 95 (1941). The overlaps here simply demonstrate that prosecutors cannot be said to have any significant reliance interest in *Bramblett*.

## PERJURY/FALSE STATEMENTS

Although it now covers more than court proceedings, the definition of perjury has not changed a great deal otherwise since the framing of the Constitution. Blackstone described it as "a crime committed when a *lawful* oath is administered, in some *judicial* proceeding, **to a person who swears *Willfully, absolutely* and *falsely*, in a matter *material* to the issue or point in question."**

There are three general federal perjury laws. One, **18 U.S.C. 1621, outlaws presenting material false statements under oath in federal official proceedings**. A second, 18 U.S.C. 1623, bars presenting material false statements under oath before or ancillary to federal court or grand jury proceedings. A third, 18 U.S.C. 1622 (subornation of perjury), prohibits inducing or procuring another to commit perjury in violation of either Section 1621 or Section 1623.

In most cases, the courts abbreviate their description of the elements and state that to prove perjury under Section 1623 the government must establish that the defendant "(1) knowingly made a (2) false (3) material declaration (4) under oath (5) in a proceeding before or ancillary to any court or grand jury of the United States." The courts generally favor the encapsulation from *United States v. Dunnigan* to describe the elements of Section 1621: "A witness testifying under oath or affirmation violates this section if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."

**Section 1622 outlaws procuring or inducing another to commit perjury: "Whoever procures another to commit any perjury is guilty of subornation of perjury, and shall be fined under this title or imprisoned for not more than five years, or both", 18 U.S.C. 1622.**

**The false statement statute, 18 U.S.C. 1001,** is closely akin to the perjury statutes. It outlaws false statements in any matter within the jurisdiction of a federal agency or department, a kind of perjury with oath prohibition.

This report is available in abbreviated form – without footnotes, quotations, or citations – as **CRS Report 98-807,** *Perjury Under Federal Law: A Sketch of the Elements*. Both versions have been excerpted from **CRS Report RL34303,** ***Obstruction of Justice: An Overview of Some of the Federal Laws that Prohibit Interference with Judicial, Executive and Legislative Activities***. Excerpted portions of RL34303 are also available as follows. **CRS Report RS22783,** ***Obstruction of Justice****: An Abridged Overview of Related Federal Criminal Laws*; CRS Report RL34304, *Obstruction of Congress: a Brief Overview of Federal Law Relating to Interference with Congressional Activities*; and CRS Report RS22784, *Obstruction of Congress: an Abridged Overview of Federal Laws Relating to Interference with Congressional Activities*. All are by Charles Doyle.  (Citing from Congressional Research Service)

Federal perjury laws are found principally in chapter 79 of title 18 of the United States Code.2

2 Prohibitions against misconduct very much like perjury are scattered throughout the

United States Code. The most widely prosecuted is probably 18 U.S.C. 1001, discussed *infra*, that outlaws material false statements made with respect to a matter within the jurisdiction of a department or agency of the United States. For a discussion of 18 U.S.C. 1503 and 1505 which outlaw corrupt endeavors to impede the due administration of justice before the courts and executive tribunal and the due exercise of the power of Congressional inquiry **see CRS Report RL34303,** *Obstruction of Justice: An Overview of Some of the Federal Laws that Prohibit Interference with Judicial, Executive or Legislative Activities***.**

**3 18 U.S.C. 1961(1), 1956I(7).**

**4 18 U.S.C. 2, 3, 4, 371.**

5 *E.g.*, *United States v. Atalig*, 502 F.3d 1063, 1065 (9th Cir. 2007)(conspiracy to violate 18 U.S.C. 1001); *cf.*, *United States v. Dunne*, 324 F.3d 1158, 1162-163 (10th Cir. 2003).

6 18 U.S.C. 1621 ("This section is applicable whether the statement or subscription is made within or without the United States"); 18 U.S.C. 1623 ("This section is applicable whether the conduct occurred within or without the United States"). 7 *United States v. Walczak*, 783 F.2d 852, 854-55 (9th Cir. 1986). 8 Unlike subsection 1621, subsection 1623 permits a conviction in the case of two mutually inconsistent declarations without requiring proof that one of them is false, 18 U.S.C. 1623I; it recognizes a limited recantation defense, 18 U.S.C. 1623(d); it dispenses with the so-called two-witness rule, 18 U.S.C. 1623(e); and it employs a "knowing" mens rea standard rather than the more demanding "willfully" standard used in subsection 1621.

## PERJURY AND SUBORNATION OF PERJURY COVERS
## TESTIMONY UNDER OATH BEFORE THE U.S. CONGRESS

10 "Wherever, under any law of the United States or under any rule, regulation, order, or

requirement made pursuant to law, any matter is required or permitted to be supported,

evidenced, established, or proved by the sworn declaration, verification, certificate,

statement, oath, or affidavit, in writing of the person making the same (other than a

deposition, or an oath of office, or an oath required to be taken before a specified official

other than a notary public), such matter may, with like force and effect, be supported,

evidenced, established, or proved by the unsworn declaration, certificate, verification, or

statement, in writing of such person which is subscribed by him, as true under penalty of

perjury, and dated, in substantially the following form:

"(1) If executed without the United States: 'I declare (or certify, verify, or state) under

penalty of perjury under the laws of the United States of America that the foregoing is

true and correct. Executed on (date). (Signature)'.

