# BEFORE THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIMON BANKS, | ) |
| | ) |
|     **Plaintiff** | ) |
| | ) |
| V. | ) Civil Action No. 08-00215 RCL |
| | ) |
| HON. NOEL ANKETELL KRAMER | ) |
| Et al | ) |
| | ) |
|     **Defendants** | ) August 7, 2008 |

## PLAINTIFF'S NOTICE OF FILING
### PLAINTIFF'S EXHIBITS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DISTRICT DEFENDANTS MOTION TO DISMISS THE AMENDED COMPLAINT

Comes now the Plaintiff, Dr. Simon Banks, and submit Notice of Filing Plaintiff's Exhibits in Support of Plaintiff's Opposition to District Defendants Motion to Dismiss the Amended Complaint

_____/s/_____
Dr. Simon Banks
Doctor of Laws
P.O. Box 17052
Alexandria, VA. 22302
571-970-8327
Email: drsbanks@msn.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DR. SIMON BANKS, J.D. <br> P.O. BOX 17052 <br> ALEXANDRIA, VA. 22302 <br><br> Plaintiff <br><br> v. <br><br> ELWOOD YORK, JR <br> ET AL <br><br> Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case: 1514 (RCL) <br> ) <br> ) <br> ) <br> ) August 6, 2008 <br> ) |

# PLAINTIFF'S EXHIBIT 1

In support of Plaintiff's Opposition to District Defendants'
Motion to Dismiss the Amended Complaint





Volume 18, Issue 1          February 2008

# The NAALJ News

## 2008 NAALJ MIDYEAR AND ANNUAL CONFERENCES

### KEYSTONES OF JUSTICE: IMPROVING ALJ TRIAL SKILLS
### JUNE 24-26, 2008
### HARRISBURG, PENNSYLVANIA

**Inside this issue:**

| | |
|---|---|
| Harrisburg Midyear | 1-2 |
| NYC 2008 Annual | 1, 3 |
| Affiliate News | 3-4 |
| Alexander Tribute | 5 |
| Alexander Scholarships Awarded | 5 |
| President's Message | 6 |
| Treasurer's Report | 6 |
| Special Ed Section | 6 |
| 2007 DC Annual Photos | 7 |
| NAALJ Committees | 8 |
| Officers and Board of Governors | 8 |

**Special points of interest:**

- NAALJ Midyear
  June 24-26, 2008
  Harrisburg, PA

- NAALJ Annual
  October 11-15, 2008
  New York City, NY

- NAALJ Midyear
  2009
  Little Rock, AR

Widener University School of Law hosts the 2008 National Association of Administrative Law Judiciary Midyear Meeting in Harrisburg, Pennsylvania's Capital city, on June 24-26, 2008. This annual event will occur for the first time in Pennsylvania, and will be held at the Harrisburg Hilton Hotel in downtown Harrisburg, Pennsylvania.

**GENERAL CONFERENCE INFORMATION**

Conference registration will open on March 15, 2008. On site registration opens on the afternoon of Tuesday, June 24, and NAALJ Board meetings will be held on Tuesday afternoon. The Conference officially begins at 9 a.m. on June 25 and ends at 5 p.m. on June 26.

The Conference registration fee is $375.00. For NAALJ members the tuition is $325.00. There is a $25.00 discount for registration before May 1, 2008.

*(Continued on page 2)*



**New York City, Gotham, Metropolis. Like no other city on earth, New York City brings the world to you.**

### THE ADMINISTRATIVE JUDICIARY:
### DEFINING JUSTICE IN A CHANGED WORLD
### OCTOBER 11-15, 2008
### NEW YORK CITY, NEW YORK

This New Century poses many new challenges and opportunities for the administrative judiciary. And there is no other place in the western world more in touch with those challenges and opportunities than New York City. The City has been called the "Capital of the World" and, with its scores of ethnic groups, nationalities, languages, and religions, it is in many ways a microcosm of the planet. In a diverse society, only steadfast adherence to Justice is a proven and reliable means of insuring the peace, prosperity, and durability of our civilization. It is clear that the Administrative Judiciary will continue to play an ever-expanding role in this endeavor.

**EDUCATIONAL PROGRAM:**

This conference will investigate a myriad of perspectives on the complex issue of justice in our world from several points of view. Sessions are now being developed and finalized regarding Access to Justice Issues, Federal and State Administrative Case Law, Evidence, Confronting Hearing Room Bias, Judicial Independence,

*(Continued on page 3)*



# KEYSTONES OF JUSTICE (continued)

**HOTEL INFORMATION**

A special hotel group rate of $124 per night per room plus taxes has been negotiated with the Harrisburg Hilton. To make your reservation at this rate, telephone the Harrisburg Hilton at (717) 233-6000. To obtain this rate you must use the group code NAA. Fax at (717) 233-6271.

**EDUCATIONAL INFORMATION**

The education program will total twelve hours of continuing education credit, of which one will be in ethics. Widener University School of Law is licensed by the Supreme Courts of Pennsylvania and Delaware to deliver continuing legal education credits.

Featured presenters and their topics include:

**Alternative Dispute Resolution for ALJs.** 120 minutes. Experienced ALJs will discuss the value and uses of Alternative Dispute Resolution (ADR) and successful ADR techniques and approaches.

