**BEFORE THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SIMON BANKS,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| **V.** | ) **Civil Action No. 08-00215 RCL** |
| | ) |
| **HON. NOEL ANKETELL KRAMER** | ) |
| **Et al** | ) **September 5, 2008** |
| | ) |
| **Defendants** | ) |

**PLAINTIFF'S MOTION TO STRIKE AND/OR IN THE ALTERNATIVE
OPPOSITION TO THE DC BAR FOUNDATION MOTION TO DISMISS
DOCKET 9**

Comes now, Dr. Simon Banks, Plaintiff and submit motion to strike and/or in the

alternative opposition to the DC Bar Foundation Motion to Dismiss Docket 9 and in

support the Plaintiff cites the following:

**THE MOTION OF THE DC BAR FOUNDATION IS PREMATURE
AND SUBMITTED PRIOR TO THE COURT RENDERING A
DECISION UPON THE PLAINTIFF'S MOTION FOR RECONSIDERATION OF
ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

The Motion of the DC Bar Foundation to dismiss Docket 9 is premature and

submitted prior to the Court rendering a decision upon the Plaintiff's Motion for

Reconsideration of Order denying Plaintiff's Motion for Leave to Amend/Supplement the

Amended Complaint.

With respect to the claims of the DC Bar Foundation, the Plaintiff does not waive

response or concede any claim. In addition, the Plaintiff cites the following

**THE CLAIMS OF PLAINTIFF AGAINST THE
DC BAR FOUNDATION ARE NOT BARRED NOR
VIOLATES ANY INJUNCTION ENTERED BY THIS COURT**

Without waiving the Plaintiff's amended complaint submitted in support of the Plaintiff's Motion for Reconsideration, the Plaintiff contend that Plaintiff's claims against the DC Bar Foundation are not barred by any injunction.

The Plaintiff does not seek to enjoin the District of Columbia Court of Appeals.

Pending before this Honorable Court is Plaintiff's Motion for Reconsideration. If the Court denies the Plaintiff's motion for reconsideration the Plaintiff is entitled to petition this Honorable Court to amend the complaint as the Plaintiff has sought prior to effecting service upon the DC Bar Foundation and subsequent to filing complaint against the DC Bar Foundation.

This is to serve notice that the Plaintiff does intend to file Motion for Leave to Amend the Complaint as to DC Bar Foundation should the court deny Plaintiff's Motion for Reconsideration. To this end, the motion of the DC Bar Foundation to Dismiss

The court has a duty to afford liberal leave to pro se Plaintiffs whom seek to amend the complaint for purposes of affording opportunity for a decision on the merits.

The Plaintiff incorporate by reference Plaintiff's Memorandum of Points & Authorities In Support of Plaintiff's Motion for Reconsideration, as if pleaded fully and completely herein.

The Plaintiff incorporate by reference Plaintiff's Motion for Leave to File Amended Complaint, Document 32.

The Plaintiff incorporate by reference Plaintiff's Memorandum of Points & Authorities in Support of Plaintiff's Motion to Amend the Complaint as to DC Bar Foundation, as if pleaded fully and completely herein.

**IDENTIFICATION OF THE PLAINTIFF**

The Plaintiff is an administrative advocate and employee representative that has practiced law before administrative agencies of the United States, the various states of the United States, and is available to represent parties before administrative agencies of the District of Columbia and of the United States pursuant to clearly established laws that a reasonable person would know.

The DC Bar Foundation is of the opinion and contention that the Plaintiff is required to possess a state bar license as a condition for representing parties before the District of Columbia Administrative Agencies and before Administrative Agencies of the United States, when this is not established law.

While the DC Court of Appeals has burdened the Plaintiff's exercise of his federal rights through Eric Holder and Thomas Zeno, respectively, with the burdens set forth in the 1995 injunction, Order 18, it cannot preclude the Plaintiff from practicing law before administrative agencies of the United States.

### NONATTORNEY'S RIGHT

### TO PRACTICE LAW BEFORE ADMINISTRATIVE AGENCIES IS CLEARLY ESTABLISHED LAW THAT A REASONABLE, PRUDENT LAWYER WOULD KNOW

States cannot impose upon administrative agencies of the United States state licensing requirements.  The Plaintiff and other non-state bar license administrative law practitioners are not required to possess a license to practice law as a condition for practicing law before administrative agencies of the United States.

