## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
**SIMON BANKS,**                        )
)
       **Plaintiff,**                )
)
   **v.**                            )      **Civil No. 08-215 (RCL)**
)
**NOEL ANKETELL KRAMER, *et al.*,**      )
)
     **Defendants.**               )
_____)

## MEMORANDUM OPINION

Plaintiff Simon Banks is suing five individuals and five organizations.  The individual defendants are D.C. Court of Appeals Judges Noel Anketell Kramer (personal capacity), Annice Wagner (personal capacity), and John Ferren (personal and official capacity), Clerk of the Court of Appeals Garland Pinkston (personal and official capacity), and D.C. Attorney General Peter Nickles (consistently misspelled throughout plaintiff's Complaint as "Nickels") (official capacity).  Sued as organizations are the D.C. Court of Appeals ("DCCA"), the D.C. Bar Foundation ("DCBF"), the District of Columbia itself, the D.C. Office of Administrative Hearings, and the nonprofit Council for Court Excellence ("CCE").

The Court will attempt to give a factual background, although plaintiff's Complaint does not exactly make clear which facts are relevant.  Plaintiff is a graduate of Howard University School of Law.  Plaintiff is not now and has never been admitted to the bar of the District of Columbia (or apparently of any state).  Plaintiff asserts that he was certified by the District of Columbia "as Administrative Law Judge and Hearing Administrator" in 1981.  (Compl. ¶16.)

1

Plaintiff also asserts that "[p]eriodically, from 1987 through 2002," he "practiced administrative law" before various federal and D.C. administrative agencies.  (Compl. ¶18.)  Plaintiff's Complaint then launches into a variety of allegations that defendants limited his ability to work as an administrative law judge, limited his ability to practice in front of administrative agencies or market his services, defamed him, and otherwise harmed him through their actions.

At this time there are eleven motions pending in this case.  Three of those motions—defendants' dispositive motions—are substantive motions whose resolution will help this litigation move forward.  The remaining eight motions—all filed by plaintiff—are marred by scant legal support, noncompliance with simple local rules, and a general lack of clarity or coherence.  Nevertheless, the Court notes that it must construe plaintiff's *pro se* filings liberally. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  The Court will dispose of plaintiff's motions first before moving on to defendants' dispositive motions.

## A.   Plaintiff's Motions [48] and [79] to Amend His Complaint Fail to Comply with Local Civil Rule 7(i) and Shall Be Denied.

Plaintiff's Motion [48] seeks to amend his Amended Complaint to add additional charges against defendant DCBF.  The substance of the motion, however, also seems to request reconsideration of the Court's Order [38] denying plaintiff's earlier Motion [32] to add additional claims against DCBF.  Regardless of whether plaintiff's motion is construed as one for leave to amend or one for reconsideration, it is deficient and shall be denied.

If plaintiff's motion is considered as one for leave to amend, it shall be denied for the same reason as plaintiff's earlier Motion [32].  The Court denied plaintiff's Motion [32] for

failure to comply with Local Civil Rule 7(i), which requires that "[a] motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended." Plaintiff's Motion [32] was not accompanied by an original as amended; it included only a supplement listing new claims against DCBF. Plaintiff's current Motion [48] again includes only a supplement. Because plaintiff again fails to comply with Local Rule 7(i), his motion for leave to amend cannot be granted.

Alternatively, if Motion [48] is construed as one for reconsideration of Order [38], it fails to establish mistake, intervening change of law, or any other ground for reconsideration. Plaintiff's only reason for reconsideration is his assertion that the Clerk of Court's office discarded his hand-filed original complaint as amended without entering it into the Court's electronic docket. Plaintiff's supporting unsworn declaration notwithstanding, his allegation loses credibility for two reasons. First, plaintiff's Motion [32] was filed electronically.[1] There is no reason why plaintiff would have hand-filed his original complaint as amended as an attachment to an electronically filed motion. Also, plaintiff's electronically filed Motion [32] was accompanied (electronically) by independently titled document intended "to Supplement the Amended Complaint." This document does not read as if it was intended to accompany an original complaint as amended; it reads as if it was intended to be filed alone. Because plaintiff has not established any ground for reconsideration of the Court's Order [38], his motion [48] will be denied.