"(2) If executed within the United States, its territories, possessions, or commonwealths:

'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true

and correct. Executed on (date).

(Signature)'**." 11 18 U.S.C. 1623(a).**

     25 *United States v. McKenna*, 327 F.3d 830, 841 (9th Cir. 2003)("A question

leading to a statement supporting a perjury conviction is not fundamentally ambiguous

where the jury could conclude beyond a reasonable doubt that the defendant understood

the question as did the government and that so understood, the defendant's answer was

false"); *United States v. Brown*, 459 F.3d 509, 529 (5th Cir. 2006); *United States v.

Turner*, 500 F.3d 685, 690 (8th Cir. 2007).

28 *E.g., United States v. Brown*, 459 F.3d 509, 530 n.18 (5th Cir. 2006)("**The materiality requirement of §1623** has been satisfied in cases where the false testimony was relevant to any subsidiary issue or was capable of supplying a link to the main issue under

that the defendant was deliberately ignorant or willfully blind to the fact that the statement was false.23 On the other hand, "[a] question that is truly ambiguous or which affirmatively misleads the testifier can never provide a basis for a finding of perjury, as it could never be said that one intended to answer such a question untruthfully."24 Yet ambiguity will be of no avail if the defendant understands the question and answers falsely nevertheless.25

**Materiality** is perhaps the most nettlesome of perjury's elements. It is usually said that a statement is material "if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to whom it is addressed."26 This definition is not easily applied when the precise nature of the underlying inquiry remains somewhat undefined such as in grand jury proceedings or in depositions at the discovery stage of a civil suit. On the civil side, the lower federal courts appear divided between the view (1) that a statement in a deposition is material if a "truthful answer might reasonably be calculated to lead to the discovery of evidence admissible at the trial of the underlying suit" and (2) that a statement is material "if the topic of the statement is discoverable and the false statement itself had a tendency to affect the outcome of the underlying civil suit for which the deposition was taken."27

In the case of perjury before the grand jury, rather than articulate a single standard the courts have described several circumstances under which false testimony

may be considered material.28 In any event, a statement is no less material because

**CRS-6**

consideration"); *United States v. Silveira*, 426 F.3d 514, 518 (1st Cir. 2005)("A

statement of witness to a grand jury is material if the statement is capable of influencing

the grand jury as to any proper matter pertaining to its inquiry or which might have

influenced the grand jury or impeded its inquiry. To be material, the statement need not

directly concern an element of the crime being investigated, nor need it actually influence

the jury"); *United States v. Burke*, 425 F.3d 400, 414 (7th Cir. 2005)("Even potential

interference with a line of inquiry can establish materiality"); *United States v. Blanton*,

281 F.3d 771, 775(8th Cir. 2002)("The statements need not be material to any particular

issue, but may be material to any proper matter of inquiry"); *United States v. Plumley*,

207 F.3d 1086, 1095-96 (8th Cir. 2000)("Although it is true that this particular question

did not address the ultimate issue. .

. it is not thereby rendered **immaterial"** citing cases where a statement before the

grand jury was found to be material when a "truthful answer would have raised questions

about the role of others. . . when [the] witness obscures [his] whereabouts or involvement

in offense. . . [and] about peripheral matters [that] can become material when considered

in context"). 29 *United States v. Silveira*, 426 F.3d 514, 518 (1st Cir. 2005); *United States

v. Lee*, 359 F.3d 412, 416 (6th Cir. 2004); *United States v. McKenna*, 327 F.3d 830, 839

(9th Cir. 2003). 30 *Brown v. United States*, 245 F.2d 549, 555 (8th Cir. 1957), quoting,

*United States v. Icardi*, 140 F.Supp. 383, 384-88 (D.D.C. 1956); *but see, United States v.

Burke*, 425 F.3d 400, 408 (7th Cir. 2005)("We have not embraced this doctrine, however,

and do not see any reason to adopt it now")(internal citations omitted).