**Presenters:**

**David A. Cicola** is the director of the Pennsylvania Worker's Compensation Office of Adjudication.

**David B. Torrey** is a Worker's Compensation Judge with the Pennsylvania Department of Labor & Industry.

**Credibility for ALJs.** 180 minutes. An experienced judge will review and explain all aspects of making credibility determinations at administrative hearings.

**Presenter:**

**Thomas Cheffins** is Chief Administrative Law Judge for the Department of Public Welfare Bureau of Hearings and Appeals in Harrisburg, Pennsylvania.

**Bias is a Four Letter Word.** 90 minutes. Bias occurs in administrative hearings unintentionally or unconsciously. This presentation will help ALJs recognize their biases.

**Presenter:**

**Felix Thau** is an Administrative Law Judge with the Pennsylvania Liquor Control Board, Office of Administrative Law Judge.

**Revision of the Model State Administrative Procedure Act.** 60 minutes. A drafting committee of the National Conference of Commissioners on Uniform State Laws (NCCUSL) is revising the 1981 Model State Administrative Procedure Act (MSAPA). Two reporters will review the adjudication provisions of the MSAPA.

**Presenters:**

**Gregory Ogden** is a Professor at Pepperdine University School of Law. Professor Ogden has served as Reporter (drafter) for the Drafting Committee to the Model State Administrative Procedure Act of NCCUSL since 2006.

**John L. Gedid** is a Vice Dean and professor of Widener University School of Law—Harrisburg. He served as reporter for the Drafting Committee to the Model State Administrative Procedure Act of NCCUSL from 2003 until 2006.

**Developments in the Law—Recent Important State and Federal Cases.** 60 minutes. This is an update on important state and federal cases involving administrative law.

**Presenter:**

**Gregory Ogden** is a Professor at Pepperdine Law School, where he teaches administrative law, among other subjects.

**Appeals from Administrative Agencies—the View from the Bench.** 90 minutes. A panel of judges from the Pennsylvania Commonwealth Court, the intermediate appellate court to which has jurisdiction of all appeals from agency action in Pennsylvania, will discuss what they look for in administrative agency opinions.

**Presenter:**

**Honorable Bonnie Brigance Leadbetter.** Judge Leadbetter is President Judge of the Commonwealth Court of Pennsylvania.

**The Effect of Intrinsic Agency Factors on Adjudication.** 60 minutes. A panel of experienced ALJs and agency officials will discuss factors inherent in agency structure and purposes that have impact on adjudication. One theme will be the tension between independence of ALJs and the need for uniformity in agency discussions.

**Selected Hearsay Problems for ALJs.** 60 minutes. Analysis and discussion of frequent hearsay problems that occur at administrative hearings.

**Presenter:**

**Linda L. Ammons** is Associate Provost of Widener University and Dean and Professor of Law at Widener University School of Law.

**Practicing What We Preach—Ethics for ALJs.** 60 minutes. Discussion of ethical problems faced by ALJs.

**Presenter:**

**Steven Wise** is an Administrative Law Judge with the Iowa Workforce Development Department.

**HARRISBURG PENNSYLVANIA ATTRACTIONS**

Harrisburg, the Capital City of Pennsylvania, is filled with attractions. Only a short walk from the Hilton Hotel, the Pennsylvania Capital Building is praised as one of the most architecturally beautiful capitols in the United States. It has been described as a "Palace of Art" because it is filled with noted painting and sculpture.

Nearby and also within easy walking distance, the Pennsylvania State Museum contains historical and other exhibits relating to the State, art exhibits and the state archives.

Harrisburg was the most northern point that Confederate troops reached during the American Civil War. Just prior to the Battle of Gettysburg, Southern Troops on reconnaissance reached Harrisburg and fought a few small pitched skirmishes here. One planned excursion for conference attendees is a visit to Harrisburg's National Civil War Museum. For serious Civil War buffs, Harrisburg is just forty minutes by car from the Gettysburg Battlefield.

Harrisburg is only a few miles distant from Hershey, Pennsylvania and Hershey Park, a popular amusement park, and a golf destination.

Amish Country in Lancaster, Pennsylvania is within easy driving distance, and is a popular tourist destination.

# Defining Justice in a Changed World (continued)

Special Education, Legal Research, Evaluating Scientific Evidence, Complex Litigation, and many other topics. More details will be available soon.

**ACCOMMODATIONS:**

The conference will be held at the New York Marriott Downtown (85 West Street / New York, NY 10006). This striking hotel, with a pool, sauna, and exercise room, is located in the heart of New York's historic financial district, just a few blocks from the Hudson River and a waterfront park with breathtaking views of Ellis Island and the Statue of Liberty. Downtown Manhattan is within walking distance of the hotel and three of the city's subway lines are only a few blocks away. We have secured a remarkable hotel rate of $229.00/night, a rate far below the federal government per diem rate for New York City.

**SOCIAL ACTIVITIES:**

Planning is now underway to ensure that early arrivals will be afforded opportunities to partake in memorable organized activities on Saturday, including Broadway shows and/or Dinner on Saturday evening. In addition, the Social Planning Committee is working with NYC & Company, the successor to the NYC Visitors and Convention Bureau, to organize an unforgettable group visit to an historic venue in NYC, probably on Tuesday afternoon.