With respect to nonattorney's right to represent parties before administrative agencies of the United States, the Court of Appeals for the Federal Circuit, provide in *Theodore Yanopoulos v. Department of Navy*, **796 F.2d 468** *Appeal No. 85-2592.*

United States Court of Appeals, Federal Circuit. (*July 23, 1986.)* (Nonattorney's

right to practice law before The United States Merit Systems Protection Board)

"We find that the MSPB adequately informed petitioner of his statutory right to

representation. The form (Optional Form 283), on which petitioner filed his appeal with

the MSPB states, just above petitioner's signature that:

> **27. YOU HAVE THE RIGHT TO DESIGNATE
> SOMEONE TO REPRESENT YOU ON THIS APPEAL IF
> HE/SHE AGREES TO DO SO. THIS PERSON DOES
> NOT HAVE TO BE AN ATTORNEY" * * *.**

> **sent you on this appeal if he/she agrees to.  See,
> e.g., 5 C.F.R. § 1201.31(b) (2004).**

See also, *Cassandra A. Augustine v. Department of Veterans Affairs,* 429 F.3d
1334, which  the United States Court of Appeals for the Federal Circuit provide in
relevant part:

> **Many federal agencies, including the Board, permit
> both attorneys and non-attorneys to represent clients in
> administrative proceedings. See, e.g., 5 C.F.R. § 1201.31(b)
> (2004) (Merit Systems Protection Board); 37 C.F.R. § 1.31
> (2004) (Patent and Trademark Office); 29 C.F.R. § 18.34
> (2004) (Department of Labor); 20 C.F.R. § 410.685(b) (2004)
> (certain claims before the Social Security Administration)**

The Court further opined:

> **"It is long established that any state or local law which
> attempts to impede or control the federal government or its
> instrumentalities is deemed presumptively invalid under the
> Supremacy Clause. Leslie Miller, Inc. v. Arkansas, 352 U.S.
> 187, 189-90 (1956); Johnson v. Maryland, 254 U.S. 51, 57
> (1920); McCulloch v. Maryland, 17 U.S. 316, 429-430 (1819);
> Mount Olivet Cemetery Ass'n. v. Salt Lake City, 164 F.3d 480,
> 486 (10th Cir. 1998); Don't Tear It Down, Inc. v. Pa. Ave. Dev.
> Corp., 642 F.2d 527, 534-35 (D.C. Cir. 1980).[3]"**

Plaintiff's right to practice law before administrative agencies of the United States

Equal Employment Opportunity Commission which is enforced with respect to

employees of the United States, at every administrative agency of the United States

connected with complaints alleging discrimination in federal employment.  See 29 C.F.R.

§1614.605, throughout the United States and the various countries throughout the world where the United States employ federal employees at its embassy's.

Plaintiff's right to practice law before the United States Merit Systems Protection Board (formerly the United States Civil Service Commission), is provided by a federal license where there is no requirement for any of the various conflicting state bar licenses. **See** 5 U.S.C. § C.F.R. § 1201.31(b) (2004).

Virginia Law provides for the practice of law before administrative agencies of the United States.  See **Virginia UPL, UPR 9-102** provides:  "Unauthorized Practice of Law (UPL): Law related services provided by nonlawyer professional service entitles, *Indeed, a state bar cannot restrict or interfere with practice rights conferred under federal law. See Sperry v. Florida,* **373 U.S. 379 (1963).  At fn. 5, Va. UPR 9-102** provides: "A partial list of some federal agencies allowing "qualified representatives" (nonlawyers) to act on behalf of a party before that agency includes:

a. **Department of Treasury, internal Revenue Service and Tax Court – 31 U.S.C. § 330; 5 U.S.C. § 500; 31 C.F.R. § 10.33; IRC § 7452 and Tax Court Rule of Practice and Procedure 200**
b. **Immigration and Naturalization Service – 8 C.F.R. § 3.1(d)(3)**
c. **Department of Energy – 10 C.F.R. § 205.3**
d. **Social Security Administration – 20 C.F.R. § 416.1400**
e. **Drug Enforcement Agency – 21 C.F.R. § 1316.5-**
f. **National Labor Relations Board – 29 C.F.R. § 102.38**
g. **Equal Employment Opportunity Commission – 29 C.F.R. § 1601.7**
h. **Health and Human Services – 45 C.F.R. § 205.10 (a)(3)(iii)**

Further, with respect to nonattorney's right to practice law before administrative agencies, A recent Government Accountability Report (GAO) provide:

**GAO Report On Non-Attorney Withholding And SSI Fee Withholding**
The Government Accountability Office has issued its long-awaited report on withholding of fees for non-attorney representatives and withholding of fees for representatives of SSI claimants. Here is an excerpt:

Nonattorney representatives who have met the eligibility requirements for fee withholding under the demonstration project have more experience representing disability claimants and are more likely to specialize in disability representation than attorneys or ineligible nonattorneys. According to our surveys, we estimate that nonattorneys eligible for fee withholding have represented on average over 240 disability claimants in a 2-year period, whereas other representatives have represented on average fewer than 90. Nearly all eligible nonattorneys specialize in disability representation, a fact that may explain why they have substantially more experience representing disability claimants. Although both eligible and ineligible nonattorneys lack advanced legal training, many had relevant work experience before becoming disability representatives, such as having worked at SSA. In terms of current employment, attorneys and eligible nonattorneys predominantly work in the private sector, but many ineligible nonattorneys work at nonprofit organizations and government agencies, which may not charge claimants fees. Results in Brief Judges rated attorneys and eligible nonattorneys about equally well overall, and more highly than ineligible nonattorneys, while claimants did not distinguish substantially among the three groups. In overall performance, judges at the 10 sites we surveyed during January and February 2007 viewed attorneys and eligible nonattorneys as comparable, although they rated attorneys more highly in a few specific areas of disability representation. Judges rated about 55 percent of overall performances by both attorneys and eligible nonattorneys as above average or among the best, and only about 6 percent as below average or poor. Many judges also told us they believe that experience in the field rather than legal training is the key to effective representation of disability claimants. However, judges did rate attorneys somewhat more highly than the eligible nonattorneys in certain facets of disability representation, such as in questioning of vocational and medical experts. By contrast, judges viewed nonattorneys who are ineligible for fee withholding as less capable than both attorneys and eligible nonattorneys, both in overall performance and in every facet of disability representation. Ratings by the limited number of claimants we interviewed, on the other hand, did not distinguish substantially among the various representatives in their overall performance. Judges and eligible nonattorneys were generally satisfied with the overall implementation of fee withholding for nonattorneys, but they expressed some concern about the experience standard for nonattorney eligibility. Almost all eligible nonattorney representatives were satisfied with SSA's overall management of the program. Eligible nonattorneys also report that eligibility for fee withholding has benefited them by, for example, allowing them to take on more cases because they spend less time trying to collect fees from claimants. We found that judges and eligible nonattorneys considered most of the eligibility requirements for participation in the demonstration project to be reasonable. However, both groups, in addition to advocacy groups we spoke with, questioned the adequacy of the experience standard, which calls for nonattorneys to have represented at least five claimants before SSA over a 2-year period. Most of the judges we interviewed and more than half of the eligible nonattorneys considered this to be insufficient experience. Judges, and also advocacy groups we spoke with, said that the standard would not ensure that eligible nonattorneys are well qualified in disability representation. Fee withholding has succeeded in encouraging some attorneys to represent more SSI claimants, but it has also complicated payments to representatives and claimants in certain SSI cases. Attorneys reported that before fee withholding was

*extended to SSI, the possibility of not collecting their fees affected their decision to represent SSI claimants. Because of the availability of fee withholding, approximately one-third of attorneys with disability practices report that they are now representing more SSI claimants than in the past. Fee withholding, however, has also complicated payments to attorney and nonattorney representatives, as well as to claimants. In some cases, representatives may inappropriately receive both SSA and state payments that may total more than the SSA-authorized fee. Most states provide cash assistance to SSI claimants during the application process. At least 10 of these states pay fees to representatives of successful SSI claimants to encourage representatives to take SSI cases, and therefore increase the number of state residents receiving federal rather than state assistance benefits. Because SSA does not coordinate with these states to prevent overpayments, representatives can collect more than the authorized fee through payments from both SSA and the state—something that under the Social Security Act, representatives are not allowed to do. In addition, fee withholding in the SSI program has delayed benefit payments to claimants. In cases where claimants receive benefits from both the SSI and DI programs at the same time, SSA performs a calculation to determine the total benefits and the amount of the representative's fee. With the extension of fee withholding to the SSI program, SSA cannot pay benefits until after it has performed this calculation. According to SSA and two disability representative associations, this change has led to delays in claimants receiving their payments, although SSA has not determined the extent of these delays. SSA is tentatively planning to make changes that would address this issue. We are recommending that the Commissioner of SSA monitor the nonattorney eligibility criteria to help ensure that only well-qualified representatives receive access to fee withholding, and if necessary adjust these criteria; assess the extent of overpayments to representatives in cases involving state fees, and if necessary take steps to prevent these overpayments; and continue to explore options to address benefit payment delays for recipients receiving both SSI and DI benefits. In its comments on a draft of this report, SSA agreed with our findings and recommendations, and noted actions it plans to take to address our recommendations.*