---

[1]The CM/ECF (electronic docket) entry recording plaintiff's motion ends with "(SIMON BANKS)." This indicates that plaintiff, Simon Banks, filed his motion electronically. Had his motion been filed in paper form, the parentheses would contain the initials of the individual within the clerk's office who docketed plaintiff's filing.

Plaintiff's Motion [79], which also seeks to amend his Complaint to add claims against DCBF, improves upon Motion [48] in that it is clearly a motion for leave to amend. However, plaintiff again fails to comply with Local Rule 7(i), attaching a list of supplementary claims against DCBF rather than a copy of the original complaint as amended. The Court shall deny Motion [79] for failure to comply with the rule.

**B.      Plaintiff's Motion [58] for Reconsideration Fails to Establish Grounds for Reconsideration and Shall Be Denied.**

Plaintiff's Motion [58] requests reconsideration of the Court's Order [38] denying his Motion [34] to amend his Complaint as to defendant Mukasey. The Court's Order [38] denied plaintiff's Motion [34] for failure to comply with—again—Local Civil Rule 7(i), which (for the third time) requires the movant to attach a copy of the original complaint as amended. Plaintiff's Motion [58], like his Motion [48], accuses the Clerk of Court's office of discarding his original complaint as amended. But, again, Motion [34] (like Motion [48]) was filed electronically (and included several electronically filed attachments); thus plaintiff's accusation lacks credibility. Because plaintiff has established no grounds for reconsideration, his Motion [58] shall be denied.

**C.      D.C. Defendants' Filings Will Not Be Stricken, and the Office of Attorney General Will Not Be Precluded From Representing District Defendants.**

Plaintiff moves [36] to "strike all pleadings" filed by the D.C. Office of Attorney General ("OAG") on behalf of defendant Judges Kramer, Wagner, and Ferren. Plaintiff asserts that OAG should be prohibited from defending the judges, Attorney General Nickles, and the District of Columbia itself because of various "conflicts of interest." Plaintiff's Motion [36] has no basis in

law and shall be denied.

First, plaintiff asserts that OAG cannot represent both the District of Columbia and individuals sued in their individual capacity for alleged violations of D.C. law. To support his position, plaintiff cites to and quotes from cases, rules, and regulations apparently unrelated to his legal argument. (*See, e.g.*, Pl.'s Mot. [36] at 4–10.)

Plaintiff then argues that because he has made "antitrust" allegations against Attorney General Nickles and Judge Ferren, OAG—as the District's advocate in pursuing antitrust violations—cannot represent Nickles and Ferren. Plaintiff's argument might make sense if OAG was bringing the antitrust actions. But plaintiff himself is the one attempting to recover for alleged antitrust violations. It goes without saying that plaintiff cannot preclude OAG from representing defendants by simply alleging "antitrust violations."

Finally, plaintiff argues that OAG's representation of the various defendants should be precluded because the defendants have adverse interests. However, plaintiff never identifies how any two OAG-represented defendants' interests are adverse, and it appears to the Court that there is no conflict. This Court will not disqualify parties from being represented by their chosen counsel without a clear demonstration of adverse interests. Seeing none, plaintiff's Motion [36] will be denied.


**D.       Plaintiff's Motion [71] For Leave to File a Surreply Shall Be Denied**

Plaintiff's Motion [71] seeks leave to file a surreply to DCBF's motion to dismiss. As plaintiff's motion for leave recognizes, "'a surreply may be filed by leave of Court, and only to address new matters raised in a reply, to which a party would otherwise be unable to respond.'"

(Pl.'s Mot. [71] at 5 (quoting *United States v. Baroid Corp.*, 346 F. Supp. 2d 138, 143 (D.D.C. 2004) (Lamberth, J.)).  Although plaintiff is right on the law, he could not be more wrong in thinking that it supports his motion.  Plaintiff's motion addresses matters made for the first time in defendants' motion to dismiss and then repeated in defendants' reply.  Because those matters could just have easily been addressed in plaintiff's opposition, plaintiff's motion for leave to file a surreply will be denied.[2]

**E.      Plaintiff's Three Remaining Motions to Strike ([61], [70], and [77]) Shall Be Denied.**

Plaintiff's Motion [61] seeks to strike DCBF's Motion to Dismiss.  Plaintiff's Motion [61] essentially asserts plaintiff's disagreement with the arguments contained in DCBF's motion. He makes no arguments to support the striking of DCBF's motion.  It appears that plaintiff's Motion [61] should be considered merely as an opposition to DCBF's motion.  Accordingly, plaintiff's Motion [61] shall be denied.