31 *United States v. McKenna*, 327 F.3d 830, 837 (9th Cir. 2003)("Here, the government did not use its investigatory powers to question McKenna before a grand jury. Rather, it merely questioned McKenna in its role as a defendant during the pendency of a civil action in which she was the plaintiff. The perjury trap doctrine is inapplicable to McKenna's case for this reason"); *United States v. Regan*, 103 F.3d 1073, 1079 (2d Cir. 1997)("[w]e have noted that the existence of a legitimate basis for an investigation and for particular questions answered falsely precludes any application of the perjury trap doctrine"); *United States v. Chen*, 933 F.2d 793, 797 (9th Cir. 1991)("[w]hen testimony is elicited before a grand jury that is attempting to obtain useful information in furtherance of its investigation or conducting a legitimate investigation into crimes which had in fact taken place within its jurisdiction, the perjury trap doctrine is, by definition, inapplicable"), quoting, *United States v. Devitt*, 499 F.2d 135, 140 (7th Cir. 1974) and *United States v. Chevoor*, 526 F.2d 178, 185 (1st Cir. 1975). 32 18 U.S.C. 1623I("An indictment or information for violation of this section alleging that, in any proceedings before or ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two or more declarations, which are it did not or could not divert the decisionmaker.29

## Perjury Generally (18 U.S.C. 1621)

When Congress passed **Section 1623**, it did not repeal Section 1621 either explicitly or by implication; where its proscriptions overlap with those of Section 1623, the government is free to choose under which it will prosecute.43 Since Section 1623 frees prosecutors from many of the common law requirements of Section 1621, it is perhaps not surprising that they ordinarily elect to prosecute under subsection

18

1623. Section 1623 does outlaw perjury under a wider range of circumstances than

Section 1621; it prohibits perjury before official proceedings generally – both judicial

and nonjudicial. Separated into its elements, the section provides that:

**CRS-9   CONGRESSIONAL RESEARCH SERVICE**

44 18 U.S.C. 1621. 45 *United States v. Dunnigan*, 507 U.S. 87, 94 (1993); *United States*

*v. McKenna*, 327 F.3d 830, 838 (9th Cir. 2003); *United States v. Singh*, 291 F.3d 756, 763

n.4 (11th Cir. 2002); *United States v. Nash*, 175 F.3d 429, 438 (6th Cir. 1999); *see also*,

*United States v. Dumeisi*, 424 F.3d 566, 582 (7th Cir. 2005)("the elements of perjury are

(1) testimony under oath before a competent tribunal, (2) in a case in which United States

law authorizes the administration of an oath, (3) false testimony, (4) concerning a

material matter, (5) with the……..

(1)

I. Whoever having taken an oath

II. before a competent tribunal, officer, or person,

III. in any case in which a law of the United States authorizes an oath to be administered,

IV. a. that he will testify,

ii. declare,

iii. depose, or

iv, certify truly, or

b. that any written

i. testimony,

ii. declaration,

iii. deposition, or

iv. certificate

by him subscribed, is true,

V. willfully and contrary to such oath

VI. a. states or

b. subscribes

any material matter which he does not believe to be true; or

(2)

I. Whoever in any

a. declaration,

b. certificate,

c. verification, or

d. statement

under penalty of perjury as permitted under Section 1746 of title 28, United States

Code,

II. willfully subscribes as true

III. any material matter

IV. which he does not believe to be true

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined

under this title or imprisoned not more than five years, or both. This section is

applicable whether the statement or subscription is made within or without the United

States.44

     The courts generally favor an abbreviated encapsulation such as the one found

in *United States v. Dunnigan*: "A witness testifying under oath or affirmation violates

this section if she gives false testimony concerning a material matter with the willful

intent to provide false testimony, rather than as a result of confusion, mistake, or

faulty memory."45

   The test for materiality under Section 1621 is whether the false statement "has

a natural tendency to influence or [is] capable of influencing the decision-making

body to which it [is] addressed."50


### JUDGE WAGNER MAY BE HELD TO HAVE COMMITTED SUBORDINATION OF PERJURY, AND SHE LIKE JUDGE KRAMER IS NOT PROTECTED BY JUDICIAL IMMUNITY

**Subornation of Perjury (18 U.S.C. 1622)**

   Section 1622 outlaws procuring or inducing another to commit perjury:

"Whoever procures another to commit any perjury is guilty of subornation of perjury,

and shall be fined under this title or imprisoned for not more than five years, or

both," 18 U.S.C. 1622. The crime consists of two elements – (1) an act of perjury

committed by another (2) induced or procured by the defendant. Perjury under either

Section 1621 or 1623 will support a conviction for subornation under Section 1622,55

but proof of the commission of an act of perjury is a necessary element of

subornation.56 Although the authorities are exceptionally sparse, it appears that to

suborn one must know that the induced statement is false and that at least to suborn

under Section 1621 one must also knowingly and willfully induce.57 Subornation is

only infrequently prosecuted as such perhaps because of the ease with which it can

now be prosecuted as an obstruction of justice under either 18 U.S.C. 1503 or 151258

Section 1622 do not insist upon suborner success as a prerequisite to

prosecution.59

## IMPEACHABLWE OFFENSES

Perjury before the United States Congress, falls within "High Crimes and

Misdemeanors."

United States Attorneys' Manual ¶ 9-69.267 (1992)

Federal judges are not elected but under the Constitution have lifetime tenure subject to

''good behavior'' in office."