**CONFERENCE PARTNERS:** Conference Hosts are the National Association of Administrative Law Judiciary (NAALJ), the New York State Administrative Law Judges Association (NYSALJA), and the New York County Lawyer's Association (NYCLA) CLE Institute. NYCLA will administer the Conference CLE credits and assist participants from all states in acquiring CLE credit. *(New York County Lawyers' Association has been certified by the New York State Continuing Legal Education Board as an Accredited Provider of continuing legal education in the State of New York from 2007 through 2010.) (Conference Tuition Assistance available: details and application process pending.)*

Other conference partners and supporters so far include the New York City Office of Administrative Trials and Hearings (OATH), the Administrative Justice Coordinator of the New York City Mayor's Office, the City University of New York (CUNY) Law School, and the National Association of Women Judges (NAWJ). ThomsonWest is now confirmed as one of our Major Sponsors and we are currently in final discussions with many other companies regarding their level of sponsorship. In addition, to date there are twelve New York State agencies, three New York City agencies, and one Federal agency involved at various levels of participation.

Questions or comments may be directed to:

**John G. Farrell**,
NYSALJA President,
jfarrell.nysalja@yahoo.com
**James Horan**
(Education Committee)
jfh01@health.state.ny.us
**Catherine Bennett**
(Sponsorship Committee)
cbennett@nysdta.org
**Peter Loomis**
(Social Activities Committee)
PLOOMIS@gw.dot.state.ny.us
**Joel Ziev**
(Finance Committee)
jdziev@aol.com







**Visit the Statute of Liberty and Time Square in NYC**



# NEWS FROM STATE AFFILIATES

## Maryland/DC Affiliate News

**Jim Murray, Acting President**

The year 2007 was one of highs and deep lows for the Maryland and District of Columbia Association of Administrative Adjudicators (MDCAAA). In October, we, along with our co-sponsors The Washington College of Law, NAALJ, and the National Association of Women Judges, hosted the NAALJ Annual Conference in Washington, D.C.

The Conference was our high point of 2007. Our planning efforts paid off. The Conference and social activities were well received by the 135 attendees. The tour of the Capitol was extraordinary, even for those of us who have seen it before. Kudos to those who guided the effort, including Neil Alexander, Tyrone Butler and Joan Davenport of MDCAAA, and Jennifer Dabson of Washington College of Law.

Unfortunately, the success of the Conference was greatly overshadowed by the death of our President, colleague and friend, Neil Alexander. In honor of Neil, we've created an award in his name. The award criteria have yet to be determined. Although we still mourn Neil, we continue to try to positively impact administrative adjudication.

Elected officers for 2007-2008: Neil Alexander, President; Jim Murray, President-Elect; Joan Davenport, Vice-President; Paul Handy, Secretary; and William England; Treasurer. New board members are Tyrone Butler, Tom Dewberry, Robert McGowan, E. Savannah Little, Mike Nolan and Past President Dennis Sober.

Bert Brandenburg, Executive Director of Justice at Stake Campaign spoke to the membership about his organization and how it educates the public about special interests attacks on the judiciary and how to seek reforms. Mr. Brandenburg's organization is beginning to focus on the administrative judiciary and plans to speak at the upcoming annual conference.



# NEWS FROM STATE AFFILIATES (continued)



## New York Affiliate News

**By John Farrell, President**

In other news, a MODEL CODE FOR ALJs IN NYS is being developed. Several members of NYSALJA, who are also members of the Administrative Law Judges Subcommittee of the Committee on Attorneys in Public Service of the New York State Bar Association, have been working for the last several months to develop a Model Code of Judicial Conduct for State Administrative Law Judges.

The proposed Code was presented to the New York State Bar Association's Executive Committee for consideration at its January 31, 2008 meeting.

The NYSALJA members on the drafting committee included James McClymonds, Catherine Bennett, John G. Farrell, James Horan, Peter Loomis, Elizabeth Liebschutz, Edward Mevec, and Marc Zylberberg. We anticipate that presentation of this model code will be included in the Conference Educational Program.



## Iowa Affiliate News

**By Lynette Donner, President**

The Iowa Association of Administrative Law Judges continues to provide exceptional continuing legal education to judges and administrative law practitioners. As many of you know, IAALJ co-sponsored the National Judicial College course "Achieving Impartiality in Administrative Adjudication" on June 18 and 19, which substituted for the Detroit Midyear conference. We had a great turnout with 111 participants, and the sessions and NJC presenters were outstanding.

On September 28, 2007, IAALJ held a CLE in conjunction with our annual membership meeting. Tim Eckley, staff attorney with the American Judicature Society in Des Moines, gave an informative presentation on "Judicial Ethics and the Self-represented party."

After the CLE, the Association held its annual meeting and elected the following officers for the 2007-2008: Lynette Donner, president; Amy Christensen, vice president; Maggie LaMarche, secretary; and Phil Deats, treasurer.

IAALJ membership for 2007-08 is 51 members, which is the highest number of members since it was formed. We are planning our Spring CLE for April 2008, which will feature Creighton University Vice President Patrick Borchers.



## Arkansas Affiliate News



**By Barbara Webb, President**

The Arkansas Association of Administrative Adjudicators (ArkAAA) held its annual meeting and election of new officers. Our 2008 President is Barbara Webb, an ALJ with the Arkansas Workers' Compensation Commission. President-Elect for 2009 is Toni White (Bogan), Managing ALJ in the Office of Appeals and Hearings (OAH) for the Arkansas Department of Human Services (DHS) and NAALJ Board member.