The DC Bar Foundation is of the opinion that DC Court of Appeals Rule 49 and Order 18, 92-BG-652, issued by former Superior Court Judge Richard A. Levie, precludes the Plaintiff from performing and enjoying the titles that Plaintiff held and that a license to practice law by a state bar is a requirement for such positions and such exercise of federal right to practice law before administrative agencies of the United States.  This simply is not the case.  There are nonlawyer judges in 28 states, and nonattorneys are afforded the right to practice law before administrative agencies of the United States

## NONLAWYER JUDGES EXIST IN SOME 28 STATES

Nonlawyers, lay judges exist in some twenty-eight states. See *North v. Russell*, 427 U.S. 328 (1976). In *North* the Court provides: "Judges in these Courts need not be lawyers." See also *Ward v. Village of Monroeville*, 49 U.S. 57, See also *Tumey v. Ohio*, 273 U.S. 510, *Missouri v. Lewis*, 101 U.S. 22, 338-339, *Argersinger v. Hamlin*, 407 U.S. 25 (1972); *Colten v. Kentucky*, 47 U.S. 104 (1972); *Coolidge v. New Hampshire*, 403 U.S. 443, 449-453 (1971); *Katz v. United States*, 389 U.S. 374, 356 (1967); *Wondsun v. United States*, 371 U.S. 471, 481, 482 (1963). See *Missouri v. Lewis*, 101 U.S. 22 (1880); *Salsburg v. Maryland*, 346 U.S. 545 (1954); *Mangs v. Goldwin*, 400 F.Supp. 23 (EDN of New York 1957); *Fay v. New York,* 332 U.S. 261 (1947); 61 Virginia Law Review 1454, 1469-1470 See 10 Harvard Siv. Liv. L. Rev. 739, 755 (1975).

1. The states that have lay judges pursuant to the case of ***North v. Russell, 427 U.S. 328 (1976),* are 28.** Amongst the clearly established laws that preempt conflicting state laws and rules, pursuant to the Supremacy Clause, Article VI, Cl. 2, and Sperry v. the state of Florida, 373 U.S. 379 (1963), and which provide for the defendant's federal rights to practice before administrative agencies of the United States that do not require a license to practice law, include, but are not limited to:
   a) 29 C.F.R. § 1614.605, 29 C.F.R. §1614 [1]
   b) EEOC Management Directive 110 (MD-110) [1]
   c) 5 U.S.C. § 1201
   d) 5 U.S.C. § 2302
   e) 42 U.S.C. § 2000 e, Title 7 VII of the 1964 Civil Rights Act
   f) Federal Employees Compensation Act (FECA) United States Department of Labor
   g) EEOC Policies, Practices and Procedures Manual
   h) United States Merit Systems Protection Board Policies, Practices and Procedures Manual[1]
   i) Department of Defense EEO Manual, Policies, Practices and Procedures
   j) The Civil Service Reform Act of 1978 as amended[1]
   k) Section 717 of the Civil Rights Act of 1964

**The titles "Hearing Examiner" and Administrative Law Judge are synonymous.**

**[1] PROOF OF INTERCHANGEABLLILITY OF THE TITLES "HEARING EXAMINER" AND "ADMINISTRATIVE LAW JUDGE" IN THE DISTRICT OF COLUMBIA AND THROUGHOUT THE UNITED STATES**

*1.*  The United States Supreme Court stated that the titles "Hearing Examiner" and Administrative Law Judge" are interchangeable, i.e. one in the same.  *See Butz v. Economu 438 U.S. 478 (1978).*

2.  On February 21, 1980 the Appellant/Banks was certified by the District of Columbia Government as an Administrative Law Judge and Hearing Examiner.  See MBOC certificate no. 3495.

3.  On January 20, 1995 the District of Columbia Consumer and Regulatory Affairs reclassified its Hearing Examiners as Administrative Law Judges pursuant to Administrative Hearings Establishment Act, DC Law 14-76 (March 6, 2002).