Plaintiff's Motion [70] seeks to strike DCBF's Motion [69] to Strike Plaintiff's Surreply (the surreply at issue was filed without leave of court).  DCBF withdrew its Motion [69] after plaintiff belatedly moved for leave to file his surreply, rendering plaintiff's Motion [70] to Strike moot.  Motion [70] will be denied as moot.

Plaintiff's Motion [77] is perhaps plaintiff's most transparent effort to waste the Court's time.  Plaintiff's Motion [77] seeks to strike DCBF's *withdrawal of its Motion [69] to Strike*

---

[2]The Court notes that plaintiff also attempted to file his surreply prior to moving for leave (*see* Doc. [68]).  If the Court were to construe plaintiff's motion as seeking leave to file Document [68], the motion would still fail.  Document [68], although differing in some ways from Motion [71], still does not address matters raised for the first time in defendants' reply.

*Plaintiff's Surreply*.  To restate—for emphasis—DCBF withdrew its motion to strike plaintiff's filing, and plaintiff moved to strike that withdrawal (after plaintiff had earlier moved to strike the motion that DCBF withdrew).  Such recreational motions are a poor way to occupy the Court's time.  Plaintiff's Motion [77] shall be denied.

## G.   Defendants' Motions [8], [29], and [59] to Dismiss

All defendants have filed motions to dismiss.  Plaintiff's rambling Complaint, however, borders upon incomprehensibility.  This complicates the Court's efforts to address defendants' motions individually.  Moreover, this Court is bound to construe plaintiff's *pro se* Complaint liberally.  Therefore, the proper course of action seems to be to proceed paragraph-by-paragraph through plaintiff's Complaint, addressing allegations wherever they can be made out.  Points from the various motions to dismiss will be cited and utilized where applicable.  Ultimately, all defendants' motions to dismiss will be granted, and plaintiff's Complaint will be dismissed in its entirety.

Some of plaintiff's allegations will be dismissed for failure to state a claim upon which relief can be granted.  All of defendant's motions seek to dismiss plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).  This Court will dismiss under Rule 12(b)(6) if the plaintiff fails to plead "enough facts to state a claim for relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (modifying the prior standard which required appearance, beyond a doubt, that plaintiff could prove no set of facts in support of his claim that would entitle him to relief).  The Court must construe the allegations and facts in the Complaint in the light most favorable to the plaintiff, and the plaintiff will have the benefit of all inferences

that can be derived from the facts alleged.  *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004)

(citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  However, the

Court is not required to accept plaintiff's unsupported inferences, nor "legal conclusions cast in

the form of factual allegations."  *Kowal*, 16 F.3d at 1276.

Other claims will be dismissed because they are filed in violation of an injunction entered

by another judge of this Court.  In 1987, the D.C. Court of Appeals enjoined plaintiff from,

among other things, "using such terms to describe himself as . . . 'administrative law judge' . . .

which reasonably denotes that respondent's former employment as a hearing examiner

constitutes a qualification or license to practice law in the District of Columbia."  *In re Simon*

*Banks*, 561 A.2d 158, 168 (D.C. 1987), *reh'g en banc denied sub nom* (1989) (hereinafter "1987

Injunction").  In 1994, Judge Penn of this Court enjoined plaintiff "from filing further lawsuits

pertaining to the 1987 injunction . . . without obtaining both leave of court and certification that

the claims raised are new, not frivolous and not taken with bad faith."  *Banks v. Dixon, et al.,*

Civil No. 91-3099, Order of Jan. 31, 1994 (D.D.C. 1994) (attached to DCBF's Mot. [59])

(hereinafter "Penn Injunction").[3]

Plaintiff also runs into problems with standing and statutes of limitations.  Those issues

will be addressed as they arise.