Impeachment is a fundamental constitutional power belonging to Congress. This

safeguard against corruption can be initiated against federal officeholders from the lowest

cabinet member, all the way up to the president and the chief justice of the U.S. Supreme

Court. Besides providing the authority for impeachment, the U.S. Constitution details the

methods to be used. The two-stage process begins in the House of Representatives with a

public inquiry into allegations. It culminates, if necessary, with a trial in the Senate. State

constitutions model impeachment processes for state officials on this approach. At both

the federal and state levels, impeachment is rare: From the passage of the Constitution to

the mid-1990s, only 50 impeachment proceedings were initiated, and only a third of these

went as far as a trial in the Senate. The reluctance of lawmakers to use this power is a

measure of its gravity; it is generally only invoked by evidence of criminality or

substantial abuse of power

In cases of **Impeachment,** involving the president, vice president, or other federal

officers, the House of Representatives prepares the articles of impeachment, since it is

endowed with the "sole Power of Impeachment," under Article I, Section 2, Clause 5 of

the Constitution. The articles are sent to the Senate, which has the exclusive power to "try all Impeachments" by virtue of Article I, Section 3, Clause 6.

At the federal level, **Article Two of the United States Constitution (Section 4)** states that **"The President,** Vice President, and all other civil Officers of the United States shall be removed from Office on Impeachment for, and Conviction of, **Treason, Bribery**, or other **High Crimes and Misdemeanors**." The House of Representatives has the sole power of impeaching, while the **United States Senate** has the sole power to try all impeachments. The removal of impeached officials is automatic upon conviction in the Senate.

Section 1503 contains the Omnibus Clause, which states that a person who "corruptly or by threats of force, or by threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice" is guilty of the crime of obstruction of justice. This clause offers broad protection to the "due administration of justice." Federal courts have read this clause expansively to proscribe any conduct that interferes with the judicial process.

### LIST OF FEDERAL JUDGES IMPEACHEDE
### FOR HIGH CRIMES AND MISDEMEANORS

### Impeachments of Federal Judges

### John Pickering, U.S. District Court for the District of New Hampshire.

Impeached by the U.S. House of Representatives on March 2, 1803, on charges of mental instability and intoxication on the bench; Convicted by the U.S. Senate and removed from office on March 12, 1804.

### Samuel Chase, Associate Justice, Supreme Court of the United States.

Impeached by the U.S. House of Representatives on March 12, 1804, on charges of arbitrary and oppressive conduct of trials; Acquitted by the U.S. Senate on March 1, 1805.

**James H. Peck, U.S. District Court for the District of Missouri.**

Impeached by the U.S. House of Representatives on April 24, 1830, on charges of abuse of the contempt power; Acquitted by the U.S. Senate on January 31, 1831. *

**West H. Humphreys, U.S. District Court for the Middle, Eastern, and Western Districts of Tennessee.**

Impeached by the U.S. House of Representatives, May 6, 1862, on charges of refusing to hold court and waging war against the U.S. government; Convicted by the U.S. Senate and removed from office, June 26, 1862.

**Mark W. Delahay, U.S. District Court for the District of Kansas.**

Impeached by the U.S. House of Representatives, February 28, 1873, on charges of intoxication on the bench; Resigned from office, December 12, 1873, before opening of trial in the U.S. Senate.

**Charles Swayne, U.S. District Court for the Northern District of Florida.**

Impeached by the U.S. House of Representatives, December 13, 1904, on charges of abuse of contempt power and other misuses of office; Acquitted by the U.S. Senate February 27, 1905. *

**Robert W. Archbald, U.S. Commerce Court.**

Impeached by the U.S. House of Representatives, July 11, 1912, on charges of improper business relationship with litigants; Convicted by the U.S. Senate and removed from office, January 13, 1913.

**George W. English, U.S. District Court for the Eastern District of Illinois.**

Impeached by the U.S. House of Representatives, April 1, 1926, on charges of abuse of power; resigned office November 4, 1926; Senate Court of Impeachment adjourned to December 13, 1926, when, on request of the House manager, impeachment proceedings were dismissed. *

**Harold Louderback, U.S. District Court for the Northern District of California.**

Impeached by the U.S. House of Representatives, February 24, 1933, on charges of favoritism in the appointment of bankruptcy receivers; Acquitted by the U.S. Senate on May 24, 1933.

**Halsted L. Ritter, U.S. District Court for the Southern District of Florida.**

Impeached by the U.S. House of Representatives, March 2, 1936, on charges of favoritism in the appointment of bankruptcy receivers and practicing law while sitting as a judge; Convicted by the U.S. Senate and removed from office, April 17, 1936.

**Harry E. Claiborne, U.S. District Court for the District of Nevada.**

Impeached by the U.S. House of Representatives, July 22, 1986, on charges of income tax evasion and of remaining on the bench following criminal conviction; Convicted by the U.S. Senate and removed from office, October 9, 1986.