ArkAAA presented its annual Fall Conference in Little Rock on November 2, 2007, titled "Core Concepts in Administrative Hearings." Topics included bias, opinion writing, judicial review, professional conduct, witness credibility, and recent legislation. This year's conference drew 49 attendees with 7 presenters. Our attendees included a mix of federal and state adjudicators.

Four ArkAAA members were recognized for outstanding service to the Association: Shannon Mashburn, OAH (2007 website design); Sue Stolzer, OAH (long-time ArkAAA Secretary); Kerri Palmer, OAH (long-time ArkAAA Treasurer); and Robert Hunt, Arkansas Disability Determination for Social Security Administration (2007 conference planning).

For the ArkAAA members who attended the NAALJ Annual Conference in Washington, D.C. last October, we send our sincere thanks and congratulations to the Maryland-DC Association of Administrative Adjudicators, the American University Washington College of Law, and the other conference sponsors for their hospitality and hard work.

ArkAAA members were also honored and excited to recently learn that NAALJ has picked us to host the NAALJ 2009 Midyear Conference. Planning is now well under way. The conference will be held in Little Rock, Arkansas. Check for 2009 Midyear Conference updates from time to time on our website at www.arkaaa.org. For those looking for a possible career move, www.arkaaa.org is also currently hosting NAALJ's Job Posting Information Bank. Come check us out online.

In other news, David Mackey, OAH, judged a state-wide debate contest at Little Rock's Central High School. ArkAAA members will volunteer to judge upcoming debate contests this Fall 2008.

# TRIBUTE TO NEIL ALEXANDER

**By Joan Davenport**

On Monday, November 19, 2007, our friend, colleague, professional administrative law judiciary member, Neil Alexander, Jr., Chief Hearing Examiner of the D.C. Commission on Human Rights for 20 years, departed this life at his home in Washington, D.C.

Few of us knew that Neil was recognized as an expert in discrimination law and a leader in the fight for social justice. He presided over administrative law hearings dealing with cases of discrimination filed under the D.C. Human Rights Act. With an extensive knowledge of discrimination law, he wrote decisions in numerous cases that received regional and national attention, involving housing discrimination based on AIDS, employment discrimination based on race, and hostile work environments based on sexual orientation. Neil was also a guest lecturer at Georgetown University School of Law, Howard University School of Law, and at the University of Maryland for its African-American Studies program. He conducted extensive Equal Employment Opportunity training sessions for District of Columbia personnel, as well as staff of the District of Columbia Office of the Attorney General.

Neil's professional affiliations included NAALJ for which he actively co-chaired the successful 2007 annual conference held in Washington, D.C. He was President of the Maryland and District of Columbia Association of Administrative Adjudicators (MDCAAA) which is in the process of establishing an annual award in his name. The award criteria are still being developed, but may include service to the cause of human rights or exemplary contributions to administrative law.

Neil was a prolific Washington Redskins fan, and he never missed an opportunity to celebrate life, living and football. He once said that he was always fond of having a good time and could not, and would not, be bothered by the small stuff. One time, while an elementary school student, he was scolded by his teacher for his poor skills at writing cursive, he politely informed her that "smart people like me, have more important things to do in life than waste time on learning to write well."

The members of NAALJ, MDCAAA and many others will always remember Neil and the ease with which he worked with people at all levels. We will remember his capacity to pull together a hospitality venue and are appreciative of having been associated with him during his lifetime.



# NEIL ALEXANDER SCHOLARSHIPS AWARDED

Two scholarships were recently awarded by NAALJ to assist administrative adjudicators in attending a one-week, resident course at the National Judicial College (NJC) on the University of Nevada, Reno campus.

The scholarships are named the Neil Alexander Scholarships in honor of a NAALJ colleague, who at the time of his recent untimely death was chief hearing examiner of the D.C. Commission on Human Rights. Judge Alexander served as co-chair of the 2007 NAALJ Annual Conference in Washington, D.C.

Each scholarship from NAALJ is for $500 and is to be used in combination with a 50 percent tuition waiver awarded by NJC for the one-week course.

The recipients for 2008 are Judge Josephine C. Townsend, who is an ALJ for the Washington State Department of Licensing in Vancouver, WA, and Judge James A. Monk, who conducts special education hearings for the New York Education Department.

Judge Townsend has been a member of NAALJ since 2006. She plans to attend either a course on Judicial Writing or a course on Advanced Evidence.

Judge Monk has been a member of NAALJ since 2001 and plans to attend an advanced administrative law course at NJC.

Congratulations to both of these scholarship recipients! They both hope to be presenters at upcoming NAALJ conferences and will share the knowledge they gained from these courses in an upcoming NAALJ newsletter.

For more information on the Neil Alexander Scholarships, contact Judge Janet Raider at Janet.Raider@ky.gov.



## President's Message—Moving Ahead



**By L. David Brunke**

Although the wheels of progress in many volunteer organizations often move ever so slowly, a review of the last board meeting minutes from the 2008 NAALJ Annual Conference reveals that NAALJ is somewhat of an exception as progress and change are occurring. Nonetheless, it can be difficult to keep the momentum going due to the demands of our busy lives.

As the challenges of managing the day-to-day operation of a large-membership, volunteer organization can be and often are overwhelming, the board recently considered outsourcing more of its management services. Services available for outsourcing include communications and marketing, consulting, event management, member services, finance and governmental relations. As you may know, NAALJ concurrently outsources membership services and the billing and collection of revenue (bookkeeping). However, due to the high cost of additional management services, the board voted instead, as an interim step, to acquire a web-based management system as a less costly alternative. After an exhaustive search, the board voted to purchase the web management system from MemberClicks. (www.memberclicks.com). In the coming months, more information will be disseminated to the membership on this important initiative, which will be headed up by President–Elect Steve Wise.