4.  The United State Civil Service Commission changed the title "Hearing Examiner" to Administrative Law Judge" in 1972, by regulation on August 19, 1972, 37 F.2d Reg. 1687, and by statute March 27, 1978, 5 U.S.C. § 3105.5372.7521 (supp. IV)

5.  Subsequent to the change of titles, the duties and functions essentially all remained the same.  The United States Merit Systems Protection Board, the SEC, the NLRB, the FTC, the DOL, the Department of Transportation, the Civil Aeronautics Board; amongst others changed the title of their "Hearing Examiner", to Administrative Judge", an 1986, the EEOC changed the title of its Hearing Examiners to "Administrative Law Judge".

6.  See Black's Law Dictionary, See Barron's Law Dictionary, for "Hearing Examiner".  It will refer you to "Administrative Law Judge" and vice-versa.

7.  Maria Johnson, Vice Chair of the United States Merit System Protection Board, during her hearing before the Senate Governmental Affairs Committee referred to her position with the District of Columbia Rental Accommodations Office ("ROA") of the DC Rent Commission, when and while she was a subordinate of Simon Banks, as "Hearing Examiner".  See transcript of Congressional Record (1983).  However in 1983, Maria Johnson, after her confirmation by the United States Senate Governmental Affairs Committee, disseminated a biographical sketch nationwide, referring to her title with the "ROA" as "Administrative Law Judge".

8.  Again, when Maria Johnson left the United States Merit System Protection Board as Vice Chair when and while she was reemployed with the District of Columbia

Office of Employee Appeals as a "Hearing Examiner", she and the DCCA referred to her as Administrative Law Judge."

9. In 1993 the DCCA referred to "Hearing Examiner Olga Clegg" of the District of Columbia Consumer and Regulatory Affairs as Administrative Law Judge*" See Banks v. Consumer and Regulatory Affairs, 634 A.2nd 433 (December 6, 1993) See Harsh Dissent of Judge Steadman of the DCCA.*

10. In 1995 the District of Columbia Consumer and Regulatory Affairs where Hearing Examiner Olga Clegg was asked to leave, changed the title of its "Hearing Examiners to Administrative Judges*". See DC Register, Vol. 42 No. 3 Page 397. (January 20, 1995).*

11. On November 12, 1991 the District of Columbia Office of Employee Appeals changed the title of its "Hearing Examiners" to Administrative Law Judges" by a simple memo authored by Warren Cruise, although their official title remain "Hearing Examiner", they continued to refer to themselves "administrative Judges".

12. During 1999-2002 Judge John Ferren, of the District of Columbia Court of Appeals took a temporary a sabbatical from the DCCA and assumed the position of District of Columbia Corporation Counsel, Chief Legal Officer for the District of Columbia. While serving as Corporation Counsel and before becoming the Vice Chair of the Counsel for Court Excellence Judge Ferren caused a sole-source contract to be issued to the Counsel for Court Excellence to do a study in support of changing the title of DC agencies Hearing Examiners to Administrative Law Judges and to centralize the District of Columbia Administrative Hearings. This resulted in the "Administrative Hearings Establishment Act of 2002), DC Law 14-76 (March 6, 2002), to with: without any change in the duties and functions of District of Columbia Hearing Examiners. They were, retitled, "Administrative Law Judges with the exception that not a license to practice law is required to hold the position of "Administrative Law Judge" or "Hearing Examiner". It is now referred to as the Office Of Administrative Hearings.

13. Further, John Ferren, prior to returning to the District of Columbia Court of Appeals as a judge when and while he was one leave as DC Corporation Counsel, facilitated the change in title of District of Columbia Workman's Compensation Hearing Examiners, from "Hearing Examiners" to Administrative Law Judges". See DC Workman's Compensation change of title "Hearing Examiner to Administrative Law Judge Act, DC Law 13-229, now titled Worker's Compensation Administrative Law Judges Amendment Act of 2000 effective April 13, 2001.