---

[3]Plaintiff's filings contend that he posted $5,000 with the Court of Appeals for the D.C.
Circuit which resulted in the Penn Injunction being lifted.  *See, e.g.*, Pl.'s Mot. [71] for Leave to
File Surreply at 4.  However, such a condition was not included in the Penn Injunction itself, and
no lifting was noted in the case docket.  Defendants explain that the $5,000 was actually a fine
imposed by the D.C. Circuit for plaintiff's procedural mistakes in that forum.  *See* DCBF's
Opp'n [75] at 5–7.

1.    *Plaintiff's "Statement of the Case" (Paragraphs 14–23)*

Paragraphs 14–19 set forth plaintiff's background.  Again, according to these paragraphs, plaintiff, a law school graduate, was certified as "Administrative Law Judge and Hearing Examiner" by the District of Columbia as late as 1981.  He also states that he practiced administrative law before various administrative agencies from 1987 through 2004.

Paragraph 20 alleges that DCCA, DCBF, the District, and other unnamed "co-conspirators" took various acts "to control the practice of administrative law before administrative agencies of the District of Columbia and . . . the United States . . . for purposes of restraining trade, and crushing competition."  This paragraph does not include enough information to state a plausible claim upon which relief could be granted, but the Court will consider it when construing other allegations.

Paragraph 22 concerns alleged acts taken by DCCA, "District of Columbia Bar" (presumably referring to DCBF), the District, and "other co-conspirators" to control the practice of administrative law by differentiating between and controlling the use of the titles "Hearing Examiner," "Administrative Judge," and "Administrative Law Judge."  These allegations clearly pertain to the 1987 Injunction and are thus barred by the Penn Injunction (because plaintiff has not sought leave to file nor certification).

Paragraph 23 claims that plaintiff's ability to practice before administrative agencies was injured when he was "denied of his right to use the titles 'Hearing Examiner' and 'Administrative Law Judge' interchangeably."  Again, this allegation pertains to the 1987 Injunction, and thus is barred by the Penn Injunction.  This paragraph also alleges that plaintiff was "denied the right to apply for and secure the position of administrative law judge, between

2001 to [sic] the present, because of the lack of a DC Bar License." Plaintiff does not identify the source of this purported "right," and thereby fails to state a claim upon which relief could be granted.

### 2.    Plaintiff's "Count I" (Paragraphs 24–29)

Paragraphs 25 and 26 ask this Court to make various declarations as to the limitations of the DCCA in setting standards for the practice of law before various administrative agencies. Plaintiff offers no legal support for why his proposed limitations are proper or why this Court has the authority to grant the relief he seeks. These paragraphs thus fail to state claims upon which relief can be granted, and any allegations contained therein shall be dismissed.

Paragraph 27 seeks a declaration that DCCA's "activist legislative activities . . . are ultra vires[,] are violative of the separation of powers, and operate to restrain trade and impair competition." Plaintiff does not specify which "activities" he finds objectionable. The Court can only assume that he is referring to the 1987 Injunction or the DCCA's alleged support of 2001 and 2002 laws that affected administrative processes in the District.[4] If plaintiff does refer to the 1987 Injunction or a related matter, his allegation is barred by the Penn Injunction. If not, then plaintiff's allegation lacks information necessary to state a claim.

Paragraph 28 complains that the District and its component agencies discriminate against Hearing Examiners as compared to Administrative Law Judges. Plaintiff does not assert that he is currently employed as a Hearing Examiner, nor that he has been so employed at any time after 1981. He thereby fails to establish "injury," an element of the "irreducible constitutional

---

[4]These laws are mentioned in Paragraphs 39–48 as discussed later herein.

minimum of standing." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Accordingly, the allegations in Paragraph 28 will be dismissed for lack of standing.

Paragraph 29 alleges that the District's and DCCA's efforts to limit who can be employed

as a Hearing Examiner or Administrative Judge are ultra vires and anticompetitive. Plaintiff

cites no law in support of this position. Plaintiff thereby fails to state a claim, and this allegation

will be dismissed.