**Alcee L. Hastings, U.S. District Court for the Southern District of Florida.**

Impeached by the U.S. House of Representatives, August 3, 1988, on charges of perjury and conspiring to solicit a bribe; Convicted by the U.S. Senate and removed from office, October 20, 1989.

**Walter L. Nixon, U.S. District Court for the Southern District of Mississippi.**

Impeached by the U.S. House of Representatives, May 10, 1989, on charges of perjury before a federal grand jury; Convicted by the U.S. Senate and removed from office, November 3, 1989.

**OPPOSITION TO MOTION TO DISMISS COMPLAINT AGAINST GARLAND PINKSTON FOR PARTICIPATING IN LEGISLATIVE ACTIVITIES CONNECTED WITH RESTRAINT IN TRADE, ANTICOMPETITIVE CONDUCT, AND CHANGE OF LAWS TO FIT THE COURT'S DETERMINATION TO REQUIRE A LICENSE TO PRACTICE LAW AS A REQUIREMENT FOR ENGAGING IN PROTECTED SPEECH REGARDING THE INTERCHANGEABILITY OF THE TITLES ALJ AND HEARING EXAMINER**

The Plaintiff submit opposition of the District of Columbia Government's motion to dismiss the complaint against Garland Pinkston, for participating in anticompetitive-legislative activities initiated by Judge John Ferren of the District of Columbia Court of Appeals, while on sabbatical from the District of Columbia Court of Appeals, although still an associate judge of the District of Columbia Court of Appeals (DCCA), and in the capacity of Corporation Counsel redesignated Attorney General for the District of Columbia, and in support the Plaintiff cites the following:

a)      At the time Garland Pinkston was participating as a spectator in legislative activities of the Office of Administrative Hearings Establishment Act of 2001, **"OAHEA"** initiated by one of his bosses, Judge John Ferren of DCCA, Garland Pinkston, the Clerk of the District of Columbia Court of Appeals, and former attorney for the District of Columbia Court of Appeals when and while he was the acting Corporation Counsel, was on the public payroll as Clerk to the District of Columbia Court of Appeals.

b)      At the time Garland Pinkston was participating as a spectator in the legislative activities designed to regulate the Plaintiff out of business and designed to require a license to practice law as a condition for holding and maintaining the title "Hearing Examiner" & "Administrative Law Judge", and designed to require a license to practice law as a condition for practicing law before administrative agencies of the District of Columbia which are recipients of federal funds, Garland Pinkston was an executive officer of the DCCA, which, at all times relevant, was prosecuting the Plaintiff for practice law before administrative agencies, and using its judicial powers to burden, restricting and restraining the Plaintiff's speech connected with the Plaintiff's practice of law before administrative agencies of the District of Columbia and before administrative agencies of the United States.

c)      At the time Garland Pinkston was participating as a spectator in the legislative activities designed to regulate the Plaintiff out of business and designed to require a license to practice law as a condition for holding and maintaining the title "Hearing Examiner" & "Administrative Law Judge", and designed to require a license to practice law as a condition for practicing law before administrative agencies of the District of Columbia which are recipients of federal funds, Garland Pinkston knew and had reason to know that the legislative activities he was witnessing, i.e. the testimony of the Council for Court Excellence, (CCE) whom were recipients of a sole-source contract issued to it by Judge John Ferren of the DCCA, who subsequently sought and secured the position of Vice President of CCE after the **"OAHEA"** legislation was promulgated by the District of Columbia Council, under the auspices of Kathy Patterson, Chair of the D.C. Council Judiciary Committee, who also became a member of CCE, subsequent to the passage of the **"OAHEA" legislation.**

d)      At the time Garland Pinkston was participating as a spectator in the **"OAHEA"** legislative activities designed to regulate the Plaintiff out of business and designed to require a license to practice law as a condition for holding and maintaining the title "Hearing Examiner" & "Administrative Law Judge", and designed to require a license to practice law as a condition for practicing law before administrative agencies of the District of Columbia which are recipients of federal funds, Garland

Pinkston knew and had reason to know that the legislative activities he was witnessing, and participating in as an executive officer and member of the executive management of the DCCA, was connected with and in conflict with the DCCA's prosecution of the Plaintiff for some 16 years, for indicating that the titles "Hearing Examiner" and "Administrative Law Judge" were interchangeable, although Hearing Examiners of the District of Columbia Office of Employee Appeals and the District of Columbia Consumer & Regulatory Affairs, were not prosecuted by the DCCA and imprisoned for indicating and stating that their titles "Hearing Examiner(s)" was interchangeable with the title "Administrative Law Judge" and "Administrative Judge", by referring to themselves, openly and notoriously as "Administrative Judges" and "Administrative Law Judges" although their official title of record were "Hearing Examiner."