At its last meeting, the board approved the by-laws of the newly established Special Education Section and its e-newsletter. You may recall that the NAALJ by-laws were amended at the 2006 annual meeting to authorize the board to establish sections in specialized areas of administrative adjudication.

Recently the board accepted the Arkansas affiliate's proposal to host the 2009 midyear conference in Little Rock. In addition, the board, through its Future Conference Site Selection Committee, is seeking proposals from interested parties to host the 2009 annual conference and the 2010 conferences.

Be on the lookout for the next issue (Fall 2007) of the Journal, which should be published next month, and which will announce the 2008 Fellowship topic.

In my view, one of the key ingredients required for a volunteer organization to move forward is a high level of membership interest and participation, which can be achieved through an effective committee framework. To ensure members have an opportunity to serve on committees, I am asking that you email me your committee preferences (rank order), if you have not done so already, within 30 days of receipt of this newsletter. A list of the committees and chairs appointed to date can be found on page 8 in the newsletter.

## Treasurer's Report—On The Financial Front



**By Thomas E. Dewberry**

Rising oil prices, falling real estate markets, a Federal deficit in the trillions and most states facing or already suffering budget deficits. Pretty gloomy economic news, for sure. Nevertheless, if you are looking for a glimmer of good news in the world of finances, I am pleased to tell you that the Association's financial health is doing well.

As noted in the past, the major sources of revenues for the Association are from membership dues, conferences and sales of the Journal. The revenue from dues has held steadily around $22,000 this year, similar to recent past years. So far this year the sales revenue form the Journal is a little over $2,000, which is down somewhat from previous years. Revenue from the annual conference is likely to be in the range of $4,000. The fiscal year '07 – '08 revenues year-to-date (January 31, 2008) are running about $29,000.

The primary expenses of the Association are for the Journal, Secretariat (membership and bookkeeping) and the board member travel reimbursement. The fiscal year '07 – '08 expenses year-to-date (January 31, 2008) are running about $20,600.

As you can see, the arithmetic reflects that at this point in time (just over halfway through the fiscal year) the Association is in the black by about $8,500. Add this news to the fact that the Association had total reported assets at the end of calendar year 2007 of a little over $92,000 and things look quite positive financially. This is especially true when you consider that the Association's total reported assets two years ago were only about $57,000.

Probably the most encouraging news is that the Association's positive fiscal growth this year continues a trend that began in the '05 – '06 fiscal year, reversing several years of deficits. I can report to you with great confidence that the current officers and board intend to keep this trend going forward into the future.

---

**NAALJ Special Education Section News**

by James Rosenfeld

The Special Education Section has adopted section by-laws, updated its officers and advisors and joined in the publication of an email newsletter produced by the National Academy for IDEA Administrative Law Judges and Hearing Officers at the Seattle University School of Law. James Rosenfeld appointed Judge Janice E. Shave of Washington as Vice Chair of the Committee to succeed Lori Eiseley of Kentucky, who had resigned from NAALJ. Judge Sherianne Laba of California has been appointed to succeed Judge Shave as Advisor to the Committee. The Committee Newsletter is available to any current special education hearing officer, whether or not a member of NAALJ, by emailing James Rosenfeld at rosenfeld@seattleu.edu.

## Washington, D.C. Conference Photos



*Cathy Bennett at the closing session.*



*Dancing the night away!*



*NAALJ Officers and Board*



*Delicious food galore!*



*Chatting on the floor of the U.S. Capitol Rotunda.*



*Relaxing after the banquet*



*Thanking Jennifer Dabson for her hard work.*

*Photos courtesy of Marc Zylberberg, NYAJLA*

### NAALJ Committees and Chairs (2007-2008)

**2008 Annual Conference Committee**
John G. Farrell (NY), Chair
jfarrell.nysalja@yahoo.com

**2008 Midyear Conference Committee**
John L. Gedid (PA), Chair
jlgedid@widener.edu

**2009 Midyear Conference Committee**
Toni White Bogan (AK), Chair
Toni.bogan@arkansas.gov

**Education Committee**
Phyllis Carter (WV), Chair
phylliscarter@wvdhhr.org

**Fellowship Committee**
Edward Schoenbaum (IL), Chair
e.schoen@insightbb.com

**Finance Committee**
Thomas Dewberry (MD), Chair
tdewberry@oah.state.md.us

**Future Conference Site Selection Committee**
Robert S. Cohen (FL), Chair
Bob_cohen@doah.state.fl.us

**Job Postings Committee**
Toni White Bogan (AK), Chair
Toni.bogan@arkansas.gov

**Journal Committee**
Edward Schoenbaum (IL), Chair
e.schoen@insightbb.com

**Membership (& Affiliate Support) Committee**
Mattie Harvin Woode (WA), Chair
mharv@oah.wa.gov

**Newsletter Committee**
James Murray (MD), Chair
jmurray@oah.state.md.us

**Nominating Committee**
Catherine Bennett (NY), Chair
cbennett@nysdta.org

**Past Presidents Committee**
Janet C. Raider (KY), Chair
Janet.Raider@ky.gov

**Rosskopf Achievement Award Committee**
Edward Schoenbaum (IL), Chair
e.schoen@insightbb.com

**Website Committee**
Steven Wise (IA), Chair
Steve.wise@iwd.state.ia.us

### Elected Officers and Board Members

**OFFICERS**

| | |
|---|---|
| Hon. L. David Brunke (TX) | President |
| Hon. Steven Wise (IA) | President-Elect |
| Hon. Robert S. Cohen (FL) | Secretary |
| Hon. Thomas E. Dewberry (MD) | Treasurer |
| Hon. Catherine M. Bennett (NY) | Past President |