14. The Honorable Norma Holloway Johnson Chief Judge of the United States District Court for the District of Columbia upon motion and request of the District of Columbia Corporation Counsel determined that "Hearing Examiner Lenox

Simon of the DC Office of Adjudication, Previously RAO, was an Administrative Law Judge, entitled to judicial immunity.  See Robert Lepelletier v. Sharon Pratt Kelly No. 94-245 (March 1995), citing *Butz v. Economou* Supra.  Chief U.S. Judge Johnson supported Judge Annice Wagner at her confirmation hearing before the United States Senate Governmental Affairs Committee Burns' transcript of Judicial Confirmation Hearings

[1] The brief amicus curiae New York State Association of Magistrates in form us, of the states that have nonlawyer judges:  Delaware, Florida, Idaho, Iowa, Mississippi, Montana, New Mexico, New York, North Carolina, North Dakota, Pennsylvania, Texas, Utah, Washington, West Virginia, and Wyoming had mandatory training programs and Alaska, Georgia, Kansas, Louisiana, Missouri, Nevada, New Hampshire, Oregon, South Carolina, Tennessee, Vermont and Wisconsin, have voluntary training programs.

There is no dispute that the Plaintiff was an Administrative Law Judge and Hearing Examiner.  **See Attached Exhibit showing the Plaintiff sitting on the bench** convening hearing as Administrative Law Judge, with Attorney Algie Lewis General Counsel, DC Office of Human Rights, at counsel table.  See also attached as an exhibit Publication of the NAALJ,  at 5-7 posthumously   Plaintiff's successor Neil Alexander, honored by the National Association of Administrative Law Judges (redesignated National Association of Administrative Judiciary).  Neil Alexander, as Chief Hearing Examiner for the District of Columbia Commission on Human Rights,  referred to as "Judge Alexander," was the President of the DC and Maryland Association of Administrative Law Judges

**Plaintiff's Filing of This Action—Particularly the Claim Against the D.C. Bar Foundation does not Violates Injunctions Entered Against Plaintiff by This Court.**

With respect to the instant complaint of the Plaintiff, the DC Bar Foundation has point to no specific point in any injunction that precludes the Plaintiff's complaint against the DC Bar Foundation.

The District of Columbia Court of Appeals could not enjoin the Plaintiff from exercising rights conferred upon the Plaintiff by the United States Government, the United States Congress, which is the right to practice law before the United States Equal Employment Opportunity Commission and its 706 subcontract agencies, as well as the right to practice law before the United States Merit Systems Protection Board, the United States Office of Special Counsel, the United States Department of Labor, or the various administrative agencies of the United States whom employ employees of the United States.

The District of Columbia Court of Appeals could not nor did it enjoin the Plaintiff from representing parties before administrative agencies of the District of Columbia, who's rules and statutory laws provide for nonattorney representatives.

Moreover, Defendant DC Bar Foundation ("Foundation") has not cited with specificity, which claims of the Plaintiff against it is barred by any specific injunction. Rather, the Foundation seeks the court to guess which part of its unbridled, overly broad, sweeping claims it contends are barred and/or that the court does not have jurisdiction.

The jurisdiction of this Honorable Court are set forth in Title V1 of the United States Code, EO11246,

The Foundation erroneously allege, "This case is yet another improper attempt by Plaintiff to have this Court either halt or review proceedings in the District of Columbia Court of Appeals that pertain to the 1987 Injunction. The instant complaint has nothing

to do with the 1987 injunction and the Foundation has pointed to no specific violation based upon fact.

The DC Bar Foundation simply seek to continue to discriminate against the Plaintiff with the use of federal funds, with impunity, although DC Bar Foundation conduct and discrimination with respect to the use of federal funds, by its continual antitrust/anti-competitive activities, in violation of the Sherman Act and the District of Columbia Anti-Trust Act,  is prohibited by federal law.

The Foundation restrict its grant awards to members of the Bar, to licensed attorneys, the Plaintiff has been harmed and continues to be harmed by the Foundations restrictions.  See 29 C.F.R. §1614.605, et set.  No where has the Foundation cited any authority of the District of Columbia Court of Appeals to engage in restraint in trade, misuse of federal funds, or use of federal revenue sharing funds, or the funds of the District of Columbia, for antitrust, anticompetitive purposes.  Moreover, there is no injunction that prohibit the Plaintiff, who is licensed by the United States and District of Columbia Agencies, including the District of Columbia Commission and Office of Human Rights, to practice law before them respectively.  The District of Columbia Human Rights Agency is a 706 subcontract agency of the United States Equal Employment Opportunity Commission.  And it is licensed by the United States Equal Employment Opportunity Commission to enforce Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq.

**Wherefore**, Plaintiff pray that the Court grant the relief requested.

_____/s/_____
**Dr. Simon Banks, J.D.**
**P.O. Box 17052**
**Alexandria, VA. 22302**
**703 965-5637**