3.      *Plaintiff's "Count II" (Paragraphs 29–49)*

Paragraph 29 accuses Judge Kramer of perjury during her testimony in support of her

judgeship before the United States Senate Committee on Governmental Affairs. Paragraph 30

alleges that Judge Kramer's testimony defamed plaintiff. The statement at issue in both

paragraphs was Judge Kramer's statement that she was unaware of any complaints against her;

plaintiff alleges that he had a complaint pending against Judge Kramer at the time of that

statement. A second Paragraph 30 seeks a declaration that Judge Kramer was not acting as a

judge during her testimony (apparently an attempt to defeat judicial immunity). Congressional

testimony, if related to the congressional proceeding, is absolutely privileged against defamation

suits. *See Webster v. Sun Co., Inc.*, 790 F.2d 157, 160 n.2 (D.C. Cir. 1986). Judge Kramer's

statement regarding complaints against her was clearly related to the congressional proceeding.

Thus these paragraphs fail to state a claim, and the allegations therein will be dismissed.

Paragraphs 32 seeks a declaration that Judge Wagner suborned Judge Kramer's

perjury/defamation before the committee by "knowingly, suppressing, condoning [sic] the

intentional misstatements" and failing to disclose the perjury to the committee. Paragraph 33

seeks a declaration that in doing so Judge Wagner was not acting as a judge.  As described above with relation to the allegations against Judge Kramer, Judge Kramer's statement was privileged and cannot be considered defamatory.  As for plaintiff's claim of suborning perjury (and the underlying perjury claim itself), plaintiff provides no source of law that allows him to seek a declaration on these claims.  Plaintiff's allegations and claims in these paragraphs shall be dismissed.

Paragraphs 34 and 35 seek a declaration confirming plaintiff's bizarre and wide-ranging allegations of retaliations and cover-ups.  The Court will grant no such thing based upon plaintiff's bald unsubstantiated accusations.  Also, to the extent that Paragraph 36 deals with DCCA proceedings, judicial immunity applies.  *See, e.g.*, *Forrester v. White*, 484 U.S. 219, 255 (1988) ("[J]udicial immunity . . . protect[s] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants.").  The allegations and claims in these paragraphs shall be dismissed.

Paragraph 38 seeks a declaration that Judge Ferren was not performing a judicial function during his tenure as Corporation Counsel from 1998 to 2001.  The Court sees no need for such a declaration.  Paragraphs 39–41 accuse Judge Ferren of unspecified "conflicts of interest" in relation to a contract with the Council for Court Excellence "that resulted in the change of titles 'Hearing Examiner' to 'Administrative Law Judge'" through laws passed in 2001 and 2002.  It should come as no surprise that the Court will not issue a declaration based upon unfounded allegations.  Plaintiff is also without standing to bring these "conflict of interest" claims, as he does not allege that Judge Ferren's alleged actions caused him any injury.  *Lujon*, 504 U.S. at 560.  Finally, plaintiff's claim is time-barred.  Plaintiff does not identify the legal theory

underpinning his claims, but it could only be deprivation of property (his onetime job as a Hearing Examiner) or perhaps some interest he had in using the term "Administrative Law Judge." The statute of limitations for property claims is 3 years, and as is that for claims "for which a limitation is not otherwise specifically prescribed." D.C. Code 12-301. Because any supposed injury would have occurred in 2001 or 2002, plaintiff's claims (filed in 2008) are time-barred.

In perhaps plaintiff's strangest claim yet, Paragraph 43 accuses Clerk of Court Pinkston for a "conflict of interest" associated with his attendance at hearings before the "District of Columbia Council" in relation to the 2001 and 2002 laws referenced above. Setting aside for a moment that attendance at a council meeting is not generally considered wrongdoing, plaintiff again lacks standing (injury) and again is time-barred.

Paragraphs 43–46 allege that Attorney General Nickles "violated the District of Columbia Procurement Act and the District of Columbia Human Rights Act" by "facilitating" the 2001 and 2002 law changes. Plaintiff does not cite to the relevant laws, nor specify how they were violated, nor how any of this has anything to do with him. These claims shall be dismissed for the same reason as the claims related to Judge Ferren—lack of legal/factual foundation, lack of standing (injury), and expired statute of limitations.