e)      At the time Garland Pinkston, **a member of the DC Bar,** was participating as a spectator in the **"OAHEA"** legislative activities designed to regulate the Plaintiff out of business and designed to require a license to practice law as a condition for holding and maintaining the title "Hearing Examiner" & "Administrative Law Judge", and designed to require a license to practice law as a condition for practicing law before administrative agencies of the District of Columbia which are recipients of federal funds, Garland Pinkston knew and had reason to know that the legislative activities he was witnessing, and participating in as an executive officer and member of the executive management of the DCCA, was connected with and in conflict with the DCCA's prosecution of the Plaintiff for some 16 years, for indicating that the titles "Hearing Examiner" and "Administrative Law Judge" were interchangeable, **Garland Pinkston knew and had reason to know that the OAHEA legislative activities, was in conflict with the actions of the DCCA, and the CCE, and Plaintiff's right to a fair and objective hearing, regarding Plaintiff's complaints and petitions that provided that the DCCA's enforcement of its licensing requirements against the Plaintiff practice before administrative agencies of the United States and the District of Columbia, were ultra vires, and deprived the Plaintiff of equal protection of the laws and of due process of law.**

f)      At the time Garland Pinkston, a member of the DC Bar, was participating as a spectator in the **"OAHEA"** legislative activities designed to regulate the Plaintiff out of business and designed to require a license to practice law as a condition for holding and maintaining the title "Hearing Examiner" & "Administrative Law Judge", and designed to require a license to practice law as a condition for practicing law before administrative agencies of the District of Columbia which are recipients of federal funds, Garland Pinkston knew and had reason to know that the legislative activities he was witnessing, and participating in as an executive officer and member of the executive management of the DCCA**,**

27

**was connected with and in conflict with the DCCA's prosecution of the Plaintiff for some 16 years, for indicating that the titles "Hearing Examiner" and "Administrative Law Judge" were interchangeable, and in conflict with the DCCA's action of imposing upon the Plaintiff DCCA's licensing requirements against the Plaintiff's practice of law before administrative agencies of the United States which do not require a license to practice law.**

g)    At the time Garland Pinkston, **a member of the DC Bar**, and **former Corporation Counsel,** was participating as a spectator in the **"OAHEA"** legislative activities designed to regulate the Plaintiff out of business and designed to require a license to practice law as a condition for holding and maintaining the title "Hearing Examiner" & "Administrative Law Judge", and designed to require a license to practice law as a condition for practicing law before administrative agencies of the District of Columbia which are recipients of federal funds, Garland Pinkston knew and had reason to know that the legislative activities he was witnessing, and participating in as an executive officer and member of the executive management of the DCCA, **was connected with anti-competitive conduct, designed to screen out and restrain, restrict and obstruct, nonattorney administrative law practitioners, in particular the Plaintiff, from practicing law before administrative agencies of the United States, in violation of the Sherman Antitrust Act, and in violation of the District of Columbia Antitrust Act.**

h)    At all times relevant, Garland Pinkston, as Clerk of the DC Court of Appeals, the supervisor of the DC Bar, not only was a member of the DC Bar, but participated in the regulation and supervision of the DC Bar directly and indirectly, as the executive manager of the DCCA, and as supervisor of the DCCA's counsel, Rosana Mason, and knew and had reason to know that the activities of the Council for Court Excellence involved anticompetitive activities, designed to regulate non members of the DC Bar out of the business of practicing law before administrative agencies that operated under the Office of Administrative Hearings, and that at all times relevant, Garland Pinkston knew and had reason to know that the Plaintiff practiced law before administrative agencies of the District of Columbia, including but not limited to the D.C. Office of Employee Appeals, the D.C. Department of Employment Services, Office of Unemployment Compensation, and the other respective administrative agencies of the Department of Consumer and Regulatory Affairs, and Pinkston knew that the OAHEA operated to bar the Plaintiff from holding the converted title "Administrative Law Judge" converted from the title "Hearing Examiner" although both titles involved the same and similar duties and functions without any substantive or substantial differences as to scope of authority and as to scope of responsibility, and as to jurisdictional authority.  Essentially, with respect to all respects, the titles

are the same, and the duties and functions are and at all times relevant were the same.

i)      At the time Garland Pinkston, **a member of the DC Bar**, and **former Corporation Counsel,** was participating as a spectator in the **"OAHEA"** legislative activities designed to regulate the Plaintiff out of business and designed to require a license to practice law as a condition for holding and maintaining the title "Hearing Examiner" & "Administrative Law Judge", and designed to require a license to practice law as a condition for practicing law before administrative agencies of the District of Columbia which are recipients of federal funds, Garland Pinkston knew and had reason to know that the legislative activities he was witnessing, and participating in as an executive officer and member of the executive management of the DCCA**, Garland Pinkston knew and had reason to know that his participation in acting as a spectator during the testimony of the Council for Court Excellence, recipient of a sole-source contract from Judge John Ferren, which was contracted to generate a study of administrative agencies of the United States to support the OAHEA legislative activities, was in conflict with his official duties as the alter ego of the DCCA, and in conflict with his official duties as an officer/attorney of the Court, and gave the appearance of conflict of interest, and impropriety by implication if not in fact.**

j)      At all times relevant, Garland Pinkston knew and had reason to know that his actions as set forth above, give the appearance of conflict of interest and impropriety, if not conflict in fact.