**BOARD OF GOVERNORS**

| | |
|---|---|
| Hon. Toni White (Bogan) (AR) | (term expires 2008) |
| Hon. Janet Raider (KY) | (term expires 2008) |
| Hon. Beverly Sherman Nash (DC) | (term expires 2008) |
| Hon. Peter L. Plummer (MI) | (term expires 2008) |
| Hon. Phyllis Carter (WV) | (term expires 2009) |
| Hon. Mary Margaret Anderson | (term expires 2009) |
| Hon. Kristin Miller (GA) | (term expires 2009) |
| Hon. Mattie Harvin Woode | (term expires 2009) |



**THE NEWSLETTER OF THE NATIONAL ASSOCIATION OF ADMINISTRATIVE LAW JUDICIARY**

NAALJ
P.O. Box 71
Glenmont, NY 12077

Phone: 518-462-2425
Fax:   518-462-2425
E-mail: naalj@naalj.org

**www.naalj.org**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DR. SIMON BANKS, J.D. | ) |  |
| P.O. BOX 17052 | ) |  |
| ALEXANDRIA, VA. 22302 | ) |  |
|  | ) |  |
| Plaintiff | ) |  |
|  | ) |  |
| v. | ) | Case: 1514 (RCL) |
|  | ) |  |
| ELWOOD YORK, JR | ) |  |
| ET AL | ) |  |
|  | ) | August 6, 2008 |
| Defendants | ) |  |

# PLAINTIFF'S EXHIBIT 4

In support of Plaintiff's Opposition to District Defendants'
Motion to Dismiss the Amended Complaint

# District of Columbia Legal Ethics

1.13   Rule 1.13 Organization as Client

## 1.13:100   Comparative Analysis of DC Rule

· Primary DC References: DC Rule 1.13
· Background References: ABA Model Rule 1.13, Other Jurisdictions
· Commentary:

**1.13:101    Model Rule Comparison**

Substantial changes, described below, were made in Model Rule 1.13 in 2003 as a result of the report of the ABA Corporate Responsibility Task Force, which was prompted by the corporate scandals that had been proliferating in recent years. Prior to those changes the Model Rule and its DC counterpart were very similar, and in many respects identical in substance. Thus, paragraph (a) of DC Rule 1.13, the general statement that the lawyer for an organization represents the organization acting through its constituents, was then and remains today identical to paragraph (a) of the Model Rule.

Paragraph (b) of the DC Rule (now redesignated as (c)), addressing a lawyer's obligations when dealing with an organizational client's constituents, was identical to what was then paragraph (d)(now (f)) of MR 1.13, except that that paragraph of the DC Rule said a lawyer must explain to a constituent of the organization with whom the lawyer is dealing that he represents the organization when it is apparent that the organization's interests "may be" adverse to those of the constituent; the Model Rule's paragraph (b) required such an explanation when it was apparent that the interests "are" adverse. One further small difference between the two provisions was added to the Model Rule on a recommendation of the Ethics 2000 Commission -- the only change in the rule recommended by that Commission -- by the replacement in the Model Rule of the phrase "it is apparent" by "the lawyer knows or reasonably should know."

Paragraph (c)(now (d)) of the DC Rule, regarding representation of constituents of the organizational client as well as the organization, was and is still also identical to paragraph (e)(now (g)) of MR 1.13.

Prior to the 2003 amendments, the foregoing three provisions constituted the whole of DC Rule 1.13, but the Model Rule also contained two provisions that had no parallels in the DC Rule. One was the Model Rule's paragraph (b), suggesting various actions a lawyer might take on learning of actions taken, threatened or foregone by an organizational client's officers or employees that are likely to result in substantial injury to the organization, including "reporting up," which is to say referring the matter to

higher organizational authority. The other provision in the Model Rule but not its DC counterpart was paragraph (c), making clear that if, despite the lawyer's efforts, the highest competent organizational authority insisted on action, or refused to refrain from action, that was clearly a violation of law and was likely to result in substantial injury to the organization, the lawyer could resign.  The Jordan Committee had considered following the Model Rules example with respect to these two provisions, but decided against doing so. The Board of Governors' petition forwarding the Jordan Committee report to the Court of Appeals explained the omission by observing that these paragraphs

merely suggest measures which *may* be taken by a lawyer for an organization if the lawyer knows that a person associated with the organization is acting or intends to act in one of the specified improper ways.  The Committee concluded that such advisory and precatory language is inappropriate for a black letter rule and that the substance of paragraphs (b) and (c) is adequately presented in the Comment to the Rule.