Paragraph 46 "reallege[s] the allegations set forth above in ¶¶24 and 25 as pleaded . . . herein" against the District of Columbia. Paragraph 24 makes no allegations. Having dismissed Paragraph 25's claims above, the Court dismisses any claims in Paragraph 46 here.

Paragraphs 47 and 48 seek a declaration that CCE "generated a sham analysis, committed fraud and provided a sham statistical analysis" with relation to the law changes of 2001 and

13

2002.  In Paragraph 48, plaintiff alleges that CCE's actions harmed him—but plaintiff does not specify how.  Even assuming that such a conclusive statement satisfied the "injury" element of standing, the "redressability" element remains absent.  Plaintiff identified no way that the Court's issuance of the requested declaration will redress any injury he has suffered.  Indeed, as CCE notes, "CCE has no power to make or unmake the law about which Plaintiff complains, nor did it ever have such power."  (CCE's Mot. [8] to Dismiss at 7.)  The claims in Paragraphs 47 and 48 shall be dismissed for lack of standing.  In the alternative, they too could be dismissed for failure to comply with the statute of limitations.

Plaintiff's second Paragraph 48 seeks a declaration that the terms "Hearing Examiner" and "Administrative Law Judge" are interchangeable.  This clearly pertains to the 1987 Injunction and is barred by the Penn Injunction.

Plaintiff's Paragraph 49 appears to relate entirely to a DCCA proceeding and accused DCCA of "hi-jacking the United States into the Case of In Re Simon Banks."  After much effort, the Court cannot understand what plaintiff is seeking, and shall dismiss this paragraph for failure to state a claim.[5]

---

[5]To the extent that this paragraph can be construed as anything other than nonsense, it undoubtedly pertains to the 1987 Injunction.  Judge Levie's "Order 18" (mentioned by plaintiff in this paragraph) recognized that plaintiff had "'flagrantly, intentionally, repeatedly and contumaciously violated virtually every provision of the Court's 1987 injunction;'" Order 18 thus represented "'an expanded and stricter injunction.'" *In re Banks*, 805 A.2d 990, 995 (D.C. 2002) (quoting Judge Levie's Order 18 (1995)).  Plaintiff's opposition to DCBF's Motion to Dismiss further confirms pertinence to the 1987 Injunction; it spends a full three pages arguing that the term "Administrative Law Judge" (which the 1987 Injunction bars plaintiff from using) is synonymous with "Hearing Examiner" (which plaintiff is permitted to use).  (Pl.'s Opp'n [61] at 9–11.)  So, if Paragraph 49 is not nonsense, it is barred by the Penn Injunction and should be dismissed anyway.

  4.  *Plaintiff's "Count III" (Paragraphs 50 and 51)*

  Count Three seeks to reallege all of Count I, but this time as "violative of the First, Fourth, Fifth, and Fifteenth Amendment [sic] of the Constitution." No further details are given as to these constitutional claims (such as what rights were violated or the specific constitutional sources of those rights), and the Court will not make plaintiff's constitutional claims for him (nor could it). The various claims in plaintiff's Count I have already been dismissed, for failure to state a claim, violation of the Penn Injunction, and lack of standing. Restyled now as constitutional claims, they are dismissed here for the same reasons.

  5.  *Plaintiff's Prayer for Injunctive Relief (Paragraphs 46–48)*

  Paragraphs 46, 47, and 48[6] seek "injunctive relief, preliminarily and permanently," for some of the claims made earlier in the Complaint. Because those claims have already been dismissed as described above, the Court need not spend time addressing plaintiff's prayer for relief.

## CONCLUSION

  As detailed above, plaintiff's eight pending motions will all be denied and defendants' motions to dismiss will be granted. A separate order shall issue this date.

---

[6]Plaintiff's Complaint has two sets of paragraphs numbered 46, 47, and 48. The first set were part of a mandamus claim against former Attorney General Mukasey. That claim has already been dismissed. (*See* Order [38] (July 18, 2008).) The paragraphs referred to in the accompanying text is the second set.

Signed by Royce C. Lamberth, Chief Judge, on March 24, 2009.