k)      At all times relevant, Garland Pinkston knew and had reason to know that his actions, as set forth above, **violated Rule 8.4 (d) (conduct that seriously interferes with the administration of justice) of the District of Columbia Rules of Professional Conduct and D.C. BAR R. XI, § 2 (b)(3)

l)      At all times relevant, Garland Pinkston, knew and had reason to know that the DCCA was engaged in imposing its licensing requirements upon the Plaintiff's practice of law before administrative agencies of the United States, under the pretest of enforcing DC Ct. App. R. 49 through Order 18, although these licensing requirements violated the laws of the United States, Equal Employment Opportunity Commission and the United States Merit Protection Board, where the Plaintiff principally practiced, not withstanding DCCA's knowledge that states are prohibited from establishing licensing requirements for practice of law before administrative agencies of the United States without the consent of the United States Congress.   See. Art. 1§8, cl. 17.  See *Cassandra A. Augustine v. Department of Veterans Affairs,* 429 F.3d 1334 (Nov. 15, 2005) .  See *Sperry v. State of Fla., 373 U.S. 379 (1963)*

**OPPOSITION TO MOTION TO DISMISS THE
DISTRICT OF COLUMBIA OFFICE OF ADMINISTRATIVE HEARINGS**

The District of Columbia Office of Administrative Hearings is not a party to these proceedings.  It was never served with service of process, and there exist no allegations against it for which the court to adjudicate.

Should the Court dismiss the D.C. Office of Administrative Hearings, it ought to be dismissed without prejudice.

**OPPOSITION TO DISMISS JUDGE JOHN FERREN AS A PARTY**

The actions of Judge John Ferren, constitute continuing violation, on the basis that Judge Ferren engaged in suppression of the truth, that he:

a)     At all times relevant was an agent of the District of Columbia Court of Appeals, when and while he was on sabbatical as Corporation Counsel for the District of Columbia Government (redesignated Attorney General), when he initiated the OAHEA legislative activities, and when he became Vice President of the Council for Court Excellence.

b)     At all times relevant, Judge John Ferren, was a co-supervisor of the District of Columbia Bar (D.C. Bar)

c)     At all times relevant, Judge Ferren, engaged in anticompetitive activities and the legislative participation in licensing requirements designed to perpetuate the DC Bar monopoly in the administrative market place, which he served on an on-going and continuous basis, as a co-regulator and supervisor of.

d)     At all times relevant, Judge John Ferren, when he was the Corporation Counsel for the District of Columbia, he issued a sole-source contract to the Counsel for Court Excellence, without competitive bidding, and in violation of the District of Columbia Procurement Act, which provides for competitive bidding unless there is a lack of bidders capable of performing the assessment that the CCE was charged to make, and when Judge Ferren selected CCE to be the recipient of a sole-source contract connected with the promulgation of the OAHEA, he  knew that CCE had a predisposition to assist the DC Bar in extending its monopoly power, and market, to the exclusion of non-attorney administrative practitioners, including the Plaintiff, by promoting legislative activities that restrict and exclude non-

members of the Bar from practicing law before administrative agencies of the District of Columbia, and Judge Ferren knew and had reason to know, that CCE would appoint him to an executive office of CCE.

e)    At all times relevant, Judge John Ferren, when he was the Corporation Counsel for the District of Columbia, facilitated and/or issued a sole-source contract to the Counsel for Court Excellence, without competitive bidding,  in violation of the District of Columbia Procurement Act, **Judge Ferren knew that there was a quid-pro-quo, that in return for the sole-source contract he facilitated to the CCE,** that he would receive the position of Vice President of CCE, and that CCE would generate a sham study that favored the establishment of OAHEA legislation, which benefited the DC Bar which he regulated by excluding non-attorneys, non-members of the DC Bar from practicing law before the administrative law judges of OAH, and that the legislation.

f)    At all times relevant Judge Ferren knew, that the OAHEA legislation that he facilitated and participated in, while an associate judge of the DCCA, on sabbatical to the office of D.C. Corporation Counsel, that he was interfering with the Plaintiff's and other non-members of the DC Bar, right to make and enforce contracts with and before administrative agencies of the District of Columbia, and that his actions constitute  interference with prospective business advantage of the Plaintiff.

g)    At all times relevant Judge Ferren knew, that the OAHEA legislation that he facilitated and participated in, while an associate judge of the DCCA, on sabbatical to the office of D.C. Corporation Counsel, that he Violated Plaintiff's constitutional rights under the Contract Clause of the Constitution .