The portions  of the Comment to which the Jordan Committee here referred were Comments [4] and [5] (now [3] and [4]) to the DC Rule, which were identical to the Model Rule's Comments [2] and [3]. The Jordan Committee also recommended omitting what was then Comment [6] (now [9]) to the Model Rule, explaining MR 1.13's applicability to government lawyers, and proposed a substitute Comment stating that 1.13 did not apply to government lawyers and explaining the reasons why. That proposed substitute Comment also noted that the Bar's Board of Governors planned to appoint a special committee to consider whether the DC Rules should include special rules, comparable to Rule 1.13 but specifically dealing with government lawyers. The committee thus appointed, the Sims Committee, did not recommend such a special rule for government lawyers, but instead recommended changes to six of the DC Rules, or their Comments, to deal specifically with government lawyers. With respect to DC Rule 1.13, the Sims Committee recommended, and the Court of Appeals agreed, that it should have a Comment [7] (now [6]), differently phrased than the Model Rules' Comment [6], stating that the agency that employs a government lawyer is the lawyer's client and that the application of Rule 1.13 to government lawyers must take into account differences between government agencies and other organizations.

The changes made in 2003 to Model Rule 1.13 included amendment of paragraph (b) to omit mention of less drastic measures a lawyer might take in the face of corporate misconduct, and to focus on reporting up the organizational ladder including, if necessary the highest authority, unless the lawyer reasonably believes it not necessary in the best interest of the organization. The DC Rules Review Committee recommended, and the Court of Appeals in 2006 approved, addition to the DC Rule of a new paragraph (b) almost identical to the revised paragraph (b) of the Model Rule. In addition to this change in Model Rule 1.13, the 2003 amendments added three new paragraphs. The first of these, paragraph (c), provided that a lawyer in appropriate circumstances might "report out" -- i.e., to report organizational misconduct to third parties, if the highest competent organizational authority "insists on or fails to address in a timely and appropriate manner" an action or refusal to act that is clearly a violation of law and the lawyer reasonably believes likely to result in substantial injury to the organization. A new

paragraph (d) was also added, to exempt from such disclosures under paragraph (c) information learned by a lawyer in connection with an engagement to investigate the client organization, or to defend the organization or an officer, employee or other constituent of the organization. And a new paragraph (e) was also added, to provide that a lawyer who reasonably believes that he or she has been discharged because of the lawyer's making the disclosures contemplated by paragraphs (b) and (c), to do what is necessary to see that the organization's highest authority is so informed. The DC Rules Review Committee did not recommend adding any of these three new provisions of the Model Rule to the DC Rule, and the Court of Appeals accepted this judgment. The Committee expressed the view that the amendment it had proposed to Rule 1.6 (in the new paragraph (d); see 1.6:101, above), allowing for disclosure of information otherwise protected by that Rule, to prevent the client from committing a crime or fraud using the lawyer's services, or to prevent or mitigate injury to financial interests or property resulting from such fraud or crime, provided sufficient latitude for a lawyer to blow the whistle on a client's misconduct when necessary, and to make any disclosure allowed or required by the Sarbanes-Oxley Act or SEC Rule 205.  The Committee *did,* however, recommend that a reference to Rule 1.6(d) be added to what is now Comment [7] (formerly [8]).

### 1.13:102    Model Code Comparison

There was no counterpart to Rule 1.13 in the disciplinary rules of the Model Code. EC 5-18 was similar to Rule 1.13 in admonishing that "[a] lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity." In Griva v. Davison, 637 A.2d 830, 837 (DC 1994), the questioned conduct occurred over a period that encompassed the reigns of both the Model Code and the Model Rules; the DC Court of Appeals reached substantially the same result under both DR 5-105, as informed by EC 5-18, and Rule 1.13.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **DR. SIMON BANKS, J.D.** ) | | |
| **P.O. BOX 17052** ) | | |
| **ALEXANDRIA, VA. 22302** ) | | |
| ) | | |
| **Plaintiff** ) | | |
| ) | | |
| v. ) | Case: 1514 (RCL) | |
| ) | | |
| **ELWOOD YORK, JR** ) | | |
| **ET AL** ) | | |
| ) | August 6, 2008 | |
| **Defendants** ) | | |

# PLAINTIFF'S EXHIBIT 5

In support of Plaintiff's Opposition to District Defendants'
Motion to Dismiss the Amended Complaint

# District of Columbia Legal Ethics

1.13   Rule 1.13 Organization as Client

## 1.13:100   Comparative Analysis of DC Rule

· Primary DC References: DC Rule 1.13
· Background References: ABA Model Rule 1.13, Other Jurisdictions
· Commentary:

**1.13:101     Model Rule Comparison**

Substantial changes, described below, were made in Model Rule 1.13 in 2003 as a result of the report of the ABA Corporate Responsibility Task Force, which was prompted by the corporate scandals that had been proliferating in recent years. Prior to those changes the Model Rule and its DC counterpart were very similar, and in many respects identical in substance. Thus, paragraph (a) of DC Rule 1.13, the general statement that the lawyer for an organization represents the organization acting through its constituents, was then and remains today identical to paragraph (a) of the Model Rule.

Paragraph (b) of the DC Rule (now redesignated as (c)), addressing a lawyer's obligations when dealing with an organizational client's constituents, was identical to what was then paragraph (d)(now (f)) of MR 1.13, except that that paragraph of the DC Rule said a lawyer must explain to a constituent of the organization with whom the lawyer is dealing that he represents the organization when it is apparent that the organization's interests "may be" adverse to those of the constituent; the Model Rule's paragraph (b) required such an explanation when it was apparent that the interests "are" adverse. One further small difference between the two provisions was added to the Model Rule on a recommendation of the Ethics 2000 Commission -- the only change in the rule recommended by that Commission -- by the replacement in the Model Rule of the phrase "it is apparent" by "the lawyer knows or reasonably should know."