h)    .Judge Ferren, at all times relevant, conspired with CCE and Kathy Patternson, and the DCCA to facilitate the enactment of laws that require a license to practice law as a condition authorizing administrative practitioners, the right to represent parties before administrative agencies of the District of Columbia for purposes of perpetuating the DC Bar's monopoly in the administrative law market place.  U.S. Const. Art. 1  10, cl. 1.   The Contract Clause applies not to court decisions, but only to state legislation that impairs contract rights. *Title Oil v. Flanagan*, 263 U.S. 444 (1924)

h)    It is without dispute that Judge Ferren, subsequent to CCE being the recipient of a sole-source contract, was elevated to the position of Vice President of CCE.

i)    At all times relevant, Defendant Ferren knew and had reason to know that while he was the Corporation Counsel, and while he was a co-regulator

and supervisor of the DC Bar, he was engaged in antitrust, anti-competitive legislation activities, and that this position conflicted with his position as Corporation Counsel, whom is District of Columbia Antitrust Act, enforcer.  D.C. Official Code § 28-4501 (2001) et seq., and that Under the District's Antitrust Act, the Corporation Counsel has express authority to file an action for damages "on behalf of any individual residing in the District," as well as an action for damages or injunctive relief on behalf of the District's proprietary interests. D.C. Code § 28-4507, and that the Corporation Counsel has the same authority as a state attorney general to bring federal damages actions "as parens patriae on behalf of natural persons residing in such State." 15 U.S.C. §§ 15c and 15g.  Accordingly, Defendant Ferren, committed conflict of interest and gave the appearance of impropriety which he had a duty to avoid with respect to his official acts.

j)    It is without dispute that the following Judges of the DCCA are and were members and officers of CCE:

*Rufus G. King, III * Ex-Officio Member   2007-2008
*Ann O'Regan Keary, Presiding Judge of the
Criminal Division for the DC Superior Court
Commission on Judicial Disabilities and Tenure (CJDT)
*Judge Ann O'Regan Keary, Deputy Presiding Judge of the Criminal
Division
THE HONORABLE VANESSA RUIZ, CCE BDir
*Honorable Vanessa Ruiz* Executive Committee
DC Court of Appeals, 2001, 2007-2008 BD CCE
*Honorable John Ferren, 2001 Board of Directors CCE
*Honorable Rufus G. King, III**  2007-2008 BD
*Hon. Noel Anketell Kramer
District of Columbia Court of Appeals 2007-2009
DC Superior Court
Ex Officio Officer
*Hon. Richard A. Levie (Ret.)  Bd of Directors 2007-2008
JAMS -- The Resolution Experts BD
*Devon Brown* (Ex-Official Member) 2007-2008
DC Department of Corrections 2007-2008 BD
*Hon. James A. Belson
District of Columbia Court of Appeals 2007-2008 BD
*Hon. Phil Mendelson*
DC Council  2007-2008 BD
*Hon. Kathy Patterson 2007-2008 BD
*D'Ana Johnson, Esquire
*Bonner Kiernan Trebach & Crociata, 2007-2008 BD
*Hon. Jeffrey A. Taylor*
U.S. Attorney for the

32

District of Columbia 2007-2008 BD

Wherefore, by virtue of the above-referenced, there exist a case and controversy with respect to Judge Ferren, and the Plaintiff has cited sufficient facts to support a prima facie case of conflict of interest, the appearance of impropriety, the appearance of conflict of interest.

## THE STATUTE OF LIMITATIONS OUGHT TO BE TOLLED WITH RESPECT TO THE CONDUCT OF JUDGE FERREN

The Tolling Provisions because of fraud, and fraudulent concealment. These courts have allowed the use of the discovery rule for claims of intrinsic fraud brought after the statutory time limit for contesting a will.  See, e.g., Padgett v Estate of Padgett, 32 So. 2d 484 (Fla. Dist. Ct. App. 1st Dist.  1975); Estate of Colucci, 492 A.2d 155 (Pa. Super. Ct. 1985)  See also, *Kropinski v. World Plan Executive Council-US*, 272 U.S. App. D.C. 17, 19, 853 F.2d 948, 955 (1988). *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 199).  "[I]n a fraud case, the statute of limitations will not begin running until the date the fraud is discovered, or reasonably should have been."); *Mullin v. Washington Free Weekly, Inc*., 785 A.2d 296, 299 (D.C. 2001)(citing *Colbert v. Georgetown Univ*., 641 A.2d 469, 472-73 9D.C. 1994))("the statute of limitations will not run until plaintiffs know or reasonably should have know that they suffered injury due to the defendants' wrongdoing")  ..."the focus of the rule is on when [the plaintiff] gained general knowledge [that she had been injured], not when she learned of the precise legal remedies [for the injury].  *East v. Graphic Arts Indus. Joint Pension Trust,* 718 A.2d 153, 157 (D.C. 1998).  See *also Ray v. Queen*, 747 A.2d 1137, 1142 (D.C. 2000)

_____/s/_____

Dr. Simon Banks,
Doctor of Laws
P.O. Box 17052
Alexandria, VA. 22302
571-970-8327
drsbanks@msn.com