Paragraph (c)(now (d)) of the DC Rule, regarding representation of constituents of the organizational client as well as the organization, was and is still also identical to paragraph (e)(now (g)) of MR 1.13.

Prior to the 2003 amendments, the foregoing three provisions constituted the whole of DC Rule 1.13, but the Model Rule also contained two provisions that had no parallels in the DC Rule. One was the Model Rule's paragraph (b), suggesting various actions a lawyer might take on learning of actions taken, threatened or foregone by an organizational client's officers or employees that are likely to result in substantial injury to the organization, including "reporting up," which is to say referring the matter to

higher organizational authority. The other provision in the Model Rule but not its DC counterpart was paragraph (c), making clear that if, despite the lawyer's efforts, the highest competent organizational authority insisted on action, or refused to refrain from action, that was clearly a violation of law and was likely to result in substantial injury to the organization, the lawyer could resign. The Jordan Committee had considered following the Model Rules example with respect to these two provisions, but decided against doing so. The Board of Governors' petition forwarding the Jordan Committee report to the Court of Appeals explained the omission by observing that these paragraphs

merely suggest measures which *may* be taken by a lawyer for an organization if the lawyer knows that a person associated with the organization is acting or intends to act in one of the specified improper ways. The Committee concluded that such advisory and precatory language is inappropriate for a black letter rule and that the substance of paragraphs (b) and (c) is adequately presented in the Comment to the Rule.

The portions of the Comment to which the Jordan Committee here referred were Comments [4] and [5] (now [3] and [4]) to the DC Rule, which were identical to the Model Rule's Comments [2] and [3]. The Jordan Committee also recommended omitting what was then Comment [6] (now [9]) to the Model Rule, explaining MR 1.13's applicability to government lawyers, and proposed a substitute Comment stating that 1.13 did not apply to government lawyers and explaining the reasons why. That proposed substitute Comment also noted that the Bar's Board of Governors planned to appoint a special committee to consider whether the DC Rules should include special rules, comparable to Rule 1.13 but specifically dealing with government lawyers. The committee thus appointed, the Sims Committee, did not recommend such a special rule for government lawyers, but instead recommended changes to six of the DC Rules, or their Comments, to deal specifically with government lawyers. With respect to DC Rule 1.13, the Sims Committee recommended, and the Court of Appeals agreed, that it should have a Comment [7] (now [6]), differently phrased than the Model Rules' Comment [6], stating that the agency that employs a government lawyer is the lawyer's client and that the application of Rule 1.13 to government lawyers must take into account differences between government agencies and other organizations.

The changes made in 2003 to Model Rule 1.13 included amendment of paragraph (b) to omit mention of less drastic measures a lawyer might take in the face of corporate misconduct, and to focus on reporting up the organizational ladder including, if necessary the highest authority, unless the lawyer reasonably believes it not necessary in the best interest of the organization. The DC Rules Review Committee recommended, and the Court of Appeals in 2006 approved, addition to the DC Rule of a new paragraph (b) almost identical to the revised paragraph (b) of the Model Rule. In addition to this change in Model Rule 1.13, the 2003 amendments added three new paragraphs. The first of these, paragraph (c), provided that a lawyer in appropriate circumstances might "report out" -- i.e., to report organizational misconduct to third parties, if the highest competent organizational authority "insists on or fails to address in a timely and appropriate manner" an action or refusal to act that is clearly a violation of law and the lawyer reasonably believes likely to result in substantial injury to the organization. A new

paragraph (d) was also added, to exempt from such disclosures under paragraph (c) information learned by a lawyer in connection with an engagement to investigate the client organization, or to defend the organization or an officer, employee or other constituent of the organization. And a new paragraph (e) was also added, to provide that a lawyer who reasonably believes that he or she has been discharged because of the lawyer's making the disclosures contemplated by paragraphs (b) and (c), to do what is necessary to see that the organization's highest authority is so informed. The DC Rules Review Committee did not recommend adding any of these three new provisions of the Model Rule to the DC Rule, and the Court of Appeals accepted this judgment. The Committee expressed the view that the amendment it had proposed to Rule 1.6 (in the new paragraph (d); see 1.6:101, above), allowing for disclosure of information otherwise protected by that Rule, to prevent the client from committing a crime or fraud using the lawyer's services, or to prevent or mitigate injury to financial interests or property resulting from such fraud or crime, provided sufficient latitude for a lawyer to blow the whistle on a client's misconduct when necessary, and to make any disclosure allowed or required by the Sarbanes-Oxley Act or SEC Rule 205.  The Committee *did,* however, recommend that a reference to Rule 1.6(d) be added to what is now Comment [7] (formerly [8]).

### 1.13:102    Model Code Comparison

There was no counterpart to Rule 1.13 in the disciplinary rules of the Model Code. EC 5-18 was similar to Rule 1.13 in admonishing that "[a] lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity." In Griva v. Davison, 637 A.2d 830, 837 (DC 1994), the questioned conduct occurred over a period that encompassed the reigns of both the Model Code and the Model Rules; the DC Court of Appeals reached substantially the same result under both DR 5-105, as informed by EC 5-18, and Rule 1